## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, *et al.*,                     CASE NO. 1:19-cv-22487-RS

      Plaintiffs,

v.

MARK CERECEDA, D.C., *et al.*,

      Defendants.

_____/

---

## MOTION TO DISMISS COMPLAINT *WITH PREJUDICE*;
## SUPPORTING MEMORANDUM OF LAW

---

**FUERST ITTLEMAN DAVID & JOSEPH**
Allan A. Joseph, Esq.
Andrew S. Ittleman, Esq.
Christopher Rajotte, Esq.
Namrata Joshi, Esq.
SunTrust International Center
One Southeast Third Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 350-5690
Facsimile: (305) 371-8989

# CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   FACTS ..............................................................................................................4

      A. The Florida Statutory No Fault Insurance Scheme................................4

      B. The Facts of the Present Case .................................................................7

      C. State Farm's Reputation for Mistreating Policyholders .........................8

III.  MEMORANDUM ............................................................................................11

      A. The Standard for Granting Involuntary Dismissal ...............................12

      B. The Complaint Improperly Seeks To Circumvent Rule 23...................13

      C. AHCA's Agency Action Certifying That The Ceda Entities Qualify For Exemption From Licensure Cannot be Challenged in this Case ....................................16

      D. This Court Should Abstain from Deciding This Case Under the *Thibodaux, Burford*, and Separation of Powers Abstention Doctrines. ..................................................19

                i.  *The Court Should Abstain Under Burford* ................................................20

                ii. *The Court Should Abstain Under Thibodaux* ...........................................21

                iii. *The Court should abstain from setting aside AHCA's Exemption Certificates Consistent With Florida's Separation of Powers Doctrine* ........................22

                iv. *State Farm Has Not Plead Facts to Support its Claim* ..........................24

      E. State Farm Failed To Carry Its Burden of Identifying Which of the 916 Claims Have Already Been Adjudicated in State Court.........................................24

      F. The 916 Policyholders are Required Parties under Rule 19(a)......................25

      G. The Complaint Fails to State A Claim for Common Law Fraud .............28

                i.  *The Fraud Claim Is Barred By The Independent Tort Doctrine* ...............28

                ii. *The Fraud Claim Fails To Plead Reliance* ............................................30

      H. The Complaint Fails To State A Claim for Unjust Enrichment.................32

      I.  The Complaint Fails to State A Claim for Civil Conspiracy .........................33

      J.  The Complaint Fails To State a Claim for Aiding and Abetting Fraud.................34

      K. The Court Should Exercise Its Discretion To Reject State Farm's Request for a Self-Serving Declaratory Judgment ................................................34

      L. The Complaint Fails To State A Claim for Violation of FDUTPA..........................35

      M. The Fraud Claim Is Not Pled With Particularity ......................................37

      N. The Conspiracy Claim Is Not Pled With Particularity .............................39

      O. The FDUTPA Claim Is Not Pled With Particularity................................39

IV.   CONCLUSION ...............................................................................................40

V.    REQUEST FOR HEARING ..........................................................................40

i

## TABLE OF CASES

*Lakeland Reg'l Med. Ctr., Inc. v. State, Agency for Healthcare Admin.*, 917 So. 2d 1024 (Fla. 1st DCA 2006) ................................................................................................................................18

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 699 (S.D. Fla. 2017). ............14

*Active Spine Centers v. State Farm*, 911 So. 2d 241 (Fla. 3d DCA 2005) ................................................19

*Adrian Energy Associates v. Michigan Pub. Serv. Com'n*, 481 F.3d 414 (6th Cir. 2007) ...............................21

*Allstate Ins. Co. v. Holy Cross Hosp., Inc.*, 961 So. 2d 328 (Fla. 2007) ..........................................................5

*Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005) .......32

*American United Life Insurance Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007) ...................................33

*Animal Legal Def. Fund v. U.S. Dept. of Agric.*, 789 F.3d 1206 (11th Cir. 2015) .......................................18

*Associated Home Health Agency, Inc. v. State Dept. of Health & Rehab. Services*, 453 So. 2d 104 (Fla. 1st DCA 1984) ................................................................................................................................18

*AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011) .............................................................................16

*Babineau v. Fed. Express Corp.*, 576 F.3d 1183 (11th Cir. 2009) ...............................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................................12

*Buckley v. Valeo*, 424 U.S. 1 (1976) .............................................................................................................22

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ...............................................................................................20

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ....................................................................40

*Cielo v. Garrison Prop. & Cas. Ins. Co.*, No. 8:15-CV-2324, 2016 WL 1244552 (S.D. Fla. Mar. 30, 2016) ................................................................................................................................2

*Cielo v. Garrison Prop. & Cas. Ins. Co.*, No. 8:15-cv-2324-T-23TBM, 2016 WL 1244552 (S.D. Fla. Mar. 30, 2016) ................................................................................................................................14

*Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188 (6th Cir. 1995) ................................................21

*Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 538 (S.D. Fla. 2010) .....................14

*Cohen v. State Farm Ins. Co.*, 3:07-CV-251, 2007 WL 4437223 (M.D. Pa. Dec. 14, 2007 ....................14

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). ....................................21

*Danis Indus. Corp. v. Ground Improv. Tech., Inc.*, 645 So. 2d 420 (Fla. 1994) ..........................................5

*Dixon v. Allergan USA, Inc.*, 645 F. App'x 930 (11th Cir. 2016). ............................................................37

*DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762 (11th Cir. 2012) .........................14, 35

*E.E.O.C. v. Phillips Colleges, Inc.*, 984 F. Supp. 1464 (M.D. Fla. 1997) ...................................................26

*Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518 (Fla. 3d DCA 1986) .................................30

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

*Eli Lilly & Co. v. Tyco Integrated Sec.*, LLC., No. 13-80371-CIV, 2015 WL 11251732 (S.D. Fla. Feb. 10, 2015) ....................................................................................................................................40

*Ellis v. Warner*, No. 15-10134-CIV, 2017 WL 634287 (S.D. Fla. Feb. 16, 2017) ...................................40

*Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282 (11th Cir. 2011) ..........................................39

*Finn v. Prudential-Bache Securities, Inc.*, 821 F.2d 581 (11th Cir. 1987) ...............................................31

*Fla. Evergreen Foliage v. E.I. Du Pont De Nemours & Co.*, 135 F. Supp. 2d 1271 (S.D. Fla. 2001) ..........31

*Flores v. Allstate Ins. Co.*, 819 So. 2d 740 (Fla. 2002). .............................................................................4

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ......................................................................................................28

*Garcia v. Clarins USA, Inc.*, 2014 WL 11997812 (S.D. Fla. Sept. 5, 2014). ...........................................40

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) .......................................37, 38, 39

*Geico Gen. Ins. Co. v. Virtual Imaging Services, Inc.*, 141 So. 3d 147 (Fla. 2013) ....................................1

*Guyana Tel. & Tel. Co. v. Melbourne Intern.*, 329 F.3d 1241 (11th Cir. 2003 ..........................................32

*In re Checking Account Overdraft Litig.*, 780 F.3d 1031 (11th Cir. 2015) .................................................35

*Ivey v. Allstate Ins. Co.*, 774 So. 2d 679 (Fla. 2000) ....................................................................................5

*Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co., Inc.*, 02-80031-CIV., 2003 WL 21146714 (S.D. Fla. May 6, 2003), *report and recommendation adopted,* 2003 WL 22097937 (S.D. Fla. Sept. 2, 2003). .................................................................................................................................14

*Kay v. Katzen*, 568 So. 2d 960 (Fla. 3d DCA 1990) ...................................................................................30

*King v. Bencie*, 752 F. App'x 881 (11th Cir. 2018) ....................................................................................29

*La. Power & Light Co. v. City of Thibodaux,* 360 U.S. 25 (1959) ...............................................................22

*Lakeland Reg'l Med. Ctr., Inc. v. AHCA*, 917 So. 2d 1024 (Fla. 1st DCA 2006) ......................................18

*Lewis v. Guthartz*, 428 So. 2d 222 (Fla. 1982) ..........................................................................................30

*Liberty Mut. Ins. Co.*, 832 So.2d 916 (Fla. 1st DCA 2002) .......................................................................15

*Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011) .................40

*Londono v. Turkey Creek, Inc.,* 609 So. 2d 14 (Fla. 1992) .........................................................................24

*Lustig v. Bear Stearns Residential Mortg. Corp.*, 411 F. App'x 224 (11th Cir. 2011) ...............................40

*Marcinelli v. Davis*, 217 So. 3d 1034 (Fla. 4th DCA 2017) .......................................................................33

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...............................................................................................27

*McConnell v. Federal Election Com'n*, 124 S.Ct. 619 (2003) ....................................................................22

*McKendry v. State*, 641 So. 2d 45 (Fla. 1994). .........................................................................................36

*McKenzie Check Advance of Fla., LLC v. Betts*, 112 So. 3d 1176 (Fla. 2013) .........................................16

*Mergens v. Dreyfoos*, 166 F.3d 1114 (11th Cir. 1999) ...............................................................................31

FUERST ITTLEMAN DAVID & JOSEPH

ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

*Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202 (11th Cir. 2015)............................................39

*Miller v. FCC*, 66 F.3d 1140, 1145 (11th Cir. 1995) ........................................................................35

*Murray v. Auslander*, 244 F.3d 807 (11th Cir. 2001). ....................................................................35

*Nationwide Mut. Co. v. Ft. Myers Total Rehab Center, Inc.,* 657 F. Supp. 2d 1279 (M.D. Fla. 2009)..........32

*Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., Inc.*, 753 So. 2d 55 (Fla. 2000) ............................29

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350 (1989)..............................20

*O'Rear v. Am. Family Life Assur. Co.*, 139 F.R.D. 418 (M.D. Fla. 1991)..............................................37

*Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521 (D. Md. 2001)…………………………...        14

*Otwell v. Alabama Power Co.*, 747 F.3d 1275 (11th Cir. 2014) ....................................................34

*Padilla v. Derius v. Allstate Indem. Co.*, 723 So. 2d 271 (Fla. 4th DCA 1998) ................................15

*Paradigm Ins. Co. v. Carter,* 944 F.Supp. 883 (M.D. Fla. 1996) ................................................22

*Peebles v. Puig*, 223 So. 3d 1065 (Fla. 3d DCA 2017)....................................................................28

*Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327 (S.D. Fla. 2012) ........................40

*Pielage v. McConnell*, 516 F.3d 1282 (11th Cir. 2008) ................................................................12

*Progressive Am. Ins. Co. v. Eduardo J. Garrido D.C. P.A.*, 211 So. 3d 1086 (Fla. 3d DCA 2017) ..............1

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706 (1996) ................................................................22

*Raimi v. Furlong*, 702 So. 2d 1273 (Fla. 3d DCA 1997)................................................................33

*Republic of Ecuador v. Philip Morris*, 188 F.Supp. 2d 1359 (S.D. Fla. 2002)................................22

*Republic of the Phil. v. Pimentel*, 553 U.S. 851 (2008)................................................................25

*Shands Teaching Hosp. v. Beech Street Corp.*, 899 So. 2d 1222 (Fla. 1st DCA 2005). ....................32

*Sharrard v. State*, 998 So. 2d 1188 (Fla. 4th DCA 2009) ............................................................23

*Shenandoah Chiropractic, P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283 (S.D. Fla. 2007)..............15

*Silvey v. City of Lookout Mountain, Georgia*, 4:18-CV-0027-HLM, 2018 WL 8619795 (N.D. Ga. Apr. 30, 2018)........................................................................................................20

*Sky Med. Supply Inc. v. SCS Support Claims Services, Inc.*, 17 F. Supp.3d 207 (E.D.N.Y. 2014) ..............25

*State ex rel. Johnson v. Vizzini*, 227 So. 2d 205 (Fla. 1969)........................................................36

*State Farm Auto Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307 (S.D. Fla. 2017)........................................................................................................34

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC et al.*, Case No. 1:17-cv-20028-KMM (S.D. Fla. Jan. 4, 2017).........................................................................31

*State Farm Mut. Ins. Co. v. Nichols*, 932 So. 2d 1067 (Fla. 2006)........................................29, 32

*State Farm v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013)....................................19

FUERST ITTLEMAN DAVID & JOSEPH

ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

*State v. Mendiola*, 919 So. 2d 471, 472 (Fla. 3d DCA 2005)..................................................23

*Stockton v. Lansiquot*, 838 F.2d 1545 (11th Cir. 1988) ......................................................25

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197 (11th Cir. 2018)...........34

*Sutton v. Crane*, 101 So. 2d 823 (Fla. 2d DCA 1958) .........................................................31

*U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002) .........................37

*USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352, 2016 WL 4254257 (S.D. Fla. Feb. 16, 2016) ......................................................................40

*Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, 8:12-CV-897-, 2012 WL 3156596 (M.D. Fla. Aug. 3, 2012)...............................................................................13

*Vega v. T–Mobile, USA, Inc.,* 564 F.3d 1256 (11th Cir. 2009)...............................................13

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81 (11th Cir. 2008) .............37

*Ward v. Atl. Sec. Bank*, 777 So. 2d 1144 (Fla. 3d DCA 2001)................................................30

*Wilborn v. Jones*, 761 F. App'x 908 (11th Cir. 2019). ......................................................12

*Wilson v. Kade*, 215 So. 3d 632 (Fla. 3d DCA 2017)........................................................24

FUERST ITTLEMAN DAVID & JOSEPH

ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

Defendants, through undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7), 9(b), and 23, move to dismiss, *with prejudice,* the Complaint filed by State Farm Mutual Automobile Insurance Company and State Farm Fire And Casualty Company.

## I.    INTRODUCTION

> A move to eliminate Florida's no-fault auto insurance system advanced Monday in the Senate, though a similar House proposal has not been heard as the annual [Florida 2019] legislative session reaches its halfway point ....
>
> The Senate Banking and Insurance Committee voted 5-3 to approve Senate Bill 1052, which sponsor Tom Lee [R-Thonotosassa] expects to be worked into any broader insurance package that emerges in the second half of the session.
> ...
> A House proposal (HB 733) aimed at repealing the decades-old no-fault system has not been heard in committees. Under the no-fault system, drivers are required to carry personal injury protection, or PIP, coverage to help pay medical bills after accidents.
>
> For several years, lawmakers in both chambers have floated the idea of ending the no-fault system. Motorists are required to carry $10,000 in PIP coverage, an amount unchanged since 1979.
>
> "It's just fundamentally irresponsible for people to be driving around in 2019 with what essentially amounts to $1,500 in no-fault insurance," Lee said.
>
> *'PIP' Repeal Moves Forward In State Senate (Apr. 2, 2019)*
> https://miami.cbslocal.com/2019/04/02/pip-repeal-moves-forward-in-state-senate/

This past April 2019, State Farm lost its perennial battle to repeal Florida's PIP statute.[1]

Two months later, State Farm filed this action seeking damages, injunctive relief, and an expansive proclamation that all invoices submitted on behalf of all 916 State Farm policyholders who were treated by the Defendants from June 2015 to the present were "fraudulent" in their entirety.

There are two fundamental problems with this lawsuit.

First, as a substantive matter, it improperly tries to circumvent the intricate statutory system for resolving PIP benefit disputes set forth in section 627.736, Florida Statutes, particularly the Florida

---

[1] *See* § 627.736, Fla. Stat. (history); *Geico v. Virtual Imaging Services, Inc.*, 141 So. 3d 147, 152 (Fla. 2013) (analyzing history of PIP amendments through 2008); *Progressive Am. Ins. Co. v. Eduardo J. Garrido D.C. P.A.*, 211 So. 3d 1086, 1089 (Fla. 3d DCA 2017) (analyzing 2012 PIP amendments).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

Legislature's decision on when, how and under what circumstances to authorize an award of prevailing-party attorneys' fees to policyholders or insurance companies.

Second, this lawsuit is a guised and procedurally improper attempt to certify a *defendant class action* without complying with the requirement of Rule 23.

State Farm has not even attempted to allege any of the required elements for a class action; nor could this case ever qualify for class relief. Class certification is inappropriate because State Farm cannot show, among other things, that common questions of law or fact "predominate over any questions affecting only individual members" or that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, individual issues pertaining to each PIP medical claim would overwhelm common questions with respect to whether each of the 916 policyholders received medically necessary services to treat an emergency medical condition – requiring review of each medical file, testimony from each policyholder and treating providers, and a mini-trial on every PIP claim. Courts have consistently denied class relief in similar PIP disputes brought *against* insurers. *See Cielo v. Garrison Prop. & Cas. Ins. Co.*, No. 8:15-CV-2324, 2016 WL 1244552, at *3 (S.D. Fla. Mar. 30, 2016) ("Because the claim for damages will require a significant number of individualized inquiries, a class action is inappropriate[.]").

Defendant class action treatment of PIP benefit disputes is also contrary to the comprehensive scheme for resolution of disputes in Florida state court *on a case-by-case basis* that has been a hallmark of the PIP statute since 1972. The PIP dispute resolution scheme represents a careful balancing of legitimate state interests. Federal court interference in this intricate system would jeopardize the rights of State Farm's policyholders to enjoy the right to select providers of their choice (under the Florida Patient's Bill of Rights and Responsibilities) as well as their entitlement to the *one-way* prevailing party attorneys' fee provision in § 627.428, Fla. Stat., for PIP disputes.

Paragraph 4(h) of the PIP statute provides the only exception to the one-way prevailing party attorneys' fee provision, namely, if the insurer proves that the policyholder committed fraud:

> Benefits are not due or payable to or on the behalf of an insured person if that person *has committed, by a material act or omission, insurance fraud relating to personal injury protection coverage under his or her policy*, if the fraud is admitted to in a sworn statement by the insured or established in a court of competent jurisdiction. Any insurance fraud voids all coverage arising from the claim related to such fraud under the personal injury protection coverage of the insured person who committed the fraud, irrespective

of whether a portion of the insured person's claim may be legitimate, and any benefits paid before the discovery of the fraud is recoverable by the insurer in its entirety from the person who committed insurance fraud. *The prevailing party is entitled to its costs and attorney fees in any action in which it prevails in an insurer's action to enforce its right of recovery under this paragraph.*

§ 627.736(4)(h), Fla. Stat. (emphasis added).[2]

As of 2013, however, an insurer that seeks to avail itself of the remedies under paragraph 4(h) is required as a condition precedent to send advance written notice to its policyholders:

If an insurer has a reasonable belief that a fraudulent insurance act, for the purposes of s. 626.989 or s. 817.234, has been committed, *the insurer shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud.* Beginning at the end of the initial 30-day period, the insurer has an additional 60 days to conduct its fraud investigation. Notwithstanding subsection (10), no later than 90 days after the submission of the claim, the insurer must deny the claim or pay the claim with simple interest as provided in paragraph (d).

§ 627.736(4)(i). Fla. Stat. (emphasis added).

Indeed, the insurance company's failure to timely pay PIP claims as required in paragraph 4(h) is itself an unfair insurance trade practice. *See* § 626.9541(1)(i)(i.), Fla. Stat. ("The following are defined as unfair methods of competition and unfair or deceptive acts or practices: … *Failing to pay personal injury protection insurance claims within the time periods required by s. 627.736(4)(b).*") (emphasis added). The Florida legislature added this section to the Unfair Insurance Trade Practices Act at the same time it amended the PIP statute to add the condition precedent requirement in paragraph 4(i).

Here, State Farm has not alleged compliance with the condition precedent required by section 627.736(4)(i) and, more significantly, has attempted to file a claim against the Defendants under the Florida Deceptive and Unfair Trade Practices Act., §§ 501.201-213, Fla. Stat. ("FDUTPA"), which

---

[2] This fraud provision was enacted in 2003. *See* Ch. 2003-411, § 8, Laws of Florida. Significantly, State Farm has filed suit here for *common law* fraud and has not purported to file a cause of action or seek prevailing party attorneys' fees under Paragraph 4(h).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

would allow State Farm to seek fees against its policyholders[3] and thus defeat the limitations on such fee awards imposed by paragraphs 4(h) and 4(i) of the PIP statute.

In addition to depriving policyholders of the benefits of the attorney-fee-shifting provisions and conditions precedent for fraud claims relating to PIP benefits, this lawsuit also seeks to deprive policyholders of their right to select a doctor of their choice under the Florida Patients' Bill of Rights.

PIP policyholders are not captive patients, like those in HMO or PPO plans. Policyholders are free to select the medical provider they feel will provide the best services. *See* § 381.026(4)(d)(1), Fla. Stat. ("A patient has the right to impartial access to medical treatment … regardless of … source of payment."). Yet, State Farm is effectively asking this Court to blacklist the Defendants from providing PIP treatments by creating a *de facto* "in-network" of PIP providers that its policyholders **must** go to for treatment. The limitation that State Farm is seeking to impose on the Florida Patients' Bill of Rights is illegal.

In addition to the foregoing procedural improprieties, there are a number of substantive deficiencies in the Complaint that require dismissal of each of the causes of action as a matter of law.

At the end of the day, federal courts should not interfere with the intricate state court PIP claim resolution process, or disturb the public policy determinations of the Florida legislature, as to how such PIP claim disputes should be resolved and who should bear the cost.

## II.   FACTS

### A.  The Florida Statutory No Fault Insurance Scheme

The Florida Motor Vehicle No-Fault Law (§§ 627.730-627.7405, Fla. Stat.) is a comprehensive statutory scheme enacted for the following expressly stated legislative purpose: "To provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits, for motor vehicles required to be registered in this state and, with respect to motor vehicle accidents, a limitation on the right to claim damages for pain, suffering, mental anguish, and inconvenience." § 627.731, Fla. Stat. (2019).[4]

The PIP statute, which is codified in § 627.736, is "an integral part of the no-fault statutory scheme." *Flores v. Allstate Ins. Co.*, 819 So. 2d 740, 744 (Fla. 2002). "The PIP statute is unique, in that

---

[3] As assignees, the Defendants stand in the shoes of the policyholders for all purposes.

[4] Unless otherwise noted, all citations to the PIP statute reflect the law that was in effect during the relevant period of the subject claims, which are reflected in the 2019 version of the Florida Statutes.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

it abolished a traditional common-law right by limiting the recovery available to car accident victims and in exchange, required PIP insurance that was recoverable without regard to fault." *Allstate Ins. Co. v. Holy Cross Hosp., Inc.*, 961 So. 2d 328, 332 (Fla. 2007) (internal quotations and citations omitted). "Without a doubt, the purpose of the no-fault statutory scheme is to 'provide swift and virtually automatic payment so that the injured insured may get on with his [or her] life without undue financial interruption.'" *Ivey v. Allstate Ins. Co.*, 774 So. 2d 679, 683–84 (Fla. 2000) (citation omitted).

Effective January 1, 2013, the Florida Legislature placed the following limitations on reimbursement of PIP benefits:

- **Timeline.** 14-day deadline for policyholders to seek medical care for injuries after a car accident;

- **Major Injury**. Only those patients diagnosed with an emergency medical condition (EMC) can receive the full $10,000;

- **Doctor Diagnosis**. Only a doctor (M.D., D.O., dentist, or advanced nurse practitioner) can diagnose an EMC;

- **Reduced Benefit**. The full $10,000 benefit reduced to $2,500 absent an EMC.

§ 627.736(1)(a)(1)-(5), Fla. Stat.; *see* Ch. 2012-197, § 10, Laws of Fla.

Throughout its history, given the unbalanced economic power favoring the insurers, the PIP statute contained a one-way attorney fee statute, meaning that in the event a policyholder (or its assigns, such as the providers) sues to recover benefits and prevails, the insurance company must pay the prevailing policyholder's reasonable attorneys' fees, but not the other way around. *See* § 627.428; *Danis Indus. Corp. v. Ground Improv. Tech., Inc.*, 645 So. 2d 420, 421 (Fla. 1994) ("Here, the statute is a one-way street offering the potential for attorneys' fees only to the insured or beneficiary.").

The one-way provision is incorporated into the PIP statute by virtue of § 627.7346(8), which provides in part: "With respect to any dispute under the provisions of ss. 627.730-627.7405 between the insured and the insurer, or between an assignee of an insured's rights and the insurer, the provisions of ss. 627.428 and 768.79 apply[.]"

The dispute in this case is clearly driven by State Farm's dissatisfaction with the statutory scheme, including the one-way fee provision, which was designed by the Florida legislature to level the playing field by creating exposure to State Farm for refusing to fully pay the lawful amount due

for services. The one-way fee provision is an integral part of the statute and of the political compromises that were made in abrogating the common law rights, assuring speedy treatment and payment of PIP claims, and giving the policyholder an equal hand in litigation where the policyholder prevails. The one-way fee provision discourages unnecessary delay by the insurance company in paying legitimate claims and prevents insurance companies from using their economic might, as in this case, to try to deprive policyholders of statutory benefits and at the same time attempting to recover attorneys' fees in the wrong statutory direction.

Significantly, as discussed earlier, the PIP Statute has built-in protections for insurers such as State Farm. The Florida Legislature created a comprehensive mechanism not only for collecting PIP premiums but also for *disputing* PIP claims. *See generally* § 627.736(4)(h), Fla. Stat.

If State Farm feels justified in not paying a claim, then State Farm should stand behind its belief and not pay the claim. Here, by contrast, State Farm paid the claim; gave no notice to the policyholder of any allegation of fraud; and sued to disgorge the money paid to the providers without providing notice to the policyholders as required by § 627.736(i), which could potentially leave the policyholders on the hook for the unpaid invoice.

Thus, rather than adhere to the legislative mandate, State Farm is seeking by this disguised defendant class action to turn the PIP statutory scheme on its head and do the following:

- Secretly obtain class action relief to deny all PIP benefits sought by Defendants on behalf of policyholders in their entirety without meeting or even pleading the rigid threshold requirements under Federal Rule of Civil Procedure 23;

- By-pass the claim resolution procedure enacted by the Legislature and avoid the equalizing one-way attorneys' fees provision and instead recover fees against policyholders and their assignees, which is clearly not the intention of the Florida Legislature;

- Effectively have this Court approve what would otherwise amount to an unfair insurance trade practice by "blacklisting" the Defendants and creating through litigation its own "in-network" approved providers, and thereby trampling the statutory rights of policyholders to select the medical provider of their choice.[5]

- Evade the principles of res judicata and claim preclusion by asking for disgorgement of claims already litigated;

---

[5] *See* § 627.732(11)(a), Fla. Stat. ("An insurer is engaging in a prohibited unfair or deceptive practice … if the insurer, with such frequency so as to indicate a general business practice … [f]ails to pay valid claims for personal injury protection[.]").

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

- ▪ Deprive policyholders and their assignees access to the Florida court system;

- ▪ Strip ACHA of its licensing and enforcement authority.

### B.  The Facts of the Present Case

State Farm effectively asks this Court to re-write the PIP statute, and to shut down the framework for resolving claim disputes created by the PIP statute, for all of its policyholders who sought medical care from Defendants.

The factual predicate offered by State Farm to engineer this downside economic risk for its policyholders and their assignees, and to justify the extraordinary request for this Court to re-write the Florida PIP scheme, is murky, at best, and totally unsupported by ultimate facts.

Upon careful reading of the Complaint, it is apparent that it only sets forth *ultimate facts* regarding the claims of *two patients* (Nos. 626 and 532), who have unpaid invoices of $623 and $11,845, respectively. S*ee* Comp. Exs. 13, 19, 22 and 27. There are no facts or information regarding any of the other 914 patients listed on Exhibit 1 to the Complaint from which this Court could glean that an untoward act was committed; whether the treatments were medically necessary;[6] and whether patients suffered an emergency medical condition.[7] Except for Exhibits 13 and 22 pertaining to Patient/Policyholder No. 532, and Exhibits 19 and 27 pertaining to Patient/Policyholder No. 526), none of the other exhibits – neither the Examinations Under Oath nor the depositions transcripts -- deal with the medical circumstances *of any* of the other 914 claims at issue. They instead pertain to *non-parties*, such as 411-PAIN, and testimony taken in prior lawsuits involving CEDA-affiliated clinics that are not defendants in this action. *See, e.g.,* Exhibits 37, 38, and 39 to the Complaint.

---

[6] "**Medically necessary**" refers to "a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is: (a) In accordance with generally accepted standards of medical practice; (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and (c) Not primarily for the convenience of the patient, physician, or other health care provider." § 627.732(2), Fla. Stat.

[7] "**Emergency medical condition**" means "a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) [s]erious jeopardy to patient health; (b) [s]erious impairment to bodily functions[; or] (c) [s]erious dysfunction of any bodily organ or part." § 627.732(16), Fla. Stat.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

Nevertheless, State Farm alleges that a dispute over two invoices totaling $12,468 justifies disgorgement of $4 million in PIP benefits paid to Defendants by State Farm on behalf of its policyholders over the past four years. Other than conclusory and unverified allegations of a "fraudulent scheme" to treat patients with a "predetermined protocol" based on a spreadsheet of unknown origin and methodology, there are literally *no allegations* of ultimate fact that would support a finding regarding the appropriateness of the medical services provided by the Defendants to the other 914 policyholders.

Nor does State Farm's convenient use of the label "predetermined protocol" establish ultimate facts to support a claim for common law fraud. Instead, State Farm leaps to the implausible suggestion that none of its 916 policyholders who visited Defendants in the past four years received any form of compensable medical treatment. The fact that all of the policyholders received *standardized diagnosis and treatment* is evidence of nothing, just as it would not be evidence of billing fraud for an insurance company's lawyer to send pattern pleadings in every automobile injury dispute, including a similar answer and affirmative defenses; a similar request for production; and a similar motion for summary judgment.

State Farm's allegations of a "predetermined" protocol are a pretext. State Farm wants to dismantle the entire PIP statutory dispute system of case-by-case claim resolution, balanced by the one-way attorney fee provision, because those features *equalize the power* of the participants and level the judicial playing field. State Farm's remedy for its systematic displeasure lies with the Florida Legislature in Tallahassee, not with the federal District Court in Miami.

## C. State Farm's Reputation for Mistreating Policyholders

Although State Farm attacks Defendants with vitriol, State Farm does not come to this Court with clean hands. Although State Farm has been telling Floridians since 1971 that, "Like a Good Neighbor, State Farm Is There," and even though its newest tagline is, "Here to Help Life Go Right,®" neither of these advertising slogans capture State Farm's corporate culture of hubris, greed, and disrespect for its own policyholders that one state supreme court has characterized as "reprehensible."

Recent entries on State Farm's corporate rap sheet include:

- "State Farm … and other giant home and auto insurers around the country have co-opted law enforcement to intimidate and prosecute their own customers — tactics that can help companies boost their profits and avoid paying claims." Kendall Taggart, *Insurance Companies Are Paying Cops To Investigate Their Own Customers*

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

https://www.buzzfeednews.com/article/kendalltaggart/insurance-fraud-erie-state-farm-farmers?bfsource=relatedmanual (BuzzFeed News, Aug. 15, 2019).

- Cease and Desist Order issued by Louisiana Insurance Commissioner for improperly doubling hurricane deductibles. https://www.miamiherald.com/news/business/article234285332.html (The Associated Press, Aug. 22, 2019).

- "State Farm agreed to pay $250 million on the brink of a trial to customers who claimed the company tried to rig the Illinois justice system to wipe out a $1 billion jury verdict from 19 years ago." Tim Bross, Margaret Cronin Fisk, and Jef Feeley, *State Farm Ducks Racketeering Trial With $250 Million Accord* https://www.bloomberg.com/news/articles/2018-09-04/state-farm-settles-racketeering-case-for-250-million) (Bloomberg L.P., Sept. 4, 2018); Scott Berles, $250 Million Settlement Reached in Hale v State Farm, https://americanlegalnews.com/250-million-settlement-reached-in-hale-v-state-farm/ (Am. Legal News Sept. 18, 2018).

- ". According to [Rigsby, former State Farm claims adjusters, State Farm] instructed them and other adjusters to misclassify wind damage as flood damage in order to shift petitioner's insurance liability to the Government." *State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436, 438 (2016).

- "More importantly, [the *Rigsby* case] gave rise to other claims that Bloomington-based State Farm defrauded the National Flood Insurance Program. Last year, Mississippi filed its own civil fraud lawsuit against State Farm, saying the state paid as much as $522 million to State Farm policyholders after the company manipulated the reports of adjusters and engineers to limit its responsibility." *Supreme Court upholds Katrina fraud verdict against State Farm* https://www.chicagobusiness.com/article/20161206/NEWS07/161209901/supreme-court-upholds-katrina-fraud-verdict-against-state-farm (Assoc. Press., Dec. 6, 2016).

- *The DOAN v. State Farm,* No. 1-08-CV-129264 (slip op. Santa Clara County Calif. Sup. Ct., April 20, 2016) (finding that State Farm violated California law by unfairly calculating depreciation, resulting in over-depreciation and reduced payouts) (copy at www.statefarmpersonalpropertysettlement.com*)*.

- "State Farm maintained a list of the names of predominantly Jewish lawyers (referred to at State Farm as the "Jewish Lawyers Lists"). The claims of the clients of the attorneys whose names appeared on the "Jewish Lawyers Lists" were automatically transferred to State Farm's fraud unit simply because the lawyer's name appeared on the "Jewish Lawyers List." If your name was on the list of Jewish lawyers, your clients claim would be automatically referred to

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

the fraud unit and never settled or paid." Brief filed in *A. Todd Hindin v. State Farm Mut. Auto. Ins. Co.*, B241540, 2014 WL 212177 (Cal. Ct. App. Jan. 21, 2014) (as reported in https://www.propertyinsurancecoveragelaw.com/2014/02/articles/state-farm/hindin-v-state-farm-the-landmark-claims-practice-case-that-few-know-about-finally-ends/).

- "The Campbells introduced evidence that State Farm's decision to take the case to trial was a result of a national scheme to meet corporate fiscal goals by capping payouts on claims company wide. This scheme was referred to as State Farm's … PP & R policy. …Evidence pertaining to the PP & R policy concerned State Farm's business practices for over 20 years in numerous States. ….. The jury awarded the Campbells $2.6 million in compensatory damages and $145 million in punitive damages …***The Utah Supreme Court … reinstated the $145 million punitive damages award.*** Relying in large part on the extensive evidence concerning the PP & R policy, the court concluded State Farm's conduct was ***reprehensible.***" *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 414–15 (2003) (citations omitted) (emphasis added).

- "[T]he Superintendent … issued a Notice of Proposed Cease and Desist Order as he was of the opinion that State Farm … committed an unfair or deceptive act or practice by charging rates for coverages or categories of automobile insurance that were not approved by the Superintendent.") Cease and Desist Order Against State Farm (Ontario Fin. Servs. Comm'n, Dec. 9, 2005) https://www.fsco.gov.on.ca/en/about/enforcement/cdo/Pages/cdo-statefarm.aspx.

- "In fact, the lawsuit claims State Farm has issued Personal Injury Protection (PIP) benefits coverage to thousands of Florida consumers for which it has consistently paid out improperly reduced amount, specifically for claims pursuant to CPT codes 98940 and 98941, billing codes signifying chiropractic spinal treatment." Class Action Complaint, *Coastal Wellness Centers, Inc. v. State Farm*, Case 0:17-cv-61950-LSS (S.D. Fla. Oct. 3, 2017) as reported https://www.classaction.org/news/lawsuit-claims-state-farm-improperly-reduces-payments-for-auto-accident-injury-claims).

- Complaint, *MSPA CLAIMS 1, LLC, a v. State Farm,* No. 1:18-cv-23165-RNS (S.D. Fla. Aug. 3, 2018) (found at https://www.classaction.org/news/class-action-claims-state-farm-failed-to-reimburse-medicare-payments (alleging that State Farm failed to reimburse Medicare secondary payers that cover medical expenses of its plan members).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

### III.   MEMORANDUM

This action does not come before the Court on a clean jurisprudential slate.

State Farm has initiated similar federal lawsuits over the past decade as part of its efforts to repeal the PIP statute through litigation and to push back against providers who had the temerity to demand full payment for their services, which demands were enforced under AOBs.

State Farm, through its economic muscle, has defeated various attempts to dismiss complaints in similar actions. Here, however, the Defendants have asserted novel arguments. For example, Defendants have not located published opinions attacking similar State Farm complaints on grounds that they improperly circumvented Rule 23, or that AHCA had issued Certificates of Exemption, or that State Farm failed to identify which of the 916 PIP claims were adjudicated in state court, or that fraud claims were barred by the independent tort doctrine, or that State Farm cannot plead reliance for previously having sued Cereceda, or that the FDUTPA claim is preempted by the PIP statute. To the extent we raise arguments previously considered by the courts in a similar context that have been previously rejected in non-binding opinions, Defendants urge this Court to reconsider the applicability of those doctrines to the instant dispute for the reasons set forth below.

Importantly, Defendants ask this Court to keep in mind *two key factual distinctions* when evaluating this motion because this case is an outlier that dangerously intrudes too far into AHCA's licensing domain and the policy determinations underlying the Florida legislature's decision to control the circumstances of when and whether a litigant attempting to collect payment on a PIP claim will be exposed to an adverse attorney fee award.

First, the CEDA billing entities here were *not* "self-declared" as being exempt under the HCCA but were actually issued **Certificates of Exemption** from AHCA. Thus, here, State Farm asks this Court to collaterally overrule AHCA's written licensing determinations.

Second, existing case law deals with whether a clinic satisfied the "wholly-owned" exemption under the HCCA, which is legally cut and dry. Here, by contrast, State Farm is not disputing whether the CEDA billing entities are wholly-owned by Mark Cereceda. Rather, State Farm is challenging whether Cereceda properly supervised the business activities of each clinic, which clearly falls within AHCA's purview. *See* Comp. at ¶ 6 ("Ceda Ortho Group, the Cereceda Clinics, and Springs Crossing MRI did not qualify for the HCCA license exemption because, since at least June 2015, Cereceda has not fulfilled his statutory duties under § 400.9905(4)(g), to supervise the business activities of Ceda Ortho Group, the Cereceda Clinics, and Springs Crossing MRI[.]").

Fuerst Ittleman David & Joseph
One Southeast Third Avenue, Suite 1800, Miami, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

Here, there are no ultimate facts to support State Farm's claim regarding lack of supervision because the allegation is predicated entirely on depositions taken for events years ago in cases involving **non-party** Ceda affiliates. *See* Exhibits 37, 38, and 39. Tellingly, the Complaint does not allege any ultimate facts that Cereceda is not operating the *Defendant* clinics in this case or personally observing how they operate. Instead, State Farm attaches exhibits from entirely unrelated lawsuits on behalf of unrelated entities to improperly argue that Cereceda's actions with respect to those **unrelated entities** qualify to support allegations regarding supervision of the named CEDA entities here.

Stripped of the irrelevant exhibits, the Complaint presents only conclusory allegations with respect to the licensing issue ("Cereceda failed to supervise"), as well as virtually **zero ultimate facts** regarding the "predetermined protocol," which is unsupported by any of the 39 exhibits to the Complaint other than the four exhibits relating to two out of 916 patients, No. 526 and 532 (*see* Comp. ¶¶ 78-81 & Exs. 13, 19, 22 and 27). Such naked allegations are entirely insufficient to state a claim for fraud or to seek declaratory relief even in a class-wide context, which State Farm contends this is not.

For the reasons set forth below, the Complaint should be dismissed.

### A. The Standard for Granting Involuntary Dismissal

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint.

When evaluating a motion to dismiss, the court must accept "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is **inapplicable to legal conclusions**." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Wilborn v. Jones*, 761 F. App'x 908, 910 (11th Cir. 2019). While the complaint need not set out "detailed" factual allegations, it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* (citing *Twombly*).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

### B.  The Complaint Improperly Seeks To Circumvent Rule 23

As a threshold matter, the Court should dismiss this entire action because it is a cleverly disguised yet improper attempt to litigate a defendant class action without pleading, much less meeting, the requirements of Rule 23(b).

In fact, State Farm's Expedited Motion for All Writs Act Injunction [ECF No. 5] is rife with tacit concessions that its true aim is to circumvent Rule 23, to abridge Defendants' rights to litigate the propriety of State Farm's claims processing, and to bypass the statutory PIP mechanism purely for its financial benefit. *See* ECF No. 5 at 4 ("[A] decision in [State Farm's] favor in the Federal Action will eliminate Defendants' ability to recover for any unpaid or allegedly underpaid claims in PIP Suits, thereby removing the need for those issues to be tried in separate proceedings."); *Id.* ("The Court will have the full benefit of evaluating all the lay and expert testimony and documentary evidence associated with nearly 800 claims at issue … and potentially eliminate the need to litigate hundreds if not thousands of individual disputes before multiple Florida Courts.").

"Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification." *See Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, 8:12-CV-897-, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012).

Certification of a damages class under Rule 23(b)(3) requires a plaintiff to establish that "the question[s] of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to all other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The Eleventh Circuit has further explained that "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Vega v. T–Mobile, USA, Inc.,* 564 F.3d 1256, 1270 (11th Cir. 2009). According to another Eleventh Circuit ruling:

> Common issues of fact and law predominate if they 'ha[ve] a direct
> impact on every class member's effort to establish liability and …
> entitlement to …. relief' … [C]ommon issues will not predominate over
> individual questions if, 'as a practical matter, the resolution of [an]
> overarching common issue breaks down into an unmanageable variety
> of individual legal and factual issues.'

*Babineau v. Fed. Express Corp.,* 576 F.3d 1183, 1191 (11th Cir. 2009) (citations omitted).

Courts around the country have ruled – *at State Farm's insistence* – that the reasonableness and

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

necessity of medical treatment is not an appropriate issue for class-wide determination. *See, e.g., Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 531 (D. Md. 2001) ("Ultimately Plaintiffs have failed to convince the Court why this case should be treated any differently from others where the necessity and reasonableness of medical treatment has been at issue. Consistently in such cases courts have found individualized inquiries to predominate and have declined certification."); *Cohen v. State Farm Ins. Co.*, 3:07-CV-251, 2007 WL 4437223, at *4 (M.D. Pa. Dec. 14, 2007); *see also A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 699 (S.D. Fla. 2017).

This case allegedly seeks relief pertaining to 916 claims.

Those 916 claims regarding 916 policyholders with 916 insurance policies living in 67 Florida counties will require proof of individualized damages and medical treatment under differing local standards of reasonable medical certainty, thus again contravening the predominance requirements of Rule 23 and depriving individual policyholders of their statutory right to local peer jury trials. *See DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 764–65 (11th Cir. 2012) ("In the present case, if the class was able to prevail on its claim, each medical service provider in the class would have to establish individual facts regarding the type of services performed, the amounts billed, and the amount of reimbursement received from State Farm in order to determine its appropriate monetary recovery."); *Cielo v. Garrison Prop. & Cas. Ins. Co.*, No. 8:15-cv-2324-T-23TBM, 2016 WL 1244552, at *3 (S.D. Fla. Mar. 30, 2016) ("Because the claim for damages will require a significant number of individualized inquiries, a class action is inappropriate to resolve the claim."); *Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 538, 546 (S.D. Fla. 2010) (noting that to prove claims for monetary damages, "every member of the putative class would have to engage in a similar analysis ... [that] would involve different policyholders, different medical services, different billing codes, different NCCI edits, possibly different modifiers, and different defenses; thus, an entirely different set of facts and legal conclusions."); *Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co., Inc.*, 02-80031-CIV., 2003 WL 21146714, at *8–10 (S.D. Fla. May 6, 2003), *report and recommendation adopted,* 2003 WL 22097937 (S.D. Fla. Sept. 2, 2003).

In sum, the large number of individualized factual determinations as to liability and damages would overwhelm those matters amenable to generalized proof, would result in a series of time consuming and costly mini-trials, and would defeat the purposes of class certification. Significantly, treating this case like a class action would allow State Farm to effectively deny PIP benefits, which by definition require a case-by-case analysis, on an impermissible wholesale basis, all with the design to

FUERST ITTLEMAN DAVID & JOSEPH

ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

by-pass the one-way, equalizing attorneys' fees provision in § 627.428, and instead potentially recover fees *against* policyholders and their assignees under FDUTPA, which is the inverse of statutory intent under the PIP statute; and to deny policyholders and their assignees constitutional access to the Florida state court system.

The effect of this thinly-veiled class action would be a court-sanctioned "blacklisting" of Defendants from providing medical services to State Farm policyholders, which would interfere with the right of policyholders to access medical treatment regardless of the "source of payment" and to "treatment for any emergency medical condition that will deteriorate from failure to provide such treatment." *See* §§ 381.0264(d)(1)-(2), Fla. Stat.

Beyond the dictates of Rule 23, it is also apparent that the PIP statute itself requires individualized, case-by-case determinations of PIP disputes. *See Shenandoah Chiropractic, P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283, 1285–86 (S.D. Fla. 2007) ("As the Plaintiff in the instant case articulates, it is seeking a declaratory judgment as to whether or not the insurer's method of determining reasonableness violates the language in the contract. This is exactly the sort of determination that [is] inappropriate for across-the-board declaratory relief, because the fact finder must, on a case by case basis, construe the term 'reasonable' and determine whether the insurer's evaluation of the bills submitted fits the definition of 'reasonable.'"); *Liberty Mut. Ins. Co.*, 832 So. 2d 916, 920 (Fla. 1st DCA 2002) ("Under the statutory scheme, the courts decide, case by case, whether insurers have met their obligations to pay personal injury protection benefits."); *Padilla v. Derius v. Allstate Indem. Co.*, 723 So. 2d 271, 274 (Fla. 4th DCA 1998) ("The current state of the law is that the issue of necessity in a PIP case is decided by factfinders on a case by case basis, depending on the specific evidence introduced at trial and the arguments of counsel.").

This is evident from the addition of paragraph 4(i) to the PIP statute, which requires, before any assertion of fraud, that the insurer send ***advance written notice*** as a condition precedent to each policyholder, which obviously is not alleged to taken place here. See § 627.736(4)(i), Fla. Stat. ("[T]he insurer ***shall*** notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud.") (emphasis added). Moreover, State Farm's own policies expressly prohibit the filing of class actions. *See* Sample State Farm Policy, Exhibit A hereto

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

("Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.").[8]

The reason for these restrictions is self-evident: the only fair way to determine if a policyholder received reasonable and necessary medical treatment, and that the provider billed accurately for its services, is to conduct an examination on an individualized basis. Here, to prove its case of alleged fraud, State Farm would need to bring in every patient and patient file, and litigate the issues of medical necessity and emergency medical condition one by one.[9] Contractual clauses barring class actions have been upheld by the Supreme Court. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011); *McKenzie Check Advance of Fla., LLC v. Betts*, 112 So. 3d 1176 (Fla. 2013). Thus, State Farm cannot circumvent the very class action waiver it embedded into its policies.

The Florida Constitution grants a specific right of access to the courts, providing that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Fla. Const. Art. I, Sec. 21. State Farm impermissibly seeks to deny policyholders the right to prompt PIP claim resolution bestowed by the Florida constitution and the Florida legislature by virtue of the PIP statue.

Accordingly, this Court should dismiss this action for failure to comply with Rule 23(b).

### C. AHCA's Agency Action Certifying That The Ceda Entities Qualify For Exemption From Licensure Cannot be Challenged in this Case

A substantial portion of the Complaint relies on the allegation that the Defendants providing the medical services (the "Ceda Entities") did not qualify for license exemptions under the Health Care Clinic Act, §§ 400.990 -995, Fla. Stat. ("HCCA"), and thus none of the services provided to State Farm's injured policyholders are compensable. Comp. at ¶¶ 124-25. However State Farm acknowledges that the Ceda Entities applied for and were issued Certificates of Exemption by the Florida Agency for Health Care Administration ("AHCA").[10]

---

[8] *See* fn. 11, *infra*, discussing the incorporation by reference doctrine.

[9] That is why these cases are routinely handled by the Florida county courts, which are far better equipped to cope with these cases as they have been doing since the inception of PIP.

[10] Defendant Ceda Orthopedics & Interventional Medicine of Cutler Bay, LLC, did not obtain a written Certificate of Exemption and therefore was self-declared for the relevant period and is not included in the definition of "CEDA Entities."

Page **16** of 41

Copies of the exemption certificates are attached hereto as Composite Exhibit B.[11]

State Farm tacitly argues that AHCA was ***wrong*** to issue the license exemptions to the Ceda Entities and now asks the Court to set aside the Exemptions. *See* Comp. at ¶¶ 12-25.

AHCA issued Certificates of Exemption to the Ceda Entities pursuant to the HCCA. *See* §400.9935(6), Fla. Stat. ("Any person or entity providing health care services… may voluntarily apply for a certificate of exemption from licensure under its exempt status with the agency…"). Significantly, the application for and issuance of exemption certificates is not mandatory, and a clinic may choose to self-determine that it is covered by the exemption. *See* Fla. Admin. Code R. 59A-33.006(1). Further, the statute provides that Exemption Certificates are "valid for up to 2 years" and are non-transferable, ensuring an ongoing relationship between AHCA and the entity regardless of its exempt status. § 400.9935(6). The law is clear that exemption certificates are not "rubber stamps" from AHCA. *See* § 400.9935(6), Fla. Stat., and Admin. Code R. 59A-3306(3). Additionally, the current form version of the Application not only details the information a provider must submit to AHCA when seeking an exemption certificate but also explains the consequences associated with submitting a false application. *See* "Application for Certificate of Exemption from Licensure as a Health Care Clinic," available at https://ahca.myflorida.com/MCHQ/Health_Facility_Regulation/Hospital_Outpatient/HealthCare Clinic/hcc_licensing.shtml.

This is no small matter. Florida law treats the submission of a "false, misleading, or fraudulent application or other document when…seeking an exemption from licensure as a health care clinic" as

---

[11] The Eleventh Circuit has adopted the "incorporation by reference" doctrine when analyzing Rule 12(b)(6) motions. The doctrine allows courts to consider a document attached to a motion to dismiss without converting the motion into one for summary judgment. *See Bamert v. Pulte Home Corp.*, 445 F. App'x 256, 267 (11th Cir. 2011) ("Two elements must be present for the doctrine to apply: (1) the document must be 'central to the plaintiff's claim,' and (2) 'the authenticity of the document is not challenged.'"); *Meadors v. Carnival Corp.*, 281 F. Supp. 3d 1304, 1307 (S.D. Fla. 2017) (citation omitted)). District courts may take judicial notice of state and federal public records without converting the motion to one for summary judgment because the authenticity of such documents cannot be challenged. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999) (taking judicial notice of SEC public records). Accordingly, federal district courts routinely take notice of state agency licensure determinations, such as the AHCA license exemptions issued here. *See Herrera v. JFK Med. Ctr. Ltd. P'ship*, 87 F. Supp. 3d 1299, 1303 (M.D. Fla. 2015) (taking judicial notice of AHCA license filed in support of motion to dismiss), *rev'd and remanded on other grounds*, 648 F. App'x 930 (11th Cir. 2016); *Bedtow Group II, LLC v. Ungerleider*, 15-CV-80255, 2015 WL 13310463, at *7 (S.D. Fla. Sept. 30, 2015) ("[T]he Court finds [based on judicial notice] that Gilbert and Krupin were duly licensed in Florida [to sell viatical settlement contracts.].").

Page **17** of 41

a *fraudulent insurance act*. *See* § 626.989(1)(a)(2), Fla. Stat. The State may investigate "fraudulent insurance acts" on its own initiative or based on reports of third parties. Investigators employed by the Division of Investigative and Forensic Services are "considered state law enforcement officers" with the power to arrest, to conduct search warrants, to serve subpoenas, and to even carry firearms. *Id.* § 626.989(7). Thus, the statute has a built-in mechanism to police compliance and an enforcement mechanism to punish wrongdoing.

Consistent with the statutory scheme, AHCA affirmatively approved the application and issued the certificates to the CEDA Entities. It is black letter law that AHCA's actions are entitled to "great deference." *Lakeland Reg'l Med. Ctr., Inc. v. State, Agency for Healthcare Admin.*, 917 So. 2d 1024, 1029 (Fla. 1st DCA 2006) (holding that AHCA's interpretation of a state licensing statute is "entitled to great deference"). Notwithstanding the statutory scheme for the issuance of exemption certificates, State Farm is asking this Court to substitute its judgment for AHCA's. The Court should decline this invitation and instead dismiss these claims, which are nothing more than a collateral attack against an agency decision.

A federal court setting aside AHCA's licensing decisions would materially disrupt, if not usurp, AHCA's authority to regulate the provision of health care services in the State of Florida and reopen decisions long since final and unappealable. *See Animal Legal Def. Fund v. U.S. Dept. of Agric.,* 789 F.3d 1206, 1210 (11th Cir. 2015) ("USDA's licensing regulations constitute a reasonable policy choice balancing the conflicting congressional aims of due process and animal welfare, and the AWA licensing scheme is entitled to deference by this court. … As explained below, assuming Seaquarium violated a substantive AWA standard, the remedy in this case lies not in the administrative license renewal scheme, but in USDA's power to initiate an enforcement proceeding. USDA has the discretionary enforcement authority to revoke a license due to noncompliance. *Only Congress, not this Court, possesses the power to limit the agency's discretion* and demand annual, substantive compliance with animal welfare standards.") (emphasis added); *Associated Home Health Agency, Inc. v. State Dept. of Health & Rehab. Services,* 453 So. 2d 104, 106 (Fla. 1st DCA 1984) ("And even if Associated, or any other person for that matter, was privy to information indicating that the agency had granted grandfather status based upon the licensee's fraud or material misrepresentation, *the proper course is to convey such facts to the agency which has the power to institute proceedings to revoke the license*.") (emphasis added)); *see also Otwell v. Alabama Power Co.,* 747 F.3d 1275, 1282–83 (11th Cir. 2014) ("Under Appellants' approach, any person or entity with

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

an interest in the proceedings before the FERC could evade the FPA's exclusive judicial review provision by simply choosing not to participate in the proceedings, or by creating a corporate entity to champion its interests before the agency. Then, following an adverse order, the non-participants could obtain a collateral redetermination of the identical issues considered and rejected in the FERC's final order because those persons were not parties to the proceedings. Such a construction of the statute would do violence to Congress's deliberately crafted administrative scheme and would eviscerate § 825*l* (b)."). Thus, this Court should refrain from doing so.

State Farm is expected to rely upon *State Farm v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013), and *Active Spine Centers v. State Farm*, 911 So. 2d 241 (Fla. 3d DCA 2005) in its opposition. However, unlike the case here, those decisions rested on *self-determined* exempt status, not AHCA-issued Certifications of Exemption. The Certifications of Exemption issued by AHCA to the Ceda Entities entirely distinguish this case from the earlier cases involving insurers challenging *self-determined* exemptions (*i.e.*, situations where the medical providers did not hold ACHA-issued certificates of exemption). Thus, unlike *Silver Star* or *Active Spine Centers*, State Farm is asking this Court to usurp the function of AHCA and revoke the Certifications already issued by AHCA.

The Florida legislature has delegated to AHCA the responsibility of determining whether individual health care providers are exempt from licensure under HCCA. With that authority, AHCA crafted regulations governing the information to be submitted by health care providers when seeking an exemption, and ***even as alleged*** in the Complaint, the Ceda Entities abided by those mandates, submitted all of the required information, and were approved to receive Exemption Certificates following AHCA's review. Now, in this case, with AHCA not involved, State Farm challenges them. Consequently, the Court should dismiss these claims because allowing them to proceed would require the Court to not only question, but overrule, AHCA's decision to issue the Exemption Certificates, thus disrupting AHCA's jurisdiction to regulate in this area based on instructions it received from the Florida legislature and its own judgment and objectives.

      **D.**  **This Court Should Abstain from Deciding This Case Under the T*hibodaux, Burford,* and Separation of Powers Abstention Doctrines.**

District courts have rejected application of abstention doctrines in factually dissimilar cases filed by State Farm. In this unique case, however, the *Burford* and *Thibodaux* abstention doctrines both support abstention due to the key factual distinctions identified earlier, namely, that AHCA has issued written Certificates of Exemption, an integral part of its regulatory function that this Court should not

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

lightly usurp State Farms claims also raise serious Separation of Powers concerns under the Florida Constitution, further militating towards judicial abstention.

i.     *The Court Should Abstain Under Burford*

This Court should decline to hear State Farm's challenge to Florida's licensing system for health care clinics and dismiss the equitable claims for declaratory relief in Counts VI, VII, and VIII.

The decision that gave *Burford* abstention its name is *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943). The Supreme Court summarized the doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of **state administrative agencies**: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361 (1989) (citations and internal quotations omitted).

The central concern of *Burford* abstention is to prevent federal courts "from deciding unsettled questions of state law that relate to a complex state regulatory scheme." *Id.* When determining whether to apply *Burford* abstention, courts consider: "(1) [the importance of the legal challenge before the federal court]; (2) the intricacy and importance of the state's regulatory scheme; (3) whether the state has created a centralized system of judicial review allowing its courts to develop expertise in interpreting the scheme and the industry; (4) the speed and adequacy of state court review; and (5) the likelihood of delay, misunderstanding of local law, and needless federal conflict with state policy." *Silvey v. City of Lookout Mountain, Georgia*, 4:18-CV-0027-HLM, 2018 WL 8619795, at *3 (N.D. Ga. Apr. 30, 2018).

State Farm acknowledges that, unlike the dissimilar cases involving self-determined exemption status, AHCA here issued Certificates of Exemption following review of Ceda's applications. Nevertheless, it argues that the CEDA entities were "unlicensed" because "Cereceda does not supervise their business activities." Comp. ¶ 125. It is this assertion that implicates Burford because the HCCA *licensing requirement* relies on a comprehensive regulatory scheme for licensing health care providers that is entrusted to AHCA and the regulations that it promulgates. *See, e.g.*, Fla. Admin. Code R. 59A-33.006(3) ("Entities requesting a certificate of exemption from the health care clinic

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

license requirements shall make application to the Agency on the Application for Certificate of Exemption from Licensure as a Health Care Clinic, AHCA Form 3110-0014, July 2018, which is incorporated by reference, and available at http://www.flrules.org/Gateway/reference.asp?No=Ref-10284. The application form is also available at http://www.ahca.myflorida.com/HQAlicensureforms.")

AHCA's licensing scheme for health care providers is really what State Farm is challenging, and this Court should reject the invitation to reach its hand into the administrative process and decide which Florida health care clinics and chiropractors are properly licensed by AHCA and which ones are not. *See, e.g., Coalition for Health Concern v. LWD, Inc.,* 60 F.3d 1188 (6th Cir. 1995) (holding *Burford* abstention appropriate where Kentucky had an overriding interest in the protection of the environment from the effects of unregulated hazardous waste and that exercise of federal review would be disruptive of Kentucky's efforts to establish a coherent policy with respect to the licensing of hazardous waste facilities); *see also Adrian Energy Associates v. Michigan Pub. Serv. Com'n,* 481 F.3d 414, 424 (6th Cir. 2007) ("The reasons given by *Coalition for Health Concern* for applying *Burford* abstention apply with equal force here. As in that case, Michigan "has enacted and is operating its own authorized program" under the Public Utility Regulatory Policies Act and has established a coherent policy under its law concerning regulation of qualifying facilities. Michigan has enacted its own state laws and provided a scheme for administrative and judicial review.").

Although we recognize that other courts ruling in PIP matters have declined to abstain under *Burford*, this case is legally and factually distinguishable because earlier cases did not focus on the AHCA licensing issue with respect to "supervision" (only with respect to whether a clinic was wholly-owned). So this is not a simple question of whether a technical license requirement was complied with but rather whether AHCA properly weighed the totality of the factors under Florida Administrative Code Rule 59A-33.006(3) in granting the exemptions. This Court should not second-guess AHCA's licensing decisions.

ii.   *The Court Should Abstain Under Thibodaux*

*Thibodaux* abstention requires suspension of federal proceedings seeking damages where it would be desirable to allow a state court to decide unsettled questions of state law in areas of particular local concern, in other words, "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814 (1976).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

Application of the *Thibodaux* doctrine is appropriate when the District Court is presented with "cases raising issues intimately involved with the States' sovereign prerogative, the proper adjudication of which might be impaired by unsettled questions of state law." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 717 (1996) (referencing *La. Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28 (1959)).

The key question of *Thibodaux* is whether "the exercise of federal jurisdiction would disrupt states' attempts to establish a coherent policy with respect to a matter of substantial public concern." *Paradigm Ins. Co. v. Carter,* 944 F.Supp. 883, 885 (M.D. Fla. 1996) (internal quotations omitted). Here, it is evident that the State of Florida has attempted to articulate a comprehensive framework for resolving PIP disputes and licensing health care clinics with which this Court should abstain from interfering.

        iii.    *The Court should abstain from setting aside AHCA's Exemption Certificates Consistent With Florida's Separation of Powers Doctrine*

When a party's claims present Separation of Powers concerns, as State Farm's surely do, courts have found it appropriate to decline extending their jurisdiction; *see e.g. Republic of Ecuador v. Philip Morris*, 188 F.Supp. 2d, 1359, 1362 (S.D. Fla. 2002) ("[s]eparation of powers has led to the creation of judicial doctrines that render certain issues non justiciable.").[12] This Court should do so as well.

Article II, § 3 of the Florida Constitution provides: "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." Florida jurisprudence interprets this language strictly:

> Pursuant to this provision, the doctrine of separation of powers has been strictly construed in Florida. The Florida Constitution imposes a strict, explicit and textual separation of powers requirement .... It would be hard to compose a more demanding requirement in organic law than Florida's separation of powers. Thus, the supreme court has traditionally applied a strict separation of powers doctrine, and described the separation of powers as the cornerstone of American democracy.

---

[12] Likewise, in cases like this, where the Defendants have "sufficient concrete interests at stake," Courts have ruled that they are interested parties with "standing to raise constitutional questions of separation of powers with respect to an agency designated to adjudicate their rights." *Buckley v. Valeo*, 424 U.S. 1, 117 (1976); superseded by Statute on other grounds as Stated in *McConnell v. Federal Election Com'n*, 124 S.Ct. 619 (2003).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

*Corcoran v. Geffen*, 250 So.3d 779, 784 (Fla. 1st DCA 2018) (internal citations and quotations omitted); *see also Barati v. State*, 198 So. 3d 69, 83 (Fla. 1st DCA 2016) ("In contrast, the Florida Supreme Court has recognized and held that Florida's superior organic law imposes a more vigorous separation of powers constitutional requirement than does the federal constitution.").

In spite of this rigid constitutional structure, State Farm not only asks this Court to discard the Exemption Certificates issued by AHCA, but to do so in a forum where AHCA is not even present.[13] The Court should abstain from hearing these claims because ruling on them would nullify the exemption application process created by the Florida legislature, as well the resulting certificates issued by AHCA. As stated earlier, Florida law does not require health care providers to apply for exemption certificates, but if they do so successfully, they are rewarded with a two-year certificate. See § 400.9935(6). If certificates could be extinguished by a government actor other than AHCA, the authority of both the legislative and executive branches of the Florida government would be undercut. In other words, why would the legislature bother creating an exemption certificate if they afford the certificate holder nothing more than self-determination?[14]

In no uncertain terms, the judiciary in Florida is "precluded from interfering with, much less usurping, the proper authority of the executive." *Sharrard v. State*, 998 So. 2d 1188, 1190 (Fla. 4th DCA 2009) (*quoting State v. Mendiola*, 919 So. 2d 471, 472 (Fla. 3d DCA 2005)). However, here, if the Court

---

[13] To the extent there is a proper forum for State Farm, it would be found in Florida's Administrative Procedure Act, which provides that parties who are "adversely affected by final agency action" are "entitled to judicial review," but that "[j]udicial review shall be sought in the appellate district where the agency maintains its headquarters or where a party resides or as otherwise provided by law." § 120.68(2)(a), Fla. Stat. Thus, rather than proceeding in this Court against the Ceda Entities, Florida law provides that an action challenging the Ceda Entities' Exemption Certificates should have been filed in Florida's First or Third District Courts of Appeals, and AHCA should have been a party to that case.

[14] Here, we respectfully add that the Court should abstain from considering State Farm's claims concerning the Ceda Entities' exemption certifications because adjudicating them would implicate the doctrine of finality. *See Austin Tupler Trucking v. Hawkins*, 377 So. 2d 679, 681 (Fla. 1979). "A decision, once final, may only be modified if there is a significant change in circumstances or if modification is required in the public interest." As described in *Reedy Creek Utilities Co. v. Florida Public Service Com'n*, 418 So. 2d 249, 254 (Fla. 1982), "an underlying purpose of the doctrine of finality is to protect those who rely on a judgment or ruling." Here, even as alleged by State Farm, the Ceda Entities sought and received Exemption Certificates from AHCA *as early as 2010*, and have been operating with the understanding that the certificates have been "final and binding" throughout that time. *See* Complaint, Ex. 36. They were well within their rights to do so.

Page **23** of 41

were to not only question, but dispose of, the Exemption Certificates awarded by AHCA, especially in a case where AHCA is not a party, that is precisely what the Court would be doing, i.e. literally supplanting the agency with itself.

> iv.    *State Farm Has Not Plead Facts to Support its Claim*

Finally, in the event the Court continues to exercise jurisdiction, the Complaint must be dismissed because it fails to plead ultimate facts supporting its "lack of supervision" claim.  Instead, as stated above, it relies on cherry-picked testimony from prior litigation pertaining to non-Defendant entities for events that took place years ago.  There are no actual *factual* allegations (as opposed to bare conclusions) that Dr. Cereceda failed to supervise the activities of the Ceda Exempt Entities.

## E. State Farm Failed To Carry Its Burden of Identifying Which of the 916 Claims Have Already Been Adjudicated in State Court.

State Farm bears the burden of affirmatively excluding from the 916 PIP claims those that are or already have been adjudicated in Florida state court. Put simply, any issue that State Farm may have had with respect to any of the PIP claims purportedly at issue in this lawsuit was *required* to be raised in any prior or pending state court action on those claims as *compulsory counterclaims* under Florida law.[15] This is because both actions would have arisen under the "same set of operative facts," namely, medical treatment after a car accident. *See* Fla. R. Civ. P. 1.170(a); *Wilson v. Kade*, 215 So. 3d 632, 633 (Fla. 3d DCA 2017) (holding that, under the logical relationship test, a compulsory counterclaim exists "when the same aggregate of operative facts serves as the basis of both claims.").

State Farm's failure to plead compulsory counterclaims in prior or pending state court actions involving the same 916 policyholder would result in a waiver of those claims under the doctrine of res judicata. *See Londono v. Turkey Creek, Inc.,* 609 So. 2d 14, 19 (Fla. 1992) (holding that the failure to raise a compulsory counterclaim in the first suit will result in a waiver of that claim).

The Eastern District of New York recently articulated in a similar situation that the Plaintiff bears the burden of identifying such previously filed and/or pending lawsuits.

> Here, by plaintiff's own admission, *plaintiff is currently litigating in state court or arbitration at least some of the no-fault claims that form the basis for the present action*. Before filing the amended

---

[15] Indeed, it is certainly conceivable that the State Farm claims at issue here were in fact asserted by State Farm in prior or contemporary litigation, and State Farm is trying to have its second or third bite at the litigation apple.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

> complaint, in a conference before Magistrate Judge Boyle, counsel for plaintiff confirmed that many of the no-fault claim denials underlying its RICO claims were "open claims," meaning their validity was currently being litigated in state court or arbitration. Plaintiff's counsel informed Magistrate Judge Boyle that it would not be difficult to provide the Court with a spreadsheet showing the status of each no-fault claim (*i.e.,* whether plaintiff sought to litigate the claim in state court or arbitration, and whether that claim is still pending). However, plaintiff filed no such spreadsheet, ***and the amended complaint does not indicate how many of plaintiff's no-fault claims underlying the RICO causes of action are currently pending in other fora.***

*Sky Med. Supply Inc. v. SCS Support Claims Services, Inc.*, 17 F. Supp.3d 207, 231–32 (E.D.N.Y. 2014) (emphasis added).

Here, the Court should require State Farm, as the Plaintiff, to identify and dismiss any of the 916 claims that have been litigated or that are currently being litigated in state court. Indeed, Rule 11 requires that State Farm conduct an investigation of the case before bringing the action, and thus State Farm certainly has the wherewithal to make the identification. State Farm does not get a "second bite at the apple" by hopping the fence to a collateral court system to re-litigate the same issues. *See, e.g.*, *Stockton v. Lansiquot*, 838 F.2d 1545, 1545–46 (11th Cir. 1988) ("A federal court must apply the law of the state in which it sits with respect to *res judicata*, and is required under 28 U.S.C.A. § 1738 to give the same preclusive effect to a state court judgment as that judgment would enjoy in the courts of the state in which it was rendered.").

### F. The 916 Policyholders are Required Parties under Rule 19(a)

Rule 19(a) governs whether a party should be joined if feasible. *See Republic of the Phil. v. Pimentel*, 553 U.S. 851, 859 (2008).

The Court should order State Farm to join all 916 Policyholders as "required" parties. A person is a required party when (1) "in that person's absence, the court cannot accord complete relief among existing parties," or (2) where the absent party claims an interest relating to the action, disposing of the action without the absent party may "as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

"The decision to join a nonparty under Rule 19(a) must 'be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them.'" *E.E.O.C. v. Phillips Colleges, Inc.*, 984 F. Supp. 1464, 1471 (M.D. Fla. 1997) (citation omitted)). Here, there a multitude of reasons the Court cannot afford complete relief among the parties without joining the 916 Policyholders, starting with the terms of the Assignment of Benefits (AOB) that underlie this entire case, all of which provide that ***the policyholder remains liable to the provider in the event State Farm does not pay the invoices***.

The plain terms of the AOB provide:

> I, as the patient, agree to remain personally liable for the amounts billed by CEDA regardless of the amount paid by the insurance company, unless ordered by a court of law including my deductible and co-payment. I fully understand that said health care services were provided to me in consideration for an unconditional promise to pay and for me providing these instructions to my insurance company. I, as the patient, further agree to be liable for reasonable attorney's fees and costs incurred in collecting any delinquent accounts or unpaid balances. By executing this document, I am placing my insurance company(ies) on notice that the claims for medical treatment rendered by CEDA are related to my accident (or my covered conditions) and should be paid directly to pursuant to this assignment of benefits and Florida law. Any delay in paying benefits owed under the insurance policy could adversely affect me.

*See* Sample AOB, Exhibit C hereto.

This is not to say that Defendants have any intention of suing their patients, although there are circumstances in which it has and will continue to happen, such as where the policyholder committed fraud in the inducement of the insurance policy. Nevertheless, although current ownership and management have never sued a policyholder who had a valid policy but was denied coverage by their insurer, Defendants are being sued for a substantial sum of money and an assignee or holder of Defendants' accounts receivable might not have such an unwritten rule against suing the primary obligor for invoice. In other words, State Farm's request for this Court to declare all the invoices "fraudulent" might create a risk of liability to the Policyholders.

There is also the obvious problem of the subset of 916 policyholders who filed personal injury lawsuits against the actual tortfeasors. Those policyholders are going to submit the ***same*** invoices as part of their damages claims and have an expert testify that the services were actually performed and

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

were not only medically necessary but also for an emergency medical condition.[16] And some policyholders may have settled with other insurance companies based on Defendants' invoices. It would create havoc for this Court to *ex post facto* declare the invoices fraudulent.

The Court should also be aware that the ***policyholders themselves*** certified, under penalty of criminal prosecution, after receiving the invoiced-services, that the services were ***actually*** **received.** *See* Exhibit D hereto (OIR's Standard Disclosure and Acknowledgement Form).

State Farm is now asking this Court to declare the underlying invoices "fraudulent." That is certainly going to awaken a storm of motions by insurance companies against these policyholders to set aside settlements already paid in good faith reliance on the accuracy of the invoices.

The combination of the existing legal liability of the policyholders to pay the subject invoices in the event Defendants are unable to keep the payments already made by State Farm, and the disruption of past, pending and future claims for medical expenses filed by these 916 policyholders that rely on the invoices as evidence of damages, make this a quintessential situation were the policyholders are ***required*** to be joined as parties.

The issue comes down to notice and providing complete relief to everybody involved.

The policyholders are lay people who experienced a car accident and went for medical treatment with the understanding that a certain portion would be covered by their own insurance company. Many years have now passed. Most of these 916 policyholders (and former policyholders) have moved on with their lives and would be surprised to receive a bill for thousands of dollars in medical services totally out of the blue that had already been paid by State Farm but now had been disgorged by the doctors.

Talk about a multiplicity of lawsuits. Every single one of the 916 policyholder *should* receive notice of this action, and the fact that they have not is a potential violation of their constitutional right to due process in the form of "notice" and a "meaningful opportunity" to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 349  (1976) ("The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'"); *Fuentes*

---

[16] As State Farm knows, not all charges on the invoices are "PIP" charges. Many of the victims have suffered permanent damages that allows for recovery over and above the PIP limits. When appropriate, Defendants continue to provide services to patients until such services are no longer required. State Farm reviews the billings and if the medical service is not compensable under PIP, then it denies the charge or requests more information, exactly as provided under the Statute.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

*v. Shevin*, 407 U.S. 67, 80 (1972) ("For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner. The notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (citations and internal quotations omitted)).

The 916 Policyholders are required parties under Rule 19(a) and State Farm should be ordered to join them because the court cannot accord complete relief among existing parties. In other words, even if this Court were to declare that the invoices were fraudulent, many of the invoices have already been paid and many are the evidentiary foundation for pending or future state court legal proceedings. Those invoices are therefore still subject to collection in state court – but their legal efficacy is in doubt due to the pendency of this case, thus impairing the ability of policyholders to move forward  to conclusion with any of their personal injury lawsuits despite what may be overwhelming economic necessity.

Moreover, the policyholders are (i) subject to service of process; (ii) their joinder would not deprive the Court of subject matter jurisdiction; (iii) they have an interest in these proceedings; and (iv) their absence would, "as a practical matter impede or impair" their ability to protect their interests. *See* Fed. R. Civ. P. 19(a)(1).

Not including the policyholders, and not giving them notice of this action, is unjust and puts the innocent policyholders in the line of fire over a political tug of war regarding PIP repeal.

### G.  The Complaint Fails to State A Claim for Common Law Fraud

The Complaint fails to state a claim for common law fraud for reasons stated below.

*i.    The Fraud Claim Is Barred By The Independent Tort Doctrine*

The independent tort doctrine prevents a party from suing in tort for the breach of a duty that exists by virtue of a contract, unless the tort is separate and independent of the breach of contract. *See Peebles v. Puig*, 223 So. 3d 1065, 1066 (Fla. 3d DCA 2017).[17]

---

[17] The independent tort doctrine is distinct from the economic loss rule. In *Tiara Condominium Association, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013), the Florida Supreme Court determined that the economic loss rule applied only in the products liability context. However,

Fuerst Ittleman David & Joseph
One Southeast Third Avenue, Suite 1800, Miami, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

Here, it is undisputed that Plaintiffs' relationships with Defendants are contractual in nature.[18] "The purpose of a PIP suit is to recover damages for breach of an insurance contract." *State Farm Mut. Ins. Co. v. Nichols,* 932 So. 2d 1067, 1072 (Fla. 2006); *Allstate Ins. Co. v. Kaklamanos,* 843 So. 2d 885, 892 (Fla. 2003) ("[I]t is clear that actions for PIP benefits are based on the insurance contract and thus are governed by contract principles."); *Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., Inc.,* 753 So. 2d 55, 57 (Fla. 2000) ("The right of an assignee to sue for breach of contract to enforce assigned rights predates the Florida Constitution.") (citing *Robinson v. Nix,* 22 Fla. 321 (1886)).

In *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.,* 657 F. Supp. 2d 1279, 1288-89 (M.D. Fla. 2009), the court considered a nearly identical factual scenario. The court noted the lack of a direct contract between Nationwide and the providers but concluded correctly that the assignment of benefits that the policyholders had executed in favor of the providers precluded the fraud claim. *Id.*

The same is true here. Plaintiffs' fraud claim merely alleges that Defendants breached their contractual obligations. Plaintiffs concede as much. *See* Comp. ¶ 137 ("State Farm Mutual and State Farm Fire are under statutory and ***contractual duties*** to pay or deny claims for No-fault Benefits within 30 days….") (emphasis added).

The common law fraud claim here is thus not "separate and independent" from the contractual obligations and thus must be dismissed under the independent tort doctrine. *See, e.g., King v. Bencie,* 752 F. App'x.= 881, 883 (11th Cir. 2018) ("It may be true, as the district court recognized, that King must still allege a tort "independent from a purported breach of contract." We have acknowledged that '*Tiara* may ... have left intact [this] separate hurdle."' *Lamm v. State St. Bank & Tr.,*

---

as noted in Justice Pariente's concurrence, the Court's decision ***did not impact the long-standing independent tort doctrine***, which requires a party to allege a breach of a duty that is independent of the contract. *Id.* at 408-09; *see generally Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Prot. LP,* 19-14050-CIV, 2019 WL 3428552, at *2 (S.D. Fla. Apr. 18, 2019) ("Following Justice Pariente's concurrence, many federal courts in Florida continue to apply the Independent Tort Doctrine even if *Tiara* limits the Economic Loss Rule (***a different rule but having the same practical effect***) to the products liability context. The Middle District of Florida continues to apply the Independent Tort Doctrine. The Eleventh Circuit recognizes that it may continue to apply. … Even if the Economic Loss Rule would in practice have a similar effect of barring the Plaintiff's tort claim, it is the Independent Tort Doctrine that applies here, and it exists separately from the Economic Loss Rule.") (citations omitted) (emphasis added).

[18] The policyholders with whom State Farm had contracts of insurance executed AOBs in favor of Defendants.

749 F.3d 938, 947 (11th Cir. 2014)); *see also Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982) (holding that there must be a tort "distinguishable from or independent of [the] breach of contract" for a party to bring a valid claim in tort based on a breach in a contractual relationship); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.,* 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort.... It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." (citations omitted)); *Ginsberg v. Lennar Florida Holdings, Inc.,* 645 So. 2d 490, 494 (Fla. 3d DCA 1994); *Kay v. Katzen*, 568 So. 2d 960, 961 (Fla. 3d DCA 1990) ("[A] conversion action is not an appropriate means of vindicating a claim which essentially alleges breach of contract.").

> ii.     *The Fraud Claim Fails To Plead Reliance*

The essential elements of common law fraud are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citation and internal quotations omitted). In certain circumstances, "[f]raud also includes the intentional omission of a material fact." *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001).

Here, Plaintiff has not, *and cannot*, adequately allege the element of reliance.

This is because, as a matter of law, State Farm could not have relied on *any* representation made by Mark Cereceda or his clinics given the prior history of litigation between the parties.

Mark Cereceda and State Farm are no strangers. As reflected throughout the Exhibits 37-39, the transcripts of prior videotaped depositions of Mark Cereceda taken on February 22, 2017 and on November 16, 2017 reveal, Plaintiff and Cereceda and/or his clinics have been previously embroiled in litigation with one another.[19]

Significantly, not only has State Farm previously sued Mark Cereceda and facilities he had an ownership interest in but also it has sued him for common law fraud predicated on similar allegations of a fraudulent referral scheme revolving around the payment of personal injury benefits. *See, e.g., State*

---

[19] Tellingly, although attaching various deposition excerpts in support of its allegations, State Farm has redacted the case number(s), and has concealed prior litigation between it and Cereceda or Cereceda clinics.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

*Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC et al.*, Case No. 1:17-cv-20028-KMM (S.D. Fla. Jan. 4, 2017).[20]

The initial 41-page complaint in that case alleged, as did subsequent iterations, a "scheme, jointly perpetrated by all of the Defendants, in which patients were unlawfully brokered to maximize the Defendants' financial gains in connection with patients' personal injury claims." Compl. ¶ 1, attached hereto as Exhibit E. According to State Farm, this alleged scheme began before 2012. *Id.* ¶¶ 66-67. Significantly, State Farm presented overlapping claims to those alleged here, seeking damages under the Florida Deceptive and Unfair Trade Practices Act, common law theories of fraud and unjust enrichment, and even sought a declaration that it was not liable to pay any unpaid claims generated by the alleged scheme. *See generally id.*

As a result, from at least 2012, State Farm has taken issue with the representations, operations, agreements and the payment of personal injury benefits on claims made by Cereceda and his clinics over which he has an ownership interest. *Id.* Based on this intricate level of knowledge, State Farm cannot now adequately allege that it *relied* on Defendants' actions or inactions. .

The Eleventh Circuit prohibits fraud claims when the parties have a pre-existing relationship of mistrust or when plaintiffs claim that defendants made previous misrepresentations. *See, e.g.*, *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117-1118 (11th Cir. 1999) ("[W]hen negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties."); *Finn v. Prudential-Bache Securities, Inc.*, 821 F.2d 581, 585-86 (11th Cir. 1987) (finding that fraud claims were barred where there was a relationship of mistrust established by Plaintiff's knowledge that defendant had used a fraudulent financial statement and had reason to believe their account was mismanaged); *see also Fla. Evergreen Foliage v. E.I. Du Pont De Nemours & Co.*, 135 F. Supp. 2d 1271, 1292 (S.D. Fla. 2001); *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1524-25 (S.D. Fla. 1995); *Sutton v. Crane*, 101 So. 2d 823 (Fla. 2d DCA 1958).

Accordingly, State Farm's instant fraud claim must be dismissed as matter of law because it cannot rely on representations made by Defendants when State Farm contends that it has a history of distrust of the Defendants.

---

[20] Although not alleged in the Complaint, the Court may take judicial notice of these public court filings at this dismissal stage. *See* n. 11, *supra*.

FUERST ITTLEMAN DAVID & JOSEPH

ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

### H.  The Complaint Fails To State A Claim for Unjust Enrichment.

Unjust enrichment is an equitable doctrine. "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Guyana Tel. & Tel. Co. v. Melbourne Intern.,* 329 F.3d 1241, 1245 n. 3 (11th Cir. 2003).

The doctrine only applies where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. *See Shands Teaching Hosp. v. Beech Street Corp.,* 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

A party may only recover under an unjust enrichment theory when there is no valid express or implied-in-fact contract. *See Central Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.,* 789 F. Supp. 1311, 1317 (S.D. Fla. 2011). "The purpose of a PIP suit is to recover damages for breach of an insurance contract." *State Farm Mut. Ins. Co. v. Nichols,* 932 So. 2d 1067, 1072 (Fla. 2006); *Allstate Ins. Co. v. Kaklamanos,* 843 So. 2d 885, 892 (Fla. 2003) ("[I]t is clear that actions for PIP benefits are based on the insurance contract and thus are governed by contract principles.").

Thus, under Florida's PIP regime, the relationship between the insurer and the insured is contractual. *Nationwide Mut. Co. v. Ft. Myers Total Rehab Center, Inc.,* 657 F. Supp. 2d 1279, 1289 (M.D. Fla. 2009). Consequently, the rights assigned to a medical provider are contractual rights, and create a contractual relationship between the insurer (State Farm) and the assignees (the respective Ceda entities) and an unjust enrichment claim is therefore improper.[21] Because a contractual relationship exists between the Plaintiffs and the Defendants, claim of unjust enrichment must fail.

Similarly, "[i]t is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy. Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.,* 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Here, State Farm failed to plead that it lacks an adequate legal remedy. In fact, the conduct underlying State Farm's unjust enrichment claim is the same conduct underlying its common law fraud claim and their FDUTPA claim. Thus, State Farm admits that it possesses an adequate remedy at law and is in fact pursuing those remedies. *See Am. Honda Motor,* 390 F. Supp. 2d at 1178 ("The [d]efendants' quasi contract claim

---

[21] To plead unjust enrichment in the alternative, a party must allege that the underlying contract is invalid, which State Farm has not done. *Zarrella v. Pac. Life Ins. Co.,* 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

is predicated on the same set of allegations supporting their claims under FUTSA and FDUTPA. Accordingly, because an adequate remedy exists at law, the Defendants have not stated a claim upon which relief may be granted for ... unjust enrichment.").

The Plaintiffs' unjust enrichment claim should be dismissed as against all Defendants, including the Ceda Entities that invoiced for the subject PIP claims.[22]

## I. The Complaint Fails to State A Claim for Civil Conspiracy

Count III of the Complaint attempts to state a claim for conspiracy.

Florida law is clear that to state a claim for civil conspiracy, a plaintiff must allege that "1) two or more parties 2) *agreed* 3) to commit an *unlawful* act." *American United Life Insurance Co.* v. *Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (emphasis added).

A conspiracy claim requires that "the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *See Regions Bank v. Kaplan*, 258 F. Supp. 3d 1275, 1298 (M.D. Fla. 2017) (citations omitted)). A conspiracy may be proven by circumstantial evidence, but this may be done "only when the inference sought to be created by such circumstantial evidence outweighs all reasonable inferences to the contrary." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

Here, State Farm has failed to allege any wrongdoing by the Defendants. Instead, State Farm relies on testimony given by Cereceda in a former case involving entirely different non-party defendants, which ultimately settled. Although voluminous, the exhibits plainly reveal that there is merely $14,000 spread over two patients actually at issue which pertain to the named Defendant entities. There are no allegations to support a civil conspiracy that each and every Defendant touched these two patients, that the various Defendants acted together in any capacity, or that the individual Defendants acted distinctly from the corporate entities.

The civil conspiracy claim is alternately barred by the intra-corporate conspiracy doctrine. Succinctly, the doctrine provides that an entity consisting of a corporation and an agent cannot conspire with itself, unless an agent has a personal stake that is distinct from the corporation's interest. *Marcinelli v. Davis*, 217 So. 3d 1034, 1036-37 (Fla. 4th DCA 2017) (doctrine required dismissal of company's conspiracy claim).  The Complaint fails to allege that the individual Defendants have an

---

[22] The Plaintiffs' concession of an adequate legal remedy is underscored by their request for a jury trial—generally available only for actions at law.

independent personal stake in achieving the objectives of the conspiracy. *Ft. Myers Total Rehab Center Inc.* is instructive. There, the court dismissed based on the intra-corporate conspiracy doctrine, reasoning that "[t]here are no allegations in the Complaint that Reiter and Pinto have an interest separate and distinct from their corporate interests as employees of FMTRC. Accordingly, the Court finds that the civil conspiracy claim should be dismissed as to all defendants." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Center, Inc.,* 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009).

The civil conspiracy count here fails on the same grounds because it lacks allegations that any individuals have interests that are separate and distinct from the corporate entities and must be dismissed for this alternate reason.

### J.  The Complaint Fails To State a Claim for Aiding and Abetting Fraud

We ask this Court to find, in the first instance, that the Florida Supreme Court does not and would not recognize a cause of action for "aiding and abetting fraud." *See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC,* 904 F.3d 1197, 1214 (11th Cir. 2018) ("Florida courts have for some time assumed *without deciding* that a cause of action exists for aiding and abetting fraud .…") (emphasis added).

Even if this Court were to find that such a claim exists, for the reasons set forth above, State Farm fails to satisfy the assumed elements, which are: (1) the existence of an underlying fraud; (2) that the defendant had knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the commission of the fraud.

### K.  The Court Should Exercise Its Discretion To Reject State Farm's Request for a Self-Serving Declaratory Judgment

"The Declaratory Judgment Act is an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Otwell v. Alabama Power Co.*, 747 F.3d 1275, 1281 (11th Cir. 2014) (citations omitted).

The declaration that State Farm seeks, however, is implausible on its face, namely, that every service provided by the Defendants in treating State Farm's 916 policyholders, and every bill sent to State Farm for such services, was "fraudulent." This is improper, given that "Plaintiff has failed to establish that Defendant is in fact owed nothing for its services, even accepting all the allegations in the Amended Complaint as true." *State Farm Auto Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1330-31 (S.D. Fla. 2017) (dismissing similar count for declaratory relief).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

State Farm is really asking this Court to provide it with an advisory opinion that it is permissible for State Farm to reject future PIP claims without fear of losing that same claim once it is filed by the Ceda providers. Courts cannot issue such advisory opinions. *See, e.g., In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015) ("In the absence of both live claims and cognizable plaintiffs, the District Court's pronouncement purporting to definitively foreclose the arbitration of the hypothetical claims that might be raised in the future by hypothetical plaintiffs cannot be regarded as anything but an impermissible 'advisory opinion[ ] on [an] abstract proposition[ ] of law.'") (citations omitted)); *Miller v. FCC*, 66 F.3d 1140, 1145 (11th Cir. 1995) ("By asking this court to decide what another court should do in a future case, petitioners are posing a hypothetical question, the answer to which would be an advisory opinion.").

Moreover, State Farm cannot satisfy one of the key standards set forth in Rule 23(b). A declaratory or injunctive relief class pursuant to Rule 23(b)(2) is appropriate only if "the predominant relief sought is injunctive or declaratory." *Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir. 2001). State Farm seeks both monetary, injunctive and declaratory relief, but "[m]onetary relief predominates in (b)(2) class actions unless it is *incidental* to the requested injunctive or declaratory relief." *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (11th Cir. 2012) ("In the present case, if the class was able to prevail on its claim, each medical service provider in the class would have to establish individual facts regarding the type of services performed, the amounts billed, and the amount of reimbursement received from State Farm in order to determine its appropriate monetary recovery. Therefore, we conclude that the district court properly determined that monetary damages are not incidental to the requested equitable relief. DWFII cannot establish that a class can be certified pursuant to Rule 23(b)(2).").

### L.   The Complaint Fails To State A Claim for Violation of FDUTPA

Count V fails to state a claim for violation of FDUTPA for two reasons.

First, like the remaining claims, the FDUTPA allegations are bereft of ultimate facts except for those pertaining to two claims totally approximately $12,000. The remainder of the allegations pertaining to the 914 claims hinge on perfunctory charts of unknown origin and methodology together with examinations under oath of non-party Ceda entities that are irrelevant to this case.

Second, the Court should find that the FDUTPA claim is conflict-preempted by paragraphs 4(h) and 8 of the PIP statute, which together create a precise system for determining when and whether to impose attorneys' fees against policyholders – a system that State Farm seeks to overturn by simply

FUERST ITTLEMAN DAVID & JOSEPH

ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

bringing suit under FDUTPA, which does not require proof of fraud as mandated in paragraph 4(h) and which would authorize the insurer to collect prevailing party fees from the assignees of the policyholder upon proof *less than that required* for fraud under paragraph 4(h). *See* § 501.2105(1), Fla. Stat. ("In any civil litigation resulting from an act or practice involving a violation of this part … the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.")

The PIP statute, however, clearly provides that, except for the limited circumstance of establishing fraud under paragraphs 4(h) and 4(i), insurers are never permitted to obtain attorneys' fees from the policyholder even if the insurer prevails in the litigation. *See* § 627.736(8) ("With respect to any dispute under the [PIP statute] between the insured and the insurer, or between an assignee of an insured's rights and the insurer, the provisions of ss. 627.428 and 768.79 apply.").

Two fundamental rules of statutory construction support the conclusion that the PIP statute preempts FDUTPA claims against PIP providers – or at least the prevailing party attorneys' fees provision in FDUTPA. First, it is well settled that where two statutory provisions are in conflict, the specific statute controls the general statute. *See, e.g., State ex rel. Johnson v. Vizzini*, 227 So. 2d 205 (Fla. 1969). The specific PIP statute here controls the nonspecific FDUTPA statute. Second, it also is well settled that when two statutes are in conflict, the more recently enacted statute controls the older statute. *See McKendry v. State*, 641 So. 2d 45 (Fla. 1994). Here, the PIP amendments are the most recently enacted statutory provisions and are the clearest and most recent expression of legislative intent regarding PIP claim litigation and fee-shifting between policyholders and insurance companies.

State Farm is trying to outsmart the legislature and by-pass its fee-shifting restrictions. However, because § 627.428 only authorizes attorney's fees *for insureds*,[23] and because it is the only attorney's fees provision incorporated into the PIP statute (other than offers of judgment), it implicitly precludes courts from awarding attorney's fees to PIP insurers under any other statute, including FDUTPA.

The obvious legislative purpose in imposing the one-way fee-shifting provision in the PIP statute is to encourage full enforcement of the rights of PIP policyholders and their assignees to obtain

---

[23] The PIP statute also provides fee shifting in favor of the insurer in the event of fraud, *but only in the event conditions precedent are met.* State Farm cannot evade these mandatory conditions precedent by suing under FDUTPA.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

timely payment of PIP claims. State Farm's lawsuit turns everything on its head by trying to preempt individual case-by-case adjudications and the fee awards that come with each case.

### M. The Fraud Claim Is Not Pled With Particularity

Rule 9(b) requires that allegations of fraud, and allegations that "sound in fraud," must be pled with particularity. *See, e.g., Dixon v. Allergan USA, Inc.*, 645 F. App'x 930, 932 (11th Cir. 2016).

Rule 9(b) thus forces a plaintiff to offer more than "mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires more than conclusory allegations that certain statements were fraudulent." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008).  Specificity is required when alleging fraud because of the high risk of damaging a party's reputation. *See O'Rear v. Am. Family Life Assur. Co.*, 139 F.R.D. 418, 420 (M.D. Fla. 1991).

 "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "**who, what, when, where, and how**" of the alleged misconduct).

Here, the Complaint fails to identify specific fraudulent conduct of defendants Moya, Canizares,[24] Fenelus, Haban, Habayeb,[25] Ross, Schulman, or Yoham.

"In a case with multiple defendants, the complaint should contain specific allegations with

---

[24] At ¶ 96, State Farm alleges that Defendant Roy Canizares testified to the generalization of pain scores in patient progress notes recorded in 2010 (well outside the statute of limitations for fraud claims), for an entity that is not named in the lawsuit. At most, this allegation supports a conclusion that progress notes taken at that time for that unnamed entity could have been completed in a different manner. Nothing about this allegation comes close to constituting actionable fraud.

[25] At ¶ 94, State Farm alleges that Habayeb told patient O.M. during her first clinic visit that she needed 42 therapy sessions, which State Farm point to as evidence of the alleged predetermined protocol. However, as stated in Exhibit 1 (ECF 1-3 at p. 17, patient no. 647), patient O.M. received far fewer than 42 therapy sessions, which cuts against the conclusion that Defendants used a rigid, predetermined protocol for their patients.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." *W. Coast Roofing & Waterproofing, Inc.,* 287 F. App'x at 86. Yet there are *no* specific allegations supporting claims of fraud as to any of those Defendants.

State Farm purports to allege that *all* of the services provided to the 916 patients were fraudulent. However, that conclusion is not plausible. State Farm acknowledges that each of the patients identified in Exhibit 1 suffered a car accident. Consequently, the most reasonable and plausible inference to be drawn from the Complaint's allegations are that **at least some** of the services Defendants provided were medically necessary, and in order to satisfy Rule 9(b)'s particularity requirement, State Farm must break out and specifically identify which services were medically **un**necessary. Otherwise, Plaintiffs will have failed to identify which representations are false and which are not, in violation of Rule 9(b).

Similarly, State Farm has not fully identified **who** it alleges made the alleged misrepresentations. In some cases, the person who provided the initial examination is different than the person who provided services in follow up visits.

For instance, the provider who initially examined patients 145 (initials SKH), 146 (BT), and 147 (YD) in Exhibit 1 was Michael Schulman. However, each of those patients made visits to Ceda Clinics after the date on which Schulman stopped providing services, April 2016. *See* Comp. ¶ 24. Thus, a provider other than Schulman necessarily provided services to those patients, and that provider was not identified in the Complaint, in contravention of requirement to plead the *who*, where, what, and when of its fraud allegations. *See Clausen,* 290 F.3d at 1310; *Garfield v. NDC Health Corp.,* 466 F. 3d 1255, 1262 (11th Cir. 2006).[26]

Moreover, State Farm failed to plead any actual facts supporting the conclusion that the individual providers knew their evaluations, diagnoses, and patient notes would be used to obtain PIP benefit reimbursement. There are no allegations that the individual providers requested or were otherwise informed of a patient's insurance status. There are no allegations that the individual providers were in any way involved in the billing process. There are no allegations that the individual providers kept track of or even knew when a particular patient exhausted his or her PIP benefits. In short, there are no allegations supporting the conclusion that the individual providers intended that

---

[26] Identifying the provider who performed the initial examination is not sufficient because State Farm failed to plead that once a treatment plan was set, it was *always* followed without deviation. The allegations regarding Dr. Habayeb (see footnotes above) establish that treatment plans changed.

Page **38** of 41

their representations induce the payment of undeserved PIP reimbursement, an essential element of State Farm's fraud claim.

Finally, State Farm failed to properly plead fraud against the individual providers based on the alleged licensing deficiencies at the various Ceda clinics. There are no allegations that any of the provider defendants made any misrepresentations regarding the license status of the clinics (an essential element of a fraud claim) or that they were even aware of the license status of each clinic. Moreover, and dispositively, the vast majority of the exhibits and EUOs attached to the complaint pertain to nonparties. As a result, the Complaint fails to plead a fraudulent misrepresentation by any of the providers regarding the Ceda clinics' license status, a deficiency fatal to that portion of State Farm' fraud claim.

**N. The Conspiracy Claim Is Not Pled With Particularity**

The civil conspiracy claim is subject to the heightened pleading standard under Rule 9 because it is grounded in fraud. *See Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015) & Comp. ¶ 154 ("[Defendants] knowingly agreed and conspired to conduct and participate, directly or indirectly, in the fraudulent scheme described above….").

"To satisfy the Rule 9(b) standard, a conspiracy complaint must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (complaint must state the "*who, what, when where, and how*" of the alleged misconduct).

State Farm's theory of civil conspiracy is based entirely on conclusory statements, especially with respect to the Individual Defendants against whom there are no particularized allegations. *See Regions Bank* v. *Kaplan*, 2013 WL 1193831, at *10 (M.D. Fla. Mar. 22, 2013) (dismissing conspiracy claims with "no factual allegations as to when and how [defendant] obtained [the] alleged knowledge of the purpose and scope of the alleged conspiracy, when and how [defendant] joined the alleged conspiracy, and how [defendant] received anything for his alleged participation"). Accordingly, the civil conspiracy claim should be dismissed.

**O. The FDUTPA Claim Is Not Pled With Particularity**

Count V alleges that Defendants violated the Florida "little" FTC Act. The elements comprising a consumer claim for damages under FDUTPA, § 501.204(1), Fla. Stat., are: (1) a deceptive

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

act or unfair practice; (2) causation; and (3) actual damages. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016).

District courts are split on whether a FDUTPA claim must be pled with particularity under Rule 9(b). *See, e.g., Garcia v. Clarins USA, Inc.*, 2014 WL 11997812, at *9 (S.D. Fla. Sept. 5, 2014). The Eleventh Circuit has not addressed the issue. Recent decisions hold that FDUTPA claims "sounding in fraud" must adhere to the heightened standard of Rule 9(b). *See, e.g., Ellis v. Warner*, No. 15-10134-CIV, 2017 WL 634287, at *23 (S.D. Fla. Feb. 16, 2017) ("Because Plaintiff's FDUTPA claim is based on deception or fraud … the heightened pleading standards of Rule 9(b) apply.") (Goodman, M.J.); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (same); *Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (same).[27]

Plaintiffs' FDUTPA claim clearly sound in fraud and are thus subject to the particularity requirement. *See* Comp. ¶ 165 ("These acts and practices include intentionally and knowingly making, or causing to be made, false and fraudulent statements of material fact to State Farm Mutual and State Farm Fire in fraudulent submissions for services that were not lawfully rendered ….").

For all of the same reasons argued above with respect to the common law fraud claim, the FDUTPA claims fail to plead the element of a "deceptive" act or practice with sufficient particularity. *See, e.g., Lustig v. Bear Stearns Residential Mortg. Corp.*, 411 F. App'x 224, 225 (11th Cir. 2011) ("Because Lustig failed to prove the first element, his claim failed without requiring the district court to address the remaining elements."). Accordingly, the FDUTPA claim should be dismissed.

## IV.    CONCLUSION

WHEREFORE, Defendants respectfully request the Court dismiss the Complaint with prejudice; or, alternatively, abstain from deciding this action or stay this action; and grant such further relief as the Court deems just and proper.

## V.    REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request a hearing on this motion to help the Court parse the legal issues relating to licensure and the PIP dispute mechanism.

---

[27] Even judges who previously ruled that Rule 9(b) was inapplicable to FDUTPA claims have receded from that position. *Compare Eli Lilly & Co. v. Tyco Integrated Sec.*, LLC., No. 13-80371-CIV, 2015 WL 11251732, at *2 (S.D. Fla. Feb. 10, 2015) (Bloom, J.) *with USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352, 2016 WL 4254257, at *3 (S.D. Fla. Feb. 16, 2016) (Bloom J.).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

Respectfully submitted,

**FUERST ITTLEMAN DAVID & JOSEPH**
*Attorneys for Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 350-5690
Facsimile: (305) 371-8989
Email: ajoseph@fidjlaw.com
Email: aittleman@fidjlaw.com
Email: crajotte@fidjlaw.com
Secondary Email: lcabrera@fidjlaw.com

By: /s/ Allan A. Joseph
Allan A. Joseph
Florida Bar No.: 893137
Andrew S. Ittleman
Florida Bar No.: 0802441
Christopher Rajotte
Florida Bar No.: 107742
Namrata S. Joshi
Florida Bar No.: 105267

## CERTIFICATE OF SERVICE

We hereby certify that on September 9, 2019, the foregoing document is being served on the all counsel of record, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing through the CM/ECF system.

By: /s/ Allan A. Joseph
Allan A. Joseph

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM