UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 1:19-CV-22487-RS<br>) |
| MARK CERECEDA, D.C.,<br>MARIA CRISTINA CRESPO-SMITH, M.D.,<br>NESTOR JAVECH, M.D.,<br>ROBERTO MOYA, M.D.,<br>ROY CANIZARES, D.C.,<br>EDGAR FACUSEH, D.C.,<br>PATRICK FENELUS, D.C.,<br>THOMAS HABAN, D.C.,<br>KARIM HABAYEB, D.C.,<br>JOHN ROSS, D.C.,<br>MICHAEL SCHULMAN, D.C.,<br>RICHARD YOHAM, D.C.,<br>CEDA ORTHOPEDIC GROUP, LLC,<br>CEDA ORTHOPEDICS & INTERVENTIONAL MEDICINE OF CUTLER BAY, LLC,<br>CEDA ORTHOPEDICS & INTERVENTIONAL MEDICINE OF DOWNTOWN/LITTLE HAVANA, L.L.C.,<br>CEDA ORTHOPEDICS & INTERVENTIONAL MEDICINE OF F.I.U/KENDALL, L.L.C.,<br>CEDA ORTHOPEDICS & INTERVENTIONAL MEDICINE OF HIALEAH, L.L.C.,<br>CEDA ORTHOPEDICS & INTERVENTIONAL MEDICINE OF SOUTH MIAMI, L.L.C.,<br>PHYSICIANS CENTRAL BUSINESS OFFICE, L.L.C., and<br>SPRINGS CROSSING IMAGING, L.L.C., | )<br>) Hon. Rodney Smith<br>)<br>) Magistrate Lauren Fleischer Louis<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**REPLY IN SUPPORT OF PLAINTIFFS' EXPEDITED MOTION FOR ALL WRITS ACT INJUNCTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendants' Opposition to the Expedited Motion for All Writs Act Injunction (Dkt. No. 53 ("Opposition")) relies on a misreading of the requested injunctive relief and the allegations in the Complaint, as well as incorrect statements of controlling law regarding All Writs Act injunctions.

At the outset, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "Plaintiffs") filed a motion to enjoin Defendants under the All Writs Act ("AWA") from filing **new suits against Plaintiffs or their insureds** that are based on any of the fraudulent and unlawful charges that are the subject of this case ("Federal Action"). (Dkt. No. 5 ("Motion").) The Complaint does not present, as Defendants argue, a simple breach-of-contract dispute regarding the personal injury protection ("PIP") benefits owed to policyholders or assignees. Rather, the Complaint alleges Defendants engaged in a fraudulent scheme in which they submitted thousands of bills and records across hundreds of patients for medically unnecessary and unlawful services. The goal of Defendants' scheme was to obtain payments from Plaintiffs.[1] (Dkt. No. 1, Compl.) While many fraudulent bills have been paid, there remain pending *unpaid* fraudulent bills at issue in the Complaint. Indeed, Defendants continue to submit bills and records that are fraudulent and will likely continue to do so through the pendency of the case. (*Id.* ¶¶ 167-178.)

The AWA injunction seeks to avoid unnecessary litigation related to the reasonableness of charges and/or necessity of services in Florida's state courts when threshold issues regarding the compensability of those charges and services will be addressed here. Specifically, the Complaint seeks a declaration that Defendants are not entitled to payment for unpaid charges submitted pursuant to the fraudulent scheme. (*Id.*, Counts VI-VIII.) Because the declaratory judgment counts place all unpaid (and allegedly underpaid) charges at issue for claims submitted on or after June 14, 2015 (the period at issue in the Complaint), the AWA injunction asks the Court to enjoin Defendants from seeking payment on those fraudulent charges in *future* state court actions. The absence of the injunction would permit Defendants to file hundreds, if not thousands, of new PIP suits during the pendency of the action, which would "destroy the utility of the [declaratory judgment procedure] otherwise ideally suited to resolve such broad claims." *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985). If each unpaid charge were to be fully litigated in a state court proceeding (a proceeding that will lack the benefit of the full evidentiary record associated with the hundreds of patients at issue here) it would significantly interfere with the Court's path to

---

[1] The Complaint seeks damages pursuant to counts for fraud, unjust enrichment, civil conspiracy, aiding and abetting fraud, and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA").

1

judgment and create a risk Plaintiffs would be precluded under the doctrine of *res judicata* from litigating charges already placed at issue here. (Mot. 10-12.)

Defendants do not dispute this pragmatic analysis, but instead argue the Court cannot enjoin them because the Motion: (1) does not meet the standard for a traditional injunction under Rule 65; (2) does not meet an exception to the Anti-Injunction Act ("AIA"), 28 U.S.C. § 1651; and (3) is based on a Complaint that improperly seeks class action relief under Rule 23. None of Defendants' arguments survive scrutiny. First, Defendants ignore controlling Eleventh Circuit law holding the requirements for a Rule 65 injunction do not apply to AWA injunctions. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2016) (concluding "[t]he requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the [AWA], is grounded in entirely separate concerns.") (citing, *inter alia*, *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (affirming grant of injunction under the AWA without regard to traditional four factors)). Second, the Motion seeks only to enjoin Defendants from filing **new** suits against Plaintiffs and their insureds and does not seek, as Defendants erroneously argue, to enjoin pending litigation. The AIA therefore does not restrain the Court's authority under the AWA. *See Burr & Forman v. Blair*, 470 F.3d 1019, 1027-28 (11th Cir. 2006). Third, the Complaint plainly does not seek class action relief but instead seeks to recover the payments Plaintiffs made to Defendants based on fraudulent claims for services that were not medically necessary and not lawfully rendered. As such, the Complaint is consistent with legions of similar complaints upheld in this District against providers who engaged in fraud across numerous insurance claims.[2] Indeed, Defendants' cited authority (*Physicians Injury Care Center*

---

[2] *See, e.g.*, *State Farm v. Advanced Chiropractic & Med. Ctr.*, 2019 WL 2534908 (S.D. Fla. Mar. 15, 2019) (denying motion to dismiss complaint alleging fraudulent services); *State Farm v. Health & Wellness Servs.*, 2018 WL 8620622 (S.D. Fla. June 10, 2018) (same); *State Farm v. Advance Med. Assocs.*, 2017 WL 5953295 (S.D. Fla. Aug. 17, 2017) (denying motion to dismiss complaint alleging fraudulent and unlawful services); *State Farm v. Brown*, 2017 WL 1291995 (S.D. Fla. Mar. 30, 2017) (same); *State Farm v. Lazo*, 2015 WL 11251459 (S.D. Fla. July 16, 2015) (same); *State Farm v. Med. Serv. Ctr. of Fla.*, 103 F. Supp. 3d 1343 (S.D. Fla. 2015) (granting summary judgment for insurer in an action involving the defendants' provision of fraudulent and unlawful services); *State Farm v. B & A Diagnostic, Inc.*, 104 F. Supp. 3d 1366 (S.D. Fla. 2015) (denying motion to dismiss complaint alleging fraudulent services); *State Farm v. A & J Med. Ctr., Inc.*, 20 F. Supp. 3d 1363 (S.D. Fla. 2014) (denying motion to dismiss complaint alleging fraudulent and unlawful services); *State Farm v. Kugler*, 2011 WL 4389915, *4 (S.D. Fla. Sept. 21, 2011) (denying motion to dismiss complaint alleging fraudulent services).

("*PICC*")³) makes clear that the Court is an appropriate forum to pursue recovery for fraud schemes involving providers who rendered medically unnecessary and unlawful services to persons involved in automobile accidents and eligible for no-fault benefits. *See State Farm v. Williams*, 824 F.3d 1311, 1312 (11th Cir. 2014) (reinstating verdict for insurers in case involving fraudulent and unlawful services).

After dispensing with Defendants' arguments, the issue presented is whether the Court has the authority under the AWA to enjoin Defendants from filing new PIP suits on the fraudulent charges already at issue in the Complaint's declaratory judgment counts. It does, and the circumstances here warrant the Court's exercise of that authority. (Mot. 8-9 (citing cases).) Indeed, another federal district court in a similar case involving fraudulent protocol care recently recognized in its order enjoining the provider-defendants from, *inter alia*, filing any new state court litigation that "the fragmentation of the dispute" into numerous proceedings would nullify the efforts of Plaintiffs "to prove fraud at a systemic level, impair a federal declaratory judgment action over which the [c]ourt has taken jurisdiction precisely to eliminate such fragmentation, and deprive [State Farm] of an avenue toward complete relief in any court." *State Farm v. Parisien*, 352 F. Supp. 3d 215, 232 (E.D.N.Y. 2018), *appeal docketed*, No. 18-3786-CV (2nd Cir. Dec. 21, 2018)).⁴ The Court should similarly enjoin Defendants from filing new PIP suits to preserve the Court's ability to fully and efficiently adjudicate all of the claims at issue, including the declaratory judgment counts.

I.     ARGUMENT

    A.     **The Requirements For Traditional Injunctions Under Rule 65 Do Not Apply.**

Defendants argue the Motion should be denied because Plaintiffs did not "address any of the four elements required for granting injunctive relief" pursuant to Rule 65. (Opp'n 17-18.) But Plaintiffs do not seek a Rule 65 injunction. Rather, Plaintiffs seek an AWA injunction preventing Defendants from filing new PIP suits in Florida's state courts. (Mot. 1, 3-4, 7-10, 12.) As such, the controlling case law is clear that Plaintiffs are not required to satisfy and the Court "does not review the four factors required for a traditional injunction." *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const.*

---

³ *See* Opp'n 1, 13. The *PICC* court also made clear that the law does not require Plaintiffs "to suffer the harm that it sought to avoid [by paying fraudulent claims] . . . to be entitled to declaratory judgment relief." *State Farm v. Physician's Injury Care Ctr.*, 427 F. App'x 714, 722 (11th Cir. 2011) (upholding declaratory judgment claim against provider who obtained payments through fraudulent course of treatment), *judgment modified on other grounds*, 824 F.3d 1311 (11th Cir. 2014).

⁴ The *Parisien* plaintiffs sought a traditional preliminary injunction pursuant to Rule 65, as opposed to the narrower AWA injunction requested here, because the scope of the *Parisien* relief included a request to enjoin *pending* state court proceedings, which therefore implicated the AIA.

*Corp.*, 534 F. Supp. 2d 1290, 1324 (S.D. Fla. 2008); *see also Klay*, 376 F.3d at 1100.

Defendants' argument relies on a fundamental misreading of a footnote contained in the Eleventh Circuit's *Klay* decision. (Opp'n 16 (quoting *Klay*, 376 F.3d 1101 n.13).) The language Defendants cite concerns the Eleventh Circuit's clarification of an earlier holding in *Florida Med. Ass'n, Inc. v. U.S. Dept. of Health, Ed. & Welfare*, 601 F.2d 199 (5th Cir. 1979), a case upon which Defendants also misplace their reliance. In *Florida Medical Ass'n*, the plaintiffs initiated a suit that sought to enjoin the Department of Health, Education and Welfare from publishing a list of physicians who treated Medicare beneficiaries. *Id.* at 201. Although the parties had "stipulated that they had no further evidence to offer on the question of permanent relief," the district court issued a temporary restraining order enjoining the disclosure of the list. *Id.* One month later, the district court issued an "ancillary writ of injunction" to preserve the injunction, reasoning the injunction was warranted "because the parties had submitted all their evidence on the merits and the court was not prepared to make the usual preliminary assessment of the merits." *Id.* The appellate court overturned the ancillary writ because the suit's "sole purpose" was to obtain injunctive relief, which required the court to engage in a "reasoned application" of Rule 65's four factors. *Id.* at 202-03.

As *Klay* later explained, "[t]he writ issued in *Florida Medical Ass'n* was perhaps the textbook definition of a preliminary injunction – it was issued to preserve the status quo and prevent allegedly irreparable injury until the court had the opportunity to decide whether to issue a permanent injunction." *Klay*, 376 F.3d at 1101 n.13. Thus, *Klay* concluded that "[a]t most, *Florida Medical Ass[']n* stands for the proposition that a court may not issue an order under the All Writs Act, circumventing the traditional requirements for a [sic] injunction, when a party is in reality seeking a 'traditional' injunction . . . *Florida Medical Ass'n* does not purport to make the traditional requirements for an injunction applicable to all injunctions under the All Writs Act." *Id.* Here, because the Complaint's sole purpose is not to seek injunctive relief, but instead to recover damages and a declaration that fraudulent charges are not owed, Defendants' argument should be rejected.

**B.     The AIA Does Not Apply To The Requested Relief.**

Defendants devote more than five pages of argument to the AIA, which Defendants argue prohibits the Court from enjoining Defendants' *pending* PIP suits.[5] (Opp'n 8-12.) From this

---

[5] Because Defendants incorrectly frame the Motion as seeking to enjoin pending state court suits, they misplace their reliance on inapposite decisions addressing whether an injunction of ongoing state-court proceedings met one of three specifically defined exceptions in the AIA. *See, e.g., Burr*, 470 F.3d 1019 (analyzing an injunction of a pending action and issues related to jurisdiction); *Vendo*

4

strawman argument, Defendants contend that because the Motion seeks to "invade the jurisdiction of the state courts, [and] violat[e] principles of federalism," the Court lacks the authority "to place all of the *pending* Florida state court lawsuits into suspended animation." (Opp'n 2, 11.) But there is no friction between the Court and any pending state court proceedings because the Motion seeks an order enjoining Defendants from filing *future* PIP suits – it requests no relief regarding pending state court cases.[6] (Mot. 1, 3-4, 7-10, 12.) This distinction is critical because the AIA does not prohibit injunctions against the filing of *new* state court suits. *See, e.g.*, *Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2 (1965) ("[The AIA] and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted."); *Riccard v. Prudential Ins. Co*, 307 F.3d 1277, 1299 (11th Cir. 2002); *Bank of America, N.A. v. McCann*, 444 F. Supp. 2d 1227, 1230 (N.D. Fla. 2006) ("the [AIA] does not bar an injunction blocking the initiation of a state lawsuit not yet filed"). Accordingly, Defendants' argument should be rejected.

### C.  The Bond Requirements Of Rule 65(c) Are Not Mandatory.

Defendants argue the Motion should be denied because Plaintiffs did not post a bond under Rule 65(c). (Opp'n 18-19.) Defendants rely on the Second Circuit's decision in *Baldwin* to further argue a bond is "even more significant" here because Plaintiffs' request for an AWA injunction is directed to Defendants, not third parties, and the purported damages Defendants would suffer are "extraordinary." (Opp'n 18-19.) Defendants are wrong on the law.

In the Eleventh Circuit, "it is well-established that the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] **the court may elect to require no security at all**." *BellSouth Telecomms. v. MCIMetro Access Transmission Servs.*, 425 F.3d 964, 971 (11th Cir. 2005) (quotation omitted, emphasis added); *see also CITGO Petroleum Corp. v. Mid-State Energy, Inc.*, 2012 WL 1405710, *2 (M.D. Fla. Apr. 23, 2012) ("[t]he [c]ourt determines that CITGO need

---

*Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1997) (analyzing issues related to a pending action and the exceptions to the AIA); *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) (analyzing the AIA's relitigation exception in the context of pending state court action); *Smith v. Bayer Corp.*, 564 U.S. 299 (2011) (similar); *Mitchum v. Foster*, 407 U.S. 225 (1972) (similar); *Valley v. Rapides Par. Sch. Bd.*, 646 F.2d 925 (5th Cir.) (similar); *Wesch v. Folsom*, 6 F.3d 1465 (11th Cir. 1993) (similar); *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582 (11th Cir. 1983) (similar).

[6] Defendants' argument that *PICC*, No. 6:06-CV-1757 (M.D. Fla. Dec. 12, 2007) necessitates denial here should be rejected. In *PICC*, State Farm sought to enjoin not only future state court suits, but also to stay pending state court cases, and prevent the defendants from submitting new demands or civil remedy notices or executing reassignments with insureds. *Id.* at 3. As such, the facts and holding of *PICC* are distinguishable and they should not be read to foreclose, as Defendants suggest, the Court from entering the requested AWA injunction here.

5

not post a bond due to its size and financial resources."). Moreover, the *Baldwin* decision does not address the issuance of a bond under Rule 65(c). Rather, *Baldwin* recognized that injunctive relief under the AWA need not rigidly comply with Rule 65's prescriptions so long as the injunction is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Baldwin*, 770 F.2d at 339 (contrasting the concerns motivating ordinary injunctions with those underlying injunctions issued under the AWA "to prevent . . . parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it").

Defendants' argument that they will be damaged by an injunction ignores the declaratory relief sought in the Complaint, misconstrues the requested injunction, and fails to consider Florida's "first-to-file" rule. First, Plaintiffs seek declaratory relief to avoid the imminent injury that would befall them if they were forced to pay charges and attorneys' fees for claims they have determined to be fraudulent, unlawful, and not owed. (Compl. ¶¶ 167-178.) Defendants will have every opportunity in the Federal Action to argue and present evidence that the unpaid charges were not the product of a fraudulent scheme. Second, the Motion seeks only to enjoin Defendants from filing new suits – it does not ask the Court "for permission to stop paying all claims," nor does it seek to enjoin Defendants from submitting future PIP demands. (Opp'n 19.) Third, the Court's grant of an AWA injunction is a far more efficient and less burdensome means of preserving the Complaint's declaratory relief counts than Plaintiffs otherwise would be entitled to pursue at the Florida state court level. Specifically, Florida's well-established "first-to-file" rule holds that when a previously filed federal action will resolve the issues raised in a subsequently filed state court action, the subsequently filed state court action should be stayed until the federal action is resolved. *See, e.g., State v. Harbour Island, Inc.*, 601 So. 2d 1334 (Fla. Dist. Ct. App. 1992); *Physicians Group, LLC v. State Farm,* No. 2013-SC-004967NC (Fla. Sarasota Cnty. Ct. Sept. 12, 2014) (granting insurer's motion to stay provider's subsequently filed PIP suit pending resolution of earlier filed federal action alleging unlawful services). Here, it would defy common sense for Defendants to argue it is more efficient for potentially hundreds of courts to preside over newly filed suits and apply the "first to file" rule, when the compensability of Defendants' charges may be resolved in a single proceeding before the Court. In short, Defendants will not be damaged because the Federal Action provides them with the ability to contest the allegation that all of the unpaid charges at issue are the product of a fraudulent scheme. If the Federal Action fails to resolve all of Defendants' claims for no-fault benefits, the Court could lift the AWA injunction at the conclusion of the Federal Action and Defendants would

6

be free to seek to resolve any remaining disputes in Florida's state courts.[7] Accordingly, Defendants' arguments should be rejected.

### D.     The AWA Authorizes The Court To Enjoin Defendants From Filing New Suits.

Defendants concede the AWA enables federal courts to issue injunctions "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." (Opp'n 8 (quoting 28 U.S.C. § 1651(a).) Defendants do not and cannot dispute the controlling Eleventh Circuit law that holds the AWA authorizes the Court to issue an injunction to protect "not only ongoing proceedings, but potential future proceedings, as well as already-issue[d] orders and judgments." *Burr*, 470 F.3d at 1026.

Defendants are left to argue – without supporting authority – that "a federal court can only enjoin future litigation if there is already a final federal court adjudication on the merits." (Opp'n 16.) While a federal court may issue an injunction to protect previously issued orders and judgments, the case law recognizes other circumstances may warrant an AWA injunction. *See, e.g.*, *Klay*, 376 F.3d at 1102 ("[t]hus, while a party must 'state a claim' to obtain a 'traditional' injunction, there is no such requirement to obtain an All Writs Act injunction – it must simply point to **some ongoing proceeding**, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior") (emphasis added); *Liberty*, 534 F. Supp. 2d at 1324-25 (noting "[a]ny further decisions by the arbitration panel threaten my ability to try the issues before me and to effectuate my judgments" and "[t]he All Writs Act allows a court to 'safeguard not only ongoing proceedings, but potential future proceedings'"); *Riccard*, 307 F.3d at 1295 n.15 (granting motion for AWA injunction where a party brought multiple actions against the same party in multiple forums); *TracFone Wireless v. Simply Wireless*, 2017 WL 5202749, *3 (S.D. Fla. Aug. 10, 2017) (granting motion for AWA injunction to protect the court's jurisdiction). These circumstances are presented here.

In a similar case involving a fraudulent protocol and medically unnecessary services, a federal district court in the Eastern District of New York issued an order, *inter alia*, enjoining the provider-defendants from filing any future state court suits or arbitrations against State Farm. *Parisien*, 352 F. Supp. 3d 215. In *Parisien*, State Farm brought an action against providers that purportedly rendered medically unnecessary services to patients involved in automobile accidents. *Id.* at 220-21. In

---

[7] Similarly, in contrast to Defendants' unsupported claim that the "fundamental rights of policyholders and the democratic process are at stake," the Court's entry of an AWA injunction will do nothing to "blacklist" Defendants, "by-pass" or "re-write" Florida's PIP Law, Fla. Stat. § 627.736 *et seq.*, or deny State Farm insured's and their assignees (*i.e.*, Ceda Ortho Group, the Cereceda Clinics, and Springs Crossing MRI) access to Florida's courts. (Opp'n 3-6, 19-20.)

addition to pleading fraud-based counts, the *Parisien* complaint – like the Complaint in the Federal Action – sought a declaratory judgment that the defendants were not entitled to collect future payment for services rendered during the pendency of the case. *Id.* Noting the importance of the declaratory judgment to its exercise of jurisdiction over the action, the court wrote "[t]he very purpose of a declaratory judgment, like an MDL proceeding, is to avoid a multiplicity of lawsuits and piecemeal litigation . . . and that [i]t is precisely this reason that courts in this district have stressed that it is appropriate to exercise jurisdiction over declaratory judgment actions by no-fault insurers." *Id.* at 230. Importantly, in granting the injunction, Judge Glasser opined that the fragmentation of the dispute into numerous individual actions "would nullify State Farm's efforts to prove fraud at a systemic level, impair a federal declaratory judgment action over which the [c]ourt has taken jurisdiction precisely to eliminate such fragmentation, and deprive State Farm of an avenue toward complete relief in any court." *Id.* at 232. The same considerations apply here.

The Court should enjoin Defendants to preserve its jurisdiction over the claims already at issue in the Complaint's declaratory judgment counts. Defendants do not dispute the scope of the Complaint's declaratory judgment counts, or that a new PIP suit will seek to litigate the same charges already at issue here. Defendants do not dispute they have presented hundreds of PIP demands against Plaintiffs or their ability to quickly ripen these PIP demands into new PIP suits. In fact, as part of Defendants' strategy, they often submit multiple PIP demands on allegedly unpaid or underpaid bills per claim, *see* Ex. 1, which gives Defendants the ability to file multiple PIP suits per claim, thereby increasing their odds of recovering on fraudulent and unlawful services because each bill will necessarily be viewed in isolation in each individual suit. Thus, if Defendants file new PIP suits across Florida's state courts, the Court's jurisdiction over these same charges, which are at issue in the declaratory judgment counts, will steadily dissipate, "destroying the utility of the [declaratory judgment procedure] otherwise ideally suited to resolve such broad claims." *Baldwin*, 770 F.2d at 337.

Moreover, to allow Defendants to file new PIP suits on charges already at issue in the Federal Action would cause irreparable harm to Plaintiffs. First, if Defendants were free to file hundreds of PIP suits on individual bills, Plaintiffs would be deprived of a fair opportunity in individual state cases to introduce evidence regarding, *inter alia*, the patterns in the treatment and documentation across the more than 800 claims at issue here. Defendants do not dispute that the run-of-the-mill PIP suits brought in state court will turn on the circumstances of a single claim and the evidence will be limited to such. Thus, without an injunction, Plaintiffs will be in the position of needlessly defending against and often paying fraudulent charges and associated plaintiffs' attorneys' fees

8

because the state court cannot see the broader scheme across hundreds of claims presented in this action. There will be no recompense for the costs and time incurred by Plaintiffs if forced to litigate hundreds of individual PIP suits on charges already at issue. It will also result in a significant and unnecessary waste of judicial resources, promote substantial inefficiencies across numerous courts, and create the potential for inconsistent rulings on issues that can and should be tried in a single proceeding. (Mot. 10-12.)

Defendants erroneously argue that the Motion relies "on a misapprehension of the nature of *res judicata*." (Opp'n 14.) But Plaintiffs do not argue that the Court has already issued any rulings or rendered any judgments that would have a preclusive effect on any future state court cases. The problem lies in Defendants' argument that "State Farm may very well be barred from bringing claims predicated on the same individual cases that have already been litigated to conclusion," which they repeat in their recently filed Motion to Dismiss.[8] (Opp'n 12, n.7; *see* Dkt. No. 62 at 24-25.) In other words, rather than litigating the unpaid charges in the Federal Action, the Opposition lays bare Defendants' strategy to pursue piecemeal litigation over individual charges in multiple forums to argue the potential preclusive effect such PIP suits may have on the claims at issue in the Federal Action.[9] This strategy will divest the Court of its jurisdiction and is precisely what the AWA is intended to prevent. Accordingly, an All Writs Act injunction will promote judicial economy, reduce the amount of time, effort, and expense incurred by the parties and witnesses, preserve comity among the courts, and allow the issues to be resolved in one forum, at one time.

### E.   This Action Is The Best Vehicle To Resolve All Claims Between The Parties.

Defendants attempt to cast doubt on the legitimacy of the Federal Action by labeling the Complaint a "backdoor" class action, which they contend fails to satisfy the "predominance requirement" of Rule 23(b)(3). (Opp'n 2-3, 13.) The argument is not well taken.

---

[8] Defendants' tactics are well known to providers who have been sued for systemic fraud. In *Path Medical, LLC v. Font*, a Florida provider sued by an insurer for allegedly rendering fraudulent services admitted that it hired an attorney to file PIP suits "which were intended to provide [the provider] leverage in the Middle District Litigation by obtaining judgments with *res judicata* and/or collateral estoppel effect and causing the [i]nsurer to fear the effect of numerous ripe claims for bad faith[.]" CACE-18-027140, ¶ 24 (Fla. Broward Cnty. Ct. 2018), attached hereto as Ex. 2. The Court should enjoin Defendants from pursuing this strategy here.

[9] To that end, none of the cases Defendants cite negate the concerns about *res judicata*, Opp'n 16-17; rather, they merely reaffirm a longstanding principle of Florida law that "[u]nder the doctrine of res judicata, a final judgment on the merits in a prior suit bars a second suit involving the same parties and same cause of action on all matters that were part of the first suit and all issues that could have been litigated." *Deutsche Bank v. Foxx*, 2013 WL 5291128, *3 (M.D. Fla. Sept. 19, 2013).

9

First, Defendants provide the Court with no authority that the Complaint (which seeks relief on behalf of the named Plaintiffs only, based on the fraudulent claims Defendants submitted) is an improper attempt for class action relief. For good reason – this is not the law. As noted above, there is a long line of cases in this District and other federal courts across the country in which insurers have successfully brought claims against fraudulent medical providers in a manner that is consistent with the Federal Action.[10] *See supra* n.2.[11] Defendants' argument also belies a fundamental misunderstanding of the Complaint, which alleges all of the bills and supporting documentation Defendants submitted to Plaintiffs reflect services rendered pursuant to a fraudulent treatment protocol, without regard to the clinical needs of the patient, to maximize payments they would receive while minimizing the possibility of detecting the fraud in any individual claim. The Complaint also details the pattern of fraudulent care that emerges in the bills and supporting documentation across more than the 800 claims at issue. (*See, e.g.*, Compl., Ex. 1.) Thus, while legitimate treatment across a patient population reflects individualized care, the Complaint here alleges Defendants did not legitimately examine, diagnose, or treat patients for conditions they may have had, but instead subjected them to medically unnecessary and unlawfully rendered services regardless of their true needs. (Compl. ¶ 5.) Moreover, the fraudulent and unlawful nature of each bill and record is not revealed in isolation. Rather, it is only when the bills and supporting documentation across the patients at issue are viewed together as a whole do the patterns emerge revealing the fraudulent nature of all Defendants' submissions.[12] (*Id.* ¶ 39.) It is for this reason that the Court is the most appropriate forum in which to present Plaintiffs' case against Defendants.

## II. CONCLUSION

Accordingly, Plaintiffs respectfully request the Court grant the Motion and enjoin Defendants.

---

[10] Contrary to Defendants' argument, the Complaint does not assert a claim under the PIP statute nor does it seek to collect fees against policyholders. (Opp'n 5, 6, 9.) Rather, the Complaint seeks recovery only from Defendants based on the payments they fraudulently obtained.

[11] *See, e.g.*, *State Farm v. Vital Cmty.*, 2018 WL 2194019, *7 (E.D. Mich. May 14, 2018) (denying dismissal of complaint alleging fraudulent treatment); *State Farm v. Lake St. Chiro. Clinic*, 2017 WL 1014336, *3 (D. Minn. Mar. 14, 2017) (same); *State Farm v. Stavropolskiy*, 2016 WL 2897427, *2 (E.D. Pa. May 16, 2016) (same); *State Farm v. Fayda*, 2015 WL 4104840, *2 (S.D.N.Y. June 18, 2015) (same).

[12] *See PICC*, 2010 WL 11475709, *6-7 (M.D. Fla. May 24, 2010) (holding the plaintiffs proved fraud based upon evidence that 957 patients received an identical treatment protocol with little deviation).

Dated: September 13, 2019                                    Respectfully submitted,

By: /s/ *David I. Spector*
DAVID I. SPECTOR, ESQ.
Fla. Bar No. 086540
david.spector@hklaw.com
JOSEPH F. VALDIVIA, ESQ.
Fla. Bar No. 0107878
joseph.valdivia@hklaw.com
HOLLAND & KNIGHT LLP
222 Lakeview Avenue
Suite 1000
West Palm Beach, Florida  33401
Telephone:  (561) 833-2000
Facsimile:   (561) 650-8399

-- and –

ROSS O. SILVERMAN
ross.silverman@katten.com
(*admitted pro hac vice*)
JOHN W. REALE
john.reale@katten.com
(*admitted pro hac vice*)
JOHN T. LEPORE
john.lepore@katten.com
(*admitted pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2019 the foregoing document will be served on all counsel of record via CM/ECF.

By: *David I. Spector*
DAVID I. SPECTOR
Fla. Bar No. 086540
david.spector@hklaw.com
HOLLAND & KNIGHT LLP
222 Lakeview Avenue
Suite 1000
West Palm Beach, Florida  33401
Telephone:  (561) 833-2000
Facsimile:   (561) 650-8399

*Attorneys for Plaintiffs*