## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## SMITH/FLEISCHER LOUIS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

       Plaintiffs,                     CASE NO. 1:19-cv-22487-RS

v.

MARK CERECEDA, D.C., et. al.,

       Defendants.

_____/

### REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants file this Reply in support of their Motion to Dismiss (ECF No. 62).

#### Synopsis

With respect to the licensure issue, this case is materially different from prior cases because: (a) Plaintiffs are not challenging the wholly-owned status of the CEDA Entities; and (b) the CEDA Entities were issued and re-issued written Exemption Certificates by AHCA. This Court should not allow Plaintiffs to collaterally attack the Exemption Certificates and end-run the State of Florida's Administrative Code and Administrative Procedure Act. In short, because ACHA issued the Exemptions, only AHCA can revoke them. *See* F.A.C. Rule 59A-33.006(15) ("***The Agency*** will deny or revoke a certificate of exemption for the following actions … (a) False representation of a material fact in the application for a certificate of exemption or omission of any material fact from the application[;] (b) Failure to meet exemption criteria, [etc.] ...") (emphasis added).

With respect to Plaintiffs' allegation that Defendants used a "pre-determined fraudulent" treatment protocol, Plaintiffs are airing their grievance in the wrong Court using the wrong procedure. The Florida Legislature enacted a comprehensive system to resolve PIP claims that not only mandates certain ***procedural requirements***, but also grants certain ***substantive rights***.

Procedurally, for instance, insurance companies must afford advanced notice to policyholders before bringing a claim based on fraud. *See* Fla. Stat. § 627.736(4)(i) ("If an insurer has a reasonable belief that a fraudulent insurance act, for the purposes of s.626.989 or s. 817.234, has been committed, the insurer ***shall notify*** the claimant, in writing, within 30 days *after submission of the claim* that the claim is being investigated for suspected fraud.") (emphasis added).

Here, Plaintiffs concede that they totally disregarded this condition precedent.[1]

The PIP statute also expressly affords **_substantive rights_**—not only to policyholders, but also to their assignees (here, the CEDA Entities), including, critically, a one-way prevailing party attorneys' fee provision. *See* Fla. Stat. § 627.736(8) ("With respect to any dispute under the provisions of ss. 627.730-627.7405 between the insured and the insurer, **_or between an assignee of an insured's rights and the insurer_**, the provisions of ss. 627.428 and 768.79 apply[.]") (emphasis added).

The right to recover prevailing party fees is substantive for *Erie* purposes. The prosecution of this action without affording the Defendants the procedural and substantive protections afforded by the PIP statute would potentially be a denial of constitutional procedural due process. Although the Florida Legislature did not establish a separate administrative procedural process with a separate appeal system to handle PIP claims, it essentially did the same thing by nominating the county court civil division as the proper venue to determine such claims.

Despite Plaintiffs' whole-cloth dismissals, Rule 23 *prohibits* the lumping together of numerous claims when the proof at trial will degenerate into a series of individualized "mini trials." *Perrero v. Walt Disney Parks & Resorts U.S. Inc.*, 616CV2144, 2017 WL 10080202, at *5 (M.D. Fla. June 19, 2017) ("[P]laintiffs' claims for compensatory and punitive damages would require this Court to conduct an overwhelming number of mini-trials to determine highly individualized issues pertaining to each of the 125 individual Plaintiffs' damages, which, essentially precludes class treatment under Rule 23.").

Plaintiffs try to sidestep the issue of individual proof by asserting that the bills are all non-reimbursable, and therefore, there are no "individual" issues. The argument is flawed, however, because the question of "medical necessity" will require evidence to be adduced, if not by Plaintiffs then absolutely by Defendants, regarding the individual policyholders and their medical charts to prove the appropriateness of treatment. Plaintiffs concede this point at paragraph 139 of the Complaint.

Defendants, who are being accused of fraud, cannot as a matter of due process be restricted to defending themselves in front of the jury by arguing over a "representative sample" of claims unilaterally selected by Plaintiffs, especially given Plaintiffs' contention that this is not a class action, and especially considering that the medical treatment of an individual is, by definition, an

---

[1] And by doing so, Plaintiffs forfeited their right to shift fees to the Defendants. *See* Fla. Stat. § 627.736(4)(h).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

individualized patient-by-patient inquiry. This is particularly so given that the available treatment options for an accident victim are limited.

Due process entitles the Defendants to call every policyholder whose medical treatment is being questioned by Plaintiffs to establish that the treatment was in fact non-fraudulent, individually tailored, medically necessary, and rendered in compliance with the PIP statute and in accordance with local standards for providing chiropractic care to PIP accident victims.  And this is exactly why the PIP statute has in place a statutory mechanism to handle these claims in the state court system, and it is exactly what Plaintiffs are trying to circumvent.

### Point 1
### Plaintiffs' Cited Authority is Not Persuasive

Plaintiffs present the Court with a wide array of cases they claim to be "highly-analogous" precedent. *See* (ECF No. 72 at 20 n.3). They vastly overstate their position.[2]

Legally, and contrary to Plaintiffs' mischaracterization, Defendants' arguments are not "slight and entirely cosmetic" variations on arguments that have already been rejected in similar cases filed by GEICO and State Farm. Defendants' main arguments are predominantly novel, including that Rule 23 precludes this action because, among other things, Defendants must be allowed to present individualized proof to determine whether a particular treatment was medically necessary; that the Florida Legislature has created a comprehensive claims resolution process that affords procedural and substantive rights to PIP policyholders and their assignees—the deprivation of which raises constitutional due process concerns, as well as concerns about AHCA's exclusive authority to grant, regulate, and revoke HCCA license exemptions.

The cases are also factually distinguishable because the providers in previous cases were either *self-declared* exempt from the HCCA (*i.e.,* they did not hold issued exemption certificates and thus were not entitled to due process under the Florida APA), or the issue was whether the clinic was "wholly owned," a simple question of fact which would not intrude on AHCA's regulatory authority. Similarly, the authority relied upon by Plaintiffs to support their erroneous vision of collaterally attacking AHCA's issuance of an exemption, *Vizcay*, is entirely distinguishable because the entities in those cases

---

[2] *See Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.,* 240 F.3d 956, 965 (11th Cir. 2001) ("Unlike circuit court panels where one panel will not overrule another, district courts are not held to the same standard. While the decisions of their fellow judges are persuasive, they are not binding authority. As a result, the district court cannot be said to be bound by a decision of one of its brother or sister judges.") (citation omitted).

FUERST ITTELMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

were licensed under HCCA, a separate statute, and therefore governed by its terms, whereas here the CEDA Entities are *not* "clinics" as that terms is defined in § 400.9905(4) and thus not governed in the same way under HCCA. *See* Fla. Stat. § 400.9905(4) (exempting from definition of "clinic" those entities that are exempted under s. 627.736(5)(h) (exempting PIP providers, like the CEDA Entities, that are "wholly owned by a chiropractic physician licensed under chapter 460")).

Judge Edmondsun wrote, "[t]he power of precedent chiefly is to assure that like cases have like results. Cases that are not essentially alike can rightly have different results." *Dantzler v. IRS*, 183 F.3d 1247, 1248 (11th Cir. 1999). In determining whether an earlier case is sufficiently similar to be persuasive, the Eleventh Circuit has observed: "When we have written of the circumstances of two cases as being materially different, we are saying the same thing for which the Supreme Court—and sometimes this Court—has used a different phrase: 'distinguishable in a fair way' and "fairly distinguishable[.]" *Vinyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir. 2002) (citations omitted).

Here, the facts and circumstances regarding the CEDA Entities are unique. The CEDA Entities hold Exemption Certificates and, as Plaintiffs concede, are wholly-owned by Mark Cereceda. The earlier cases cited by the Plaintiffs are therefore unpersuasive because Plaintiffs are really asking this Court to step into AHCA's regulatory role to revoke the Exemption Certificates *de facto*.

### Point 2
### State Farm Cannot Re-Litigate Previously Litigated Claims

The PIP statute contains a statutory mandate from the Florida Legislature requiring all PIP claims for a single patient to be brought in a single lawsuit.

> (15)   ALL CLAIMS BROUGHT IN A SINGLE ACTION.—In any civil action to recover personal injury protection benefits brought by a claimant pursuant to this section against an insurer, all claims related to the same health care provider for the same injured person shall be brought in one action, unless good cause is shown why such claims should be brought separately. *If the court determines that a civil action is filed for a claim that should have been brought in a prior civil action, the court may not award attorney's fees to the claimant.*

Fla. Stat. § 627.736(15) (emphasis added). Subsection 15 provides (in the last sentence) that the filing of a duplicate claim forfeits the claimants' (i.e., in this case, the *Plaintiffs'*) right to seek prevailing party attorneys' fees.

This is a significant part of the one-way fee shifting scheme in the PIP statute.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

Plaintiffs argue that there is no need for them to identify the claims that have been the subject of prior state court litigation because res judicata and issue preclusion are affirmative defenses that cannot be decided at the motion to dismiss stage.

Defendants agree that res judicata is typically treated as an affirmative defense because it entails a fact-intensive analysis. Here, however, there is no legitimate dispute that Plaintiffs are seeking to relitigate previously litigated claims between the same parties because they are purporting to challenge *every* PIP invoice ever paid to Defendants. Under these unique circumstances, where there are *dozens, if not hundreds,* of prior lawsuits at issue between the parties arising out of the same car accidents, and Plaintiffs are an insurance company that is essentially in the business of litigation and is trying to claw back hundreds of thousands of PIP claims payments, it should be the Plaintiffs' obligation not only to identify those lawsuits, but also to affirmatively exclude them from the claims in this action.

Plaintiffs' counsel is obligated to exclude such claims from this action under Rule 11 and pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney .. who so *multiplies* the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct") (emphasis added).

Counsel for Plaintiffs was obligated to undertake a reasonable investigation before filing this action, and that investigation required claims relating to the same car accidents that have already been the subject of state court litigation between Plaintiffs and Defendants be pulled back. By attempting to place the burden on Defendants to bear the expense of *reminding the insurance companies* of the docket numbers of the cases they have already litigated against the same Defendants (or litigated and settled with the same Defendants) arising from the same car accidents, Plaintiffs have improperly punted on their presuit investigation obligation under Rule 11.

Indeed, Plaintiffs are so eager to multiply the proceedings that they actually argue that Defendants should get certified records and do notices of filings **of the dozens or hundreds of lawsuits that have already been litigated.** That burden-shifting sword is emblematic of the entire intent of this lawsuit, whereby a national insurer is using its economic prowess to outspend a local medical provider—the very same inequity that the PIP statute was designed to eliminate.

It is improper for Plaintiffs to relitigate claims that have already been the subject of state court actions, especially if Plaintiffs were not the prevailing party in those actions. And although Plaintiffs have already forfeited their right to seek fees against the Defendants by not complying with the fraud notice requirement in subsection 4(i), they have *doubly* forfeited their right to seek prevailing party fees

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

with respect to claims that they have already litigated.

At bottom, by attempting to recover prevailing party attorneys' fees against Defendants in contravention of Florida public policy restricting fee-collection against PIP assignees, Plaintiffs are engaging in the type of old-school insurance practices that the PIP statute was designed to eradicate.

**Point 3**
**This Action Is Improper Under Rule 23**

Plaintiffs certainly use the words that this is not a class action. Yet, Plaintiffs are undeniably suing on behalf of their Policyholders to challenge the appropriateness of the medical treatments provided by the Defendants. But for the treatments provided to the Policyholders, there would be nothing for Plaintiffs to pay.

Thus, although Plaintiffs contend that they are suing only on behalf of themselves, the inescapable truth is that Defendants did not provide chiropractic treatment to Plaintiffs. Defendants provided treatment to thousands of injured Policyholders, none of whom are parties to this action but all of whom are being painted as unwitting ponzies in a fraudulent billing scheme. The only effective way Defendants can prove the medical necessity and appropriateness of their treatments is by calling each Policyholder to testify about their experiences and outcomes as CEDA patients and by having an expert witness opine on the medical necessity of each individual patient's treatment.

The thrust of Plaintiffs' lawsuit is that the medical services were medically unnecessary on a **wholesale basis**. This argument, however, is contrary to the claim-resolution scheme of the PIP statue, which requires that proof of medical necessity be determined on a patient-by-patient basis. *See Shenandoah Chiropractic, P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283, 1285–86 (S.D. Fla. 2007) ("As the Plaintiff in the instant case articulates, it is seeking a declaratory judgment as to whether or not the insurer's method of determining reasonableness violates the language in the contract. This is exactly the sort of determination that [is] inappropriate for across-the-board declaratory relief, *because the fact finder must, on a case by case basis, construe the term 'reasonable' and determine whether the insurer's evaluation of the bills submitted fits the definition of 'reasonable.'*"); *Padilla v. Derius v. Allstate Indem. Co.*, 723 So. 2d 271, 274 (Fla. 4th DCA 1998) ("The current state of the law is that the issue of necessity in a PIP case is *decided by factfinders on a case by case basis*, depending on the *specific evidence* introduced at trial and the arguments of counsel.").

Indeed, the Court need go no further than State Farm's stunning admission they could not prevail on an individualized patient-by-patient basis. *See* (ECF No. 72 at 18); Compl. ¶¶ 138-139.

Page **6** of **21**

The claims dispute process erected by § 627.736 represents a careful balancing of legitimate state interests. Federal court interference would jeopardize the rights of State Farm's policyholders to select providers of their choice (under the Florida Patient's Bill of Rights,) as well as their entitlement to the *one-way* prevailing party attorneys' fee provision in § 627.428.

Put another way, Plaintiffs are bringing over 900 separate lawsuits here, not one. And while Rule 23 allows for this type of approach, Plaintiffs concede that they have not satisfied the Rule 23 pleading requirements. Nor could they.

A finder of fact cannot determine whether treatment was "medically necessary" for an individual accident victim merely by viewing a statistical comparison chart of how *other* car accident victims were treated. This is particularly true when there are only a few different modalities available to treat car accident victims. Defendants cannot effectively defend this case, nor can this Court "require" that they defend this case, merely by using a "representative sampling" of the hundreds of medical files at issue. In fact, Defendants dispute as a general proposition that medical necessity can ever be reliably proven (or disproven) by representative sampling *because every person's medical condition is unique. See, e.g., In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1020–21 (5th Cir. 1997) ("Our substantive due process concerns are based on the lack of fundamental fairness contained in a system that permits the extinguishment of claims or the imposition of liability in nearly 3,000 cases based upon results of a trial of a non-representative sample of plaintiffs. Such a procedure is inherently unfair when the substantive rights of both plaintiffs and the defendant are resolved in a manner that lacks the requisite level of confidence in the reliability of its result.").

Even assuming, *arguendo*, that Plaintiffs could in theory be deemed to have carried their burden of disproving medical necessity for over 900 patients without referencing the individual medical files, Plaintiffs still miss the larger point: *Defendants will adduce evidence to prove the individualized medical strategy, treatment, and history of each patient.*

The mere implication that every doctor, chiropractor, and massage therapist who worked at the CEDA clinics over the past seven years joined together in a conspiracy to deliver predetermined, medically unnecessary treatment protocols to PIP patients is as outlandish as it is implausible. And by trying to circumvent the procedural and substantive protections afforded to policyholders and their assignees in the PIP statute, Plaintiffs are engaging in the type of litigation bullying that § 627.736 was designed to prevent.

More egregiously, by asserting causes of action that authorize general prevailing party

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

attorneys' fees, Plaintiffs are depriving the Defendants, as the assignees of the Policyholders, of their substantive due process right to the ***one-way*** prevailing party attorneys' fee provision in § 627.428. This is not just a right that belongs to the policyholders; rather, the one-way fee provision, which is incorporated into the PIP statute through subsection 627.7346(8), expressly authorizes recovery of fees by ***assignees***. *See* Fla. Stat. § 627.428 ("With respect to any dispute under the provisions of ss. 627.730-627.7405 between the insured and the insurer, or between an assignee of an insured's rights and the insurer, the provisions of ss. 627.428 and 768.79 apply[.]").

The right to recover prevailing party fees is substantive for *Erie* purposes.[3]  The right to recover fees in a PIP dispute is therefore a protected right under Florida law that belongs to the CEDA Entities. *See Moser v. Barron Chase Sec., Inc.*, 783 So. 2d 231, 236 (Fla. 2001) ("The courts have long held that rights to attorney's fees granted by statute are substantive rather than procedural. As such, the due process standards necessary in safeguarding such a right must provide for a 'meaningful, full, and fair' hearing to the affected individual."). By seeking to recover attorneys' fees ***against*** the assignees of its own policyholders, Plaintiffs have blatantly violated one of the main public policy directives underlying the enactment of the PIP statute and for which the Florida Legislature justified the abrogation of common law rights. In addition to these protected, substantive legal rights, the PIP Statute affords numerous, significant procedural rights to Policyholders—rights to due process that are being trampled by the pendency of this lawsuit.

First, and foremost, the overall purpose of the PIP statute was to assure "***swift and virtually automatic payment***" of PIP claims. *See Ivey v. Allstate Ins. Co.,* 774 So. 2d 679, 683–84 (Fla. 2000) ("Without a doubt, the purpose of the no-fault statutory scheme is to 'provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption."). As the Florida Supreme Court has observed, "[t]his last observation is significant because any impediment to the right of the insured to recover in a 'swift and virtually automatic' way has the potential for interfering with the PIP scheme's goal of being ***a reasonable alternative*** to common law tort principles." *Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873, 877 (Fla. 2010) (emphasis added). There is nothing about this lawsuit that is consistent with the goal of swift payment

---

[3] *See Divine Motel Group, LLC v. Rockhill Ins. Co.*, 722 F. App'x 887, 889 (11th Cir. 2018) ("We have held that § 768.79 is substantive law for *Erie* purposes."); *All Underwriters v. Weisberg*, 222 F.3d 1309, 1311 (11th Cir. 2000) ("By applying Fla. Stat. § 627.428 in federal court, we have obviously viewed the statute as substantive law for *Erie* purposes.").

FUERST ITTELMAN DAVID & JOSEPH • ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

of PIP claims, nor is it consistent with the legislative mandate of being a reasonable alternative to common law tort principles.

Second, subsection 627.736(4)(i) requires, *before any assertion of fraud by the insurance company in defense of a PIP claim*, that the insurer send *advance written notice* as a condition precedent to the claimant (*i.e.*, the policyholder or its assignee, whichever has filed the claim). *See* Fla. Stat. § 627.736(4)(i) ("[T]he insurer shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud.").

In sum, allowing this case to proceed on a disguised class action basis is procedurally untenable, given the dictates of Rule 23 and the potential infringement on procedural and substantive due process rights of the Policyholders and their assignees (*i.e.*, Defendants).

**Point 4**
**Plaintiffs Cannot Collaterally Attack The Exemption Certificates**

*"Straw Man"* A tenuous and exaggerated counterargument
that an advocate makes for the sole purpose of disproving it.[4]

In the Complaint, State Farm alleged that the CEDA Entities "*never qualified* for exemptions from licensure as health care clinics…As a consequence, [the Ceda Entities] operated, at all times, in violation of the HCCA and were not entitled to collect No-Fault Benefits." Compl. at ¶ 129 (emphasis added). State Farm made this structural allegation despite acknowledging elsewhere in the Complaint that the CEDA Entities had received certificates from the State of Florida *confirming that they were exempt* from the HCCA. *See* Compl. ¶¶ 28-33. The significance of State Farm's position is revealed in the Complaint's Claims for Relief. *See* Compl. at ¶¶ 129, 151, 155, 160 (asserting that because the "services were not lawfully rendered" State Farm is entitled to damages).

In the Motion, Defendants challenged State Farm's structural attack against the CEDA Entities because, *inter alia*, the Complaint effectively asks the Court to *set aside* the Exemption Certificates and thereby "disrupt, if not usurp AHCA's authority to regulate the provision of health care services in … Florida and reopen decisions long since final and unappealable." (ECF No. 62 at 18). Defendants also explained why the Court should abstain from entertaining State Farm's structural attack pursuant to well-settled abstention doctrines. *Id.* at 19-24.

In its Opposition, State Farm grossly exaggerates the CEDA Entities' position by arguing that

---

[4] *Black's Law Dictionary*, p. 680 (3rd Pocket Ed., 2006).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

"Defendants argue the Court lacks authority to exercise jurisdiction over the entire complaint…" (ECF No. 72 at 23). State Farm continues: "Defendants argue because five of Cereceda's seven clinics obtained certificates from AHCA, the Court must abstain from deciding the entire case. The thrust of Defendants' argument is that once AHCA provides a certificate of exemption to a clinic, the clinic is immune from any court action." (ECF No. 72 at 24). To knock down its straw man, State Farm then proceeds to cite a litany of cases supporting the availability of judicial remedies for insurers against health care clinics in Florida.  Defendants, however, have not taken such a position.

State Farm relies extensively on *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1330-31 (11th Cir. 2016), which they says "squarely rejects defendants' argument that Florida law does not provide insurers with a judicial remedy for a health care clinic's violations of the HCCA's licensing arguments." (ECF No. 72 at 24). But State Farm's reliance on *Vizcay* is misplaced. Primarily, State Farm advocates that *Vizcay* stands for the position that "[w]hether a **clinic** self-determined its exempt status or received a certificate of exemption is…'a distinction without a difference.'" (ECF No. 72 at 13) (quoting *Vizcay*, 826 F.3d at 1331).

This mischaracterizes the decision. The Eleventh Circuit decided in *Vizcay* that whether a "**clinic**" is licensed or unlicensed is "a distinction without a difference." The CEDA Entities have been certified by AHCA as ***exempt*** from the HCCA and are therefore not deemed to be "**clinics**" as a matter of law, an issue not before the Court in *Vizcay. See* Fla. Stat. § 400.9905(4); F.A.C. Rule 59A-33.006.

By mischaracterizing *Vizcay*, State Farm whitewashes the important exceptions to the term "clinic" in the HCCA, as well as the very existence of AHCA's exemption certificates. *Vizcay* concerned whether a licensed ***clinic*** could be denied payment due to the failure of its medical director to comply with her duties as provided in the HCCA. 826 F.3d at 1330. In endorsing Allstate's position, the Court relied upon Fla. Stat. § 400.9935(3), explaining that claims made by a clinic to an insurer are "noncompensable and unenforceable if the clinic 'is required to be licensed … but … is not so licensed,' *or* if the clinic '*is otherwise operating in violation*' of the Act's licensing requirements." *Vizcay*, 826 F.3d at 1331 (emphasis in original) (quoting Fla. Stat. § 400.9935(3)).

In sum, the Court in *Vizcay* relied upon the "otherwise operating in violation" language to hold that the licensed **clinic** was not entitled to payment because it did not have a *bona fide* medical director. *Id.* Here however, the "otherwise operating in violation" statutory language does not apply to the CEDA Entities because § 400.9935(3) only applies to ***clinics***. This is a distinction with a

FUERST ITTELMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

separation difference. Exempt entities are expressly excluded from the definition of "clinic" under the HCCA. *See* § 400.9905(4)(g) (circumscribing the term "clinic" and noting that the "licensure requirements of this part do not apply to" entities falling under the "wholly-owned" exemption).

State Farm's reliance on *Vizcay* is also misplaced because State Farm weaves it into its straw man argument, *i.e.,* that Defendants are somehow taking the position that the CEDA Entities are immune from suit based on their Exemption Certificates. But that is not Defendants' position. Instead, Defendants argued that State Farm cannot challenge the CEDA Entities' ***licensure status*** in ***this*** case, *i.e.,* by alleging that ***all*** of the services they rendered were unlawful because they "never qualified" for the exemptions they received. Doing so would materially disrupt AHCA's jurisdiction, therefore triggering, *inter alia*, Article II, § 3 of Florida's Constitution, which imposes a more rigorous separation of powers than its federal counterpart.  Motion at 19-24.

As described in the Motion, the CEDA Entities sought and obtained Certificates of Exemption from AHCA as far back as 2013. (ECF No. 62, Ex. B). AHCA then re-certified the CEDA Entities at least twice. At all times, AHCA reserved the right to revoke them to the extent the CEDA Entities had made a "false representation of a material fact in the application…" F.A.C. Rule 59A-33.006(15)(a). Now, however, in ***this*** Court, with AHCA not present, and without explaining what changes occurred between 2013 and today, State Farm alleges that the CEDA Entities "never qualified" for the exemptions in the first place, and does so to support their sweeping theory that every treatment ever rendered was unlawful and non-reimbursable.

State Farm does not explain, and cannot explain, how ACHA erred. AHCA was well within its authority to issue the Exemption Certificates, which are long since final; *see Reedy Creek Utils. Co. v. Fla. Pub. Serv. Com'n,* 418 So. 2d 249, 254 (Fla. 1982) ("an underlying purpose of the doctrine of finality is to protect those who rely on a judgment or ruling."); *Miller v. Booth*, 702 So. 2d 290, 291 (Fla. 3rd DCA 1997) ("The doctrine [of administrative res judicata] is applicable to rulings or decisions of administrative bodies…unless it can be shown that since the earlier ruling thereon there has been a substantial change of circumstances...") (internal quotation omitted). As Defendants also described in the Dismissal Motion, the mandated process for challenging the CEDA Entities' exempt status is found in AHCA's own rules. (ECF No. 62 at n.13); Fla. Admin. Code R. 59A-33.006(15)(a), and the Florida Administrative Procedure Act.

The holding in *Otwell v. Alabama Power Co.*, 747 F.3d 1275 (11th Cir. 2014), is instructive. In that case, a group of homeowners brought tort claims against a power company which had previously

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

been authorized by the Federal Energy Regulatory Commission (FERC) to operate on a lake in Alabama. As described by the Court, the homeowners' tort action sought more stable water levels in the lake, as well as the construction of cooling towers. However, FERC had previously considered both of those positions, and determined that the benefits were outweighed by the costs, "and it [was] not in the overall public interest" to adopt them. *Id.* at 1278. Consequently, the Court ruled that the tort action was "inescapably intertwined" with FERC's licensing decisions, and affirmed the dismissal of the lawsuit as "*an impermissible collateral attack.*" *Id.*

In support of its ruling, the Court described the statutory review provisions available to the homeowners under the Federal Power Act, 16 U.S.C. § 825*l*(b), which provides that any party aggrieved by an order issued by FERC may seek review of the decision in a United States Court of Appeals. *Id., at 1281.* The Court also cited to Supreme Court decisions holding that § 825*l*(b) was the "exclusive mode for judicial review" and "precludes *de novo* litigation…" *Id.* (internal citations omitted). Thus, when the homeowners filed tort claims which were "inescapably intertwined" with FERC's licensing decision, the Court rejected them as end-runs around the statutory review provisions, even though the homeowners argued that they were merely seeking to "enforce their riparian rights." *Id.*

Similar holdings addressing this well-settled legal principle are legion. *See, e.g., Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965) ("…where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures ***are to be exclusive.***"); *U.S. v. Southern Ry. Co.*, 364 F.2d 86, 91-92 (5th Cir. 1966) (statutorily prescribed review procedures **are "exclusive**…even though Congress may not have expressly provided for the exclusiveness of the statutory procedure."); *Ponce DeLeon Healthcare Inc. v. AHCA*, 1997 WL 419641 (S.D. Fla. 1997) (Court lacked subject matter jurisdiction when litigant failed to exhaust administrative remedies under the Medicare Act).

These cases addressing collateral attacks guised as tort suits parallel this one. Indeed, it is undisputed that as far back as 2013, AHCA determined that the CEDA Entities were exempt from regulation under the HCCA and were not "clinics." *See* Fla. Stat. § 400.9935(6). But in the Complaint, State Farm alleges that the CEDA Entities "never qualified" for the Exemption Certificates, in spite of AHCA's findings to the contrary. Compl. ¶ 129. For its part, Florida law contains ***multiple*** review provisions for AHCA licensing determinations, none of which is a lawsuit filed by a third party in federal court. Instead, AHCA's own rules govern the manner by which exemption certificates can be challenged. Fla. Admin. Code, 59A-3306(15). Florida law allows for law enforcement investigations

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

of false statements made to AHCA, Fla. Stat. § 626.989(1)(a)(2), and its Administrative Procedure Act "appl[ies] in **all proceedings** in which the substantial interests of a party are determined by an agency…" Fla. Stat. § 120.569(1) (emphasis added). More precisely, to the extent that a decision by AHCA is to be challenged, Florida law further provides that the proper pathway concludes with judicial review which must be sought "in the appellate district where the agency maintains its headquarters or where a party resides or as otherwise provided by law." Fla. Stat. § 120.68(2)(a).

State Farm's challenge to the CEDA Entities' licensure status, *i.e.,* alleging that they "never qualified" for their Exemption Certificates, is quite clearly a collateral attack disfavored by the case law. For starters, it is "inescapably intertwined" with AHCA's licensing decision, because State Farm is challenging the **same exact** factual issues already decided and re-decided by AHCA. Furthermore, State Farm is clearly circumventing the exclusive remedies available under Florida law, and particularly the Administrative Procedure Act. This forum is simply the wrong one for attacks against the CEDA Entities' licensure status, especially to the extent that they raise *bona fide* Separation of Powers issues arising under the Florida Constitution. *See Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976) ("Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.") (citing *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959)).

Finally, having conceded that the Exemption Certificates were issued, State Farm now asks this Court to stand in the shoes of AHCA and revoke them. However, revocation of an exemption that impacts a "substantial interest" <u>requires</u> a hearing under the Florida Administrative Procedure Act. *See* Fla. Stat. § 120.60(5) ("No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the entry of a final order, the agency has served, by personal service or certified mail, an administrative complaint which affords reasonable notice to the licensee of facts or conduct which warrant the intended action and unless the licensee has been given an adequate opportunity to request a proceeding pursuant to ss. 120.569 and 120.57."); Fla. Stat. § 120.59(1) ("The provisions of this section apply in all proceedings in which the substantial interests of a party are determined by an agency, unless the parties are proceeding under s. 120.573 or s. 120.574."); *see also Westchester Gen. Hosp. v. Dep't of Health & Rehab. Servs.*, 419 So. 2d 705, 707 (Fla 1st DCA 1982) (HRS complaint seeking forfeiture of exempt status treated as license revocation proceeding.)

Plaintiffs' argument to the contrary misreads Rule 59A-33.006(14) as allowing a Court, as opposed to AHCA, to retroactively revoke an HCCA exemption. But it is clear from both the statute

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • <u>WWW.FIDJLAW.COM</u>

and the regulation that *only the agency* itself has that authority. *See* F.A.C. Rule 59A-33.006(15) ("***The Agency*** will deny or revoke a certificate of exemption for the following actions …(a) False representation of a material fact in the application for a certificate of exemption or omission of any material fact from the application[;] (b) Failure to meet exemption criteria, [etc.] ...") (emphasis added). State Farm's collateral attacks against the CEDA Entities' licensure status should therefore be dismissed.

**Point 5**
**Plaintiffs' Common Law Fraud Claims Are Barred**

**A**.  *The Only "Fraud" Claim Available to Plaintiffs is Statutory*

Section 627.736 provides State Farm with explicit remedies for challenging a PIP claim that was allegedly fraudulently submitted. *See, e.g.,* Fla. Stat. §§ 627.736(4)(h), 4(i), 12, and 14.   Despite these remedies, Plaintiffs endeavor to avoid the Independent Tort Doctrine by erroneously citing to non-binding, distinguishable authority to argue that the relationship here is not governed by contract and therefore the independent tort doctrine does not apply. However, State Farm's position contradicts their very own allegations that they are "under statutory and contractual duties to pay or deny [PIP] claims … within 30 days." Compl. ¶ 137.

The relationship between State Farm and the CEDA Entities arises from the written contracts of insurance, which are the genesis of the duties and obligations flowing to and from Plaintiffs. But for the assignment of benefits ("AOBs") by the policyholders, the CEDA Entities, would lack entitlement to receive payment under the PIP statute. State Farm argues that the AOBs do not rise to the level of contractual privity, however, because of their contention that only the benefits are assigned; not the detriment.  State Farm misses the point.

The benefits are what is at issue in this lawsuit.  Indeed, the entire lawsuit *sub judice* arises from the very "benefits" assigned to the CEDA Clinics. Specifically, the "benefits" are the claims for reimbursement for medical services.  These are the very benefits that State Farm is seeking to avoid payment.  The "detriment" that State Farm claims was not part of the assignment, is not in any way related to the claims brought by State Farm, and thus are not in any way at issue.

The reasoning articulated by the court in *Nationwide Mutual Co. v. Ft. Myers Total Rehab Center, Inc.,* 657 F. Supp. 2d 1279 (M.D. Fla. 2009), is on point.  There, the Court found the AOBs indeed created a contractual privity:

> In this case, there is no direct contract between Nationwide and the defendants.
> There were contracts, however, between Nationwide and its fifteen policy holders,

Page **14** of **21**

and these contracts required Nationwide to pay for certain services by medical providers under certain conditions. The allegations in the complaint are that plaintiff's fifteen insureds were all patients for FMTRC and that FMTRC took assignments of benefits for direct billing purposes using CMS-1500 Forms. The Form (Doc. # 1-3) requires the signature of the insured patient to assign benefits to a *provider, and created a contractual relationship between FMTRC and plaintiff. The obligations of Nationwide to pay FMTRC was premised solely on the assigned contract. The Court finds that plaintiff's claim of common law fraud as to FMTRC is therefore barred by the economic loss rule and must be dismissed.*

(Emphasis added).

Plaintiffs relies upon *State Farm Fire & Casualty Co. v. Silver Star Health & Rehab*, for the sweeping position that AOBs conclusively do not give rise to privity. Yet, *Silver Star* concluded that the AOB did not create the level of privity, which barred a claim for unjust enrichment. 739 F.3d at 584-85.

The Independent Tort Doctrine precludes claims in fraud when the action is governed by a contract. Here, the contract, which incorporates the PIP Statute, provides robust legislatively enacted remedies when an insurer such as State Farm contends it has been defrauded. It cannot circumvent the PIP Statute and its remedies by suing in common law fraud.

The existence of the comprehensive statutory dispute system in § 627.736, combined with the numerous provisions governing the procedure for an insurance company to dispute a PIP claim based on fraud, should be interpreted by this Court as a preemption of common law fraud claims by the Florida legislature, which did not include a provision in the PIP statute preserving other common law remedies. *Cf. Macola v. Gov't Employees Ins. Co.*, 953 So. 2d 451, 457 (Fla. 2006) ("However, before discussing the cure provision, we note that the plain language of section 624.155(8) provides that the civil remedy in section 624.155 'does not preempt any other remedy or cause of action provided for pursuant to ... the common law of this state.'"). State Farm does not cite to any precedent affirmatively indicating that common law fraud claims survived the enactment of the PIP statute, which is the statutory *alternative* remedy to Florida tort law. *See Menendez*, 35 So. 3d at 877 ("The PIP statute is unique, in that it ***abolished*** 'a traditional common-law right by limiting the recovery available to car accident victims' and in exchange, required PIP insurance that was recoverable without regard to fault. Although recovery is restricted under this statutory scheme, this Court has held that the PIP statute is a reasonable alternative to common law tort principles in that it provides 'swift and virtually automatic

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

payment so that the injured insured may get on with his life without undue financial interruption.'")
(citations omitted)).

This Court should find that Plaintiffs' only remedy is a claim under the PIP statute.

**B.** *State Farm Fails To Plead Reliance*

State Farm is correct that its reliance does not need to be "justified." However, Plaintiffs still
must allege ultimate facts from which it can be reasonably inferred that it suffered injury "in reliance"
on the representation. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). State Farm's single conclusory
allegation that they "relied" is insufficient to save the fraud claim from a missing essential element.

Relatedly, State Farm argues that because only Cereceda, individually, and Physicians Central
Business Office, LLC ("PCBO"), were named as defendants in the prior federal lawsuit, dismissal of
the fraud claim against all Defendants here would be improper. (ECF No. 72 at 39). State Farm's
allegations here undermine its argument because State Farm was not entitled to rely on representations
made by *either* Cereceda *or* PCBO (the entity that submitted bills), which are integral to the alleged
scheme based the parties' prior litigation history. State Farm's technical attempt to distinguish the
prior litigation as between different parties is form over substance, and even there it fails.

The Complaint specifically alleges that Cereceda is *the common thread* among all Defendants and
that he masterminded the alleged fraudulent scheme. *See* Compl. ¶ 34(a) ("Cereceda designed, oversaw,
and is responsible for the Predetermined Protocol to exploit the No-Fault Benefits[.]"). Cereceda is
the sole member who "wholly owns and controls" the CEDA Entities, which he allegedly created for
the purpose of submitting fraudulent bills and documents. *E.g.*, Compl. ¶¶ 2(a)-(g); 26-33. And, with
respect to the individual Defendants, "Cereceda has knowingly directed and profited from the
activities of those who have been employed or associated with Ceda Ortho Group, the Cereceda
Clinics, Springs Crossing MRI, and Physicians CBO to provide medically unnecessary and unlawful
services." Compl. ¶ 14. Stated differently, there is not a single "representation" alleged in the
Complaint made where Cereceda is not central to it being made.

It is a "well-established and common sense principle" that a former adversary "cannot rely
upon the representations" of one who previously was accused of acting in a fraudulent manner. *Moriber
v. Dreiling*, 194 So. 3d 369, 374 (Fla. 3d DCA 2016); *Green Leaf Nursey v. E.I. DuPont De Nemours & Co.*,
341 F.3d 1292, 1305 (11th Cir. 2003). State Farm does not cite any contrary authority.

**Point 6**
**Rule 9(b) Requires Dismissal Of the Fraud-Based Claims Against The Individuals**

Plaintiffs fail to meet the Rule 9(b) standard for the individual defendants.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

The parties agree that Rule 9(b) applies to each of Plaintiffs' claims sounding in fraud, and that Rule 9(b) requires "(1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud." *Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp. 3d 1367, 1374 (S.D. Fla. 2014).

Plaintiffs concede that their Complaint lumps the individual provider Defendants[5] together. The portions of the Complaint cited by Plaintiffs in an effort to demonstrate particularity (*i.e.* ¶¶ 74-90) are, in fact, pleaded generally, with all of the individual providers allegedly engaging in precisely the same conduct. The individual Defendants are even lumped together under a single collective term, such as the "Cereceda Chiropractors" or the "Cereceda Physicians." *See* Compl. ¶¶ 69, 87.

In cases involving multiple defendants, Rule 9(b) requires specific allegations regarding *each* defendant, rather than lumping all defendants together. *See Ambrosia Coal & Construction Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (dismissing a fraud count where "Count XXV does not discuss the nature of *each* defendant's participation … nor does Count XXV discuss each alleged statement, document, or misrepresentation made with the proper level of precision."); *Brightstar Corp. v. WSA Distributing, Inc.,* 2010 WL 1027420, at *2 (S.D. Fla. March 18, 2010) ("Additionally, when multiple defendants are involved, ***the complaint must distinguish among defendants to inform each defendant of his or her respective role in the fraud.***") (emphasis added); *Leon v. Continental AG,* 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017) ("Plaintiffs make no particularized allegations about what MBUSA did to violate FDUTPA; instead, they rely on general allegations against all 'Defendants' or against 'Mercedes Benz'—which includes both MBUSA and Daimler AG. These allegations, ***which do not distinguish the conduct of Defendants***, are insufficient to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, let alone Rule 9(b)") (emphasis added).

Aside from references to a few examination reports or patient notes (which do not reference the individual provider Defendants), there are no allegations specific to the individual providers. None of the relevant nuances differentiating each of them (*i.e.*, their tenures, their specific job duties, their specific patient interactions, the amount of time spent at each clinic, their specific treatment techniques, or the specific documents they completed in furtherance of the fraud) are discussed in the

---

[5] Those Defendants are described as the "Physician Defendants" (Crespo-Smith, Moya, and Javech) and the Chiropractor Defendants (Canizares, Facuseh, Fenelus, Haban, Habayeb, Ross, Schulman, and Yoham).

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

Complaint. According to the Complaint, what one did, all others did.

Plaintiffs argue that this pleading failure is excused because each Defendant is sufficiently notified of his or her role in the alleged scheme, (ECF No. 72 at 48); but, the case cited by Plaintiffs in their response does not cure Plaintiffs' pleading failures.

In *Government Employees Insurance Co. v. KJ Chiropractic Center, LLC,* 2014 WL 12617566 (M.D. Fla. March 6, 2014), while defendants were grouped at points in the complaint, the plaintiff in that case made specific, individualized allegations with respect to each named defendant and were far more particularized than Plaintiffs' complaint here. The attachments to Plaintiffs' complaint appear to add a veneer of particularity, but they are misleading. They are premised on the faulty assumption that *every* item of service was fraudulent—an allegation that is not plausible and that fails to adequately apprise the individual providers of the alleged actions underlying Plaintiffs' fraud claims.

Moreover, while intent or knowledge may be alleged generally under Rule 9(b), the Complaint's allegations regarding the individual provider's intent or knowledge of the alleged falsity are entirely conclusory. Nowhere is Plaintiffs' failure more apparent than the fraud claims predicated on the HCCA. There are no allegations in the complaint that support the conclusion that the individual providers knew of, or should have known of, the alleged licensing failures. There are no allegations that the individual providers were involved in the determination of an entities' licensing or exemption status, or the administration or management of the CEDA Entities, or that the individual providers were tasked with ensuring the CEDA Entities' compliance with the HCCA.

### Point 7
### The Conspiracy Claims Fails To State A Claim Upon Which Relief Can Be Granted
#### A. *The Conspiracy Claims Are Inadequate Under Rule 9(b)*

Plaintiffs have failed to adequately state a claim for civil conspiracy.

It is axiomatic that a claim for civil conspiracy must adequately plead an agreement between two or more parties. *RMS Titanic, Inc. v. Kingsmen Creative Ltd.,* 579 F. App'x 779, 789 (11th Cir. 2014). However, allegations that the co-conspirators were "engaged in the same 'scheme," alone, is insufficient to state a claim for civil conspiracy. *Alhassid v. Bank of Am., N.A.,* 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014). Indeed, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.*

Here the only allegations relating to the purported agreement are conclusory and unsupported

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

by any specific factual allegations. Plaintiffs fail to describe any interactions between Defendants tending to show the existence of an agreement, fail to describe any jointly-conducted efforts in furtherance of the alleged agreement, fail to plead any actions made in "concert" among the Defendants, and fail to plead any common purpose that would benefit *all* Defendants—which would seemingly be apparent if Defendants truly had a "symbiotic relationship.

Additionally, Plaintiffs do not clarify when this alleged agreement was first reached, and how Defendants who became associated with the CEDA Entities thereafter agreed to join the allegedly already existing conspiracy. Plaintiffs' Complaint simply leaves too many unanswered questions for it to pass muster under the exacting standards of Rule 9(b). Further, even if *some* of the defendants were in agreement, Plaintiffs' conspiracy claim is predicated on *all* Defendants participating in the conspiracy. Thus, even if the court finds that Plaintiffs' Complaint adequately allege the existence of an agreement between some of Defendants, the conspiracy claim must be dismissed.

### B. *The Conspiracy Claims Are Barred By The Intra-Corporate Conspiracy Doctrine*

Mark Cereceda obviously cannot be liable for conspiring with himself. Nor can agents of corporations conspire with one another or with the corporations on whose behalves they act. But effectively, that is what Plaintiffs' conspiracy claims ultimately allege.

The intracorporate conspiracy doctrine "holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Here, Cereceda, as the sole owner and managing member of each corporation, qualifies an agent of each corporate defendant, as do the individual provider defendants working at the various CEDA Entities. Therefore, the conspiracy claims are barred by the intracorporate conspiracy doctrine. *See, e.g., Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1213 (11th Cir. 2018); *Whitney Nat'l Bank v. SDC Communities, Inc.*, No. 8:09-cv-01788, 2010 WL 1270264, * 5 (M.D. Fla. Apr. 1, 2010); *Graham v. Cypress Capital Group Inc.*, Case No. 10-81269, 2011 WL 13227744, at *5-6 (S.D. Fla. July 12, 2011).

Moreover, the Complaint does not allege ultimate facts as to how each corporate Defendant, conspired with one another. *See George & Co. LLC v. Spin Master Corp*, Case No. 2:18-cv-154, 2018 WL 5268754, at *6 (M.D. Fla. Sept. 13, 2018); *Whitney*, 2010 WL 1270264, * 5 ("[I]t is possible that the conspiracy claims against Henry will be barred by the intracorporate conspiracy doctrine, but there are simply no particularized facts alleged in any of the conspiracy counts to reach that conclusion.").

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fidjlaw.com

State Farm argues that the "personal stake" exception to the doctrine bars its applicability. Financial motivation of the individuals, however, is insufficient to trigger the exception. *Wyndham Vacation Ownership v. Reed Hein & Assoc., LLC*, Case No. 6:18-cv-02171-GAP-DCI, 2019 WL 2232241, at *6 (M.D. Fla. May 23, 2019) ("But the exception does not apply simply because some conspirators were getting paid by the corporation. The exception does not even apply where an individual can expect a bigger paycheck from the corporation if the conspiracy is successful.").

Because the Complaint does not allege personal stake by Cereceda or any individual Defendant that is different from any corporate purpose, the personal stake exception does not apply.

Finally, the criminal activity exception to the intracorporate conspiracy doctrine does not apply because the Complaint does not allege any criminal activity by Defendants. *Bowe v. City of Hallandale Beach*, CASE NO.: 0:16-civ-60993, 2016 WL 10587945, at *2 (S.D. Fla. Dec. 9, 2016) (dismissing conspiracy claim and rejecting argument that civil conspiracies are exempt because "Plaintiffs have made no mention of these criminal statutes in the Complaint").

### Point 8
### The Court Should Decline To Issue Declaratory Judgment

Even if an actual controversy exists, the Court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). That discretion is "exceptionally broad." *Otwell*, 747 F.3d at 1280; *see also Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Estate, LLC*, 18-80407-CIV, 2019 WL 4694139, at *5 (S.D. Fla. Aug. 22, 2019) ("[The Declaratory Judgment Act] confers a discretion on the courts rather than an absolute right upon the litigant. When all is said and done ... the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."). Here, the Court should decline to entertain Plaintiffs' request for declaratory relief because it would completely immunize Plaintiffs from having to comply with the requirements of the PIP statute when refusing payment based on fraud and deny Defendants due process of law by depriving them of the procedural and substantive benefits afforded by the PIP statute, especially the one-way prevailing party attorneys' fees provision. *See Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 & n.11 (11th Cir. 2008) (noting that the "mere recitation of a request for declaratory relief cannot transform damages claims into a Rule 23(b)(2) class action").

### Conclusion

For the reasons set forth in the Motion, the Court should dismiss this action with prejudice.

FUERST ITTLEMAN DAVID & JOSEPH
ONE SOUTHEAST THIRD AVENUE, SUITE 1800, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FIDJLAW.COM

Respectfully submitted,

**FUERST ITTLEMAN DAVID & JOSEPH**
*Attorneys for Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 350-5690
Facsimile: (305) 371-8989
Email: ajoseph@fidjlaw.com
Email: aittleman@fidjlaw.com
Email: crajotte@fidjlaw.com
Email: njoshi@fidjlaw.com
Secondary Email: lcabrera@fidjlaw.com

By:  /s/ Allan A. Joseph
Allan A. Joseph
Florida Bar No.: 893137
Andrew S. Ittleman
Florida Bar No.: 0802441
Christopher Rajotte
Florida Bar No.: 107742
Namrata S. Joshi
Florida Bar No.: 105267

## CERTIFICATE OF SERVICE

We hereby certify that on November 6, 2019, the foregoing document is being served on the all counsel of record, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing through the CM/ECF system.

By:  /s/ Allan A. Joseph
Allan A. Joseph