*Exhibit 24*

## Page 1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CEDA ORTHOPEDICS &              CASE NO.: ▮▮▮
INTERVENTIONAL MEDICINE OF
SOUTH MIAMI, a/a/o
▮▮▮,
    Plaintiff,
-vs-
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
    Defendants.
_____/
CEDA ORTHOPEDICS &              CASE NO.: ▮▮▮
INTERVENTIONAL MEDICINE OF
FIU/KENDALL, LLC, a/a/o
▮▮▮,
-vs-
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
    Defendants.
_____/

DEPOSITION OF RICHARD YOHAM, DC,
Whereupon, the deposition was taken at
11890 Southwest 8th Street,
Suite 400, Miami, Florida,
Commencing at 10:11 a.m. and at ending at 12:00 p.m.,
On Thursday, November 12, 2015
Taken before Teresa H. Miranda,
Court Reporter for the State of Florida,

## Page 2

APPEARANCES:
On behalf of the Plaintiffs:
CARLOS DEL AMO. P.A.
By: Robert J. Lee, Esquire
3211 Ponce de Leon Blvd., Suite 200
Phone: (305) 322-9971
E-mail: RLee@DelAmoLaw.com

On behalf of the Defendant:

LEITER, BELSKY & THARP
By: Belayne D. Guerrero, Attorney at Law
Blackstone Building, Third Floor
707 Southeast Third Avenue
Fort Lauderdale, Florida 33316
Phone: (954) 462-3116
E-mail: Bguerrero@jlblaw.com

            INDEX
WITNESS           DIRECT  REDIRECT  CROSS  RECROSS
RICHARD M. YOHAM, D.C.    3    48    43

        EXHIBITS
DEFENDANT'S                             PAGE
EXHIBIT NO. 1: Composite Exhibit Medical Records   17
EXHIBIT NO. 2: Police report            18

## Page 3

Thereupon,
    RICHARD M. YOHAM, D.C.
was called as a witness by the Defendant and, having been duly
sworn, was examined and testified as follows:
    THE WITNESS: Yes, I do.
    DIRECT EXAMINATION (10:11 a.m.)
BY MS. GUERRERO:
Q  Good morning.
A  Good morning.
Q  Could you please state your full name for the record, please.
A  Richard Yoham.
    MS. GUERRERO: Counsel and I have agreed that we will be doing this deposition under the two cases, the two pending cases, companion cases.
    MR. LEE: Ceda Orthopedics & Interventional Medicine of South Miami, LLC, as the assignee of ▮▮▮. That's Case No. -- do you mind?
    MS. GUERRERO: Go ahead.
    MR. LEE: -- ▮▮▮. And the other case is Ceda Orthopedics and Interventional Medicine of FIU Kendall, LLC, as the assignee of ▮▮▮, Case No. ▮▮▮.
    MS. GUERRERO: Thank you.

## Page 4

BY MS. GUERRERO:
Q  Doctor, are you appearing as the treating physician of ▮▮▮ related to the motor vehicle accident that occurred on January 10, 2014?
A  Yes.
Q  Are you appearing as the physician who recommended or referred ▮▮▮ for CT scans of his cervical and lumbar spine?
A  Yes.
Q  Okay. What is your position at Ceda Orthopedics & Interventional Medicine of South Miami?
AS am the treating physician here at this location on 8th Street, the FIU location.
Q  Can you tell me exactly where we are right now? Can you tell me the full address?
A  11890 -- I believe 11890 Southwest 8th Street, Miami, Florida, 33184, fourth floor. I think that's it. I could be wrong.
Q  Is this the location where you treated Mr. ▮▮▮?
A  Yes.
Q  Besides being the treating physician of this facility of South Miami, do you have any other --
A  Well, treating facility of what?
Q  Of Ceda South Miami?
    MR. LEE: This is Ceda FIU.



Page 37

1 is where I was looking at.
2    His thoracic spine improved.
3 Q How much?
4 A Schepelmann's Sign was negative. From a positive -- it
5 went from a positive to a negative.
6 Q Now, is it your testimony today that all the treatment
7 rendered to [ ] was reasonable, related and necessary, all
8 the treatment rendered for five months by Ceda of FIU?
9 A Yes, I do.
10 Q Is it your testimony that the CT scans of [ ]
11 cervical and lumbar spine were medically necessary?
12 A Yes.
13    MS. GUERRERO: Can we go off the record?
14    MR. LEE: Certainly.
15    (Whereupon, comments held off the record.)
16    MS. GUERRERO: We are back on record. Counsel and
17 I had a conversation, as to the amount at issue. In these
18 two cases the amount at issue, or the amount that Plaintiff
19 is claiming to be owed is 80 percent of 200 percent of
20 Medicare fee schedule, not 80 percent of the amount billed
21 based on the policy at issue, in these two cases.
22    MR. LEE: That is correct. The only issues with
23 respect to these two cases are relatedness and medical
24 necessity. Reasonableness is not at issue, correct?
25    MS. GUERRERO: Reasonableness of the charges.

Page 38

1    MR. LEE: Reasonableness of the charges is not at
2 issue because the policy is a 98-10(a) policy of insurance.
3    MS. GUERRERO: The RRN of the treatment is at issue
4 in this case. This is an IME case, correct?
5    MR. LEE: Yes, that is correct.
6    Do you have anything further?
7    MS. GUERRERO: And the only dates of service based
8 on the complaint, are the post IME dates of service.
9    MR. LEE: Correct.
10    MS. GUERRERO: Let me go through the medical
11 records real quick and see if I have any further questions.
12    Are you going to have questions.
13    MR. LEE: I have some, not a lot.
14    (Whereupon, a brief recess was taken from 11:32
15 a.m. until 11:35 a.m.)
16 BY MS. GUERRERO:
17 Q Doctor, according to the medical records that I'm
18 reviewing here, Dr. Crespo Smith saw [ ] on 01/23/14.
19    Who is she?
20 A She is who we refer oar patients to, to be evaluated by
21 a medical physician, I am a chiropractic physician. They need
22 to be evaluated by both of us for them to get care here.
23 Q Is that a requirement?
24 A Yes, it is actually.
25 Q So, no matter what the injuries or diagnosis --

Page 39

1 A No.
2 Q -- you guys always send it to her, patients are sent to
3 her to be seen by her?
4 A Yes.
5 Q It's not because [ ] was special, or there was
6 anything in particular with him --
7 A No.
8 Q -- that she saw [ ] for?
9 A (Witness shakes head negatively.) We recommend
10 patients to Dr. Crespo for evaluations.
11 Q In every single case?
12 A Yes.
13 Q Okay. After you reviewed the CT scan on March 3rd, did
14 you send [ ] back to her for further evaluation now that you
15 had the results?
16 A At that point, they went to the ortho.
17 Q And going back to the ortho, did you find the medical
18 records from the orthopedic doctor -- and so, the answer is no
19 as to Dr. Crespo; you did not send [ ] back to her, is that
20 correct?
21 A Yes, I did not do that. But I'm looking for -- it
22 looks similar to what you have there, the Crespo one. There's
23 nothing on there that says ortho, that one that says Crespo?
24 Q (Counsel hands document to witness.)
25 A No. Go ahead, I'll look at it in a second.

Page 40

1 Q Who would you have referred him to?
2 A Either Lorello or Moya -- I mean Lorello.
3 Q What is the doctor again?
4 A Dr. Lorello.
5 Q Lorello?
6 A Or Dr. Moya.
7 Q Do they work for Ceda?
8 A No. They work with, but I don't think they work for,
9 but I'm not aware of our hiring procedures.
10 Q Do you have any records, from either of those two
11 doctors, or any orthopedic doctor, for that matter?
12 A Well, I have a lot of my notes, so I could get ahold of
13 something they have, but maybe...
14 Q Do you know for a fact that [ ] consulted with an
15 orthopedic doctor?
16 A Did I visually see him there? No.
17 Q Do you remember seeing documents from an orthopedic
18 doctor? Because I haven't seen any in any of the medical
19 records. So maybe I missed it.
20 A I'm still looking for it. I know I saw something. For
21 some reason I just can't find it at this moment. I've been
22 looking and looking and looking. I know I saw something. Maybe
23 I'm mistaken. But, at this point in time, no, I don't have that
24 proof.
25 Q So, as we sit here today, you do not know for sure that