*Exhibit 37*

## Page 1

```
 1              IN THE CIRCUIT COURT OF THE
                   11TH JUDICIAL CIRCUIT
 2            IN AND FOR MIAMI-DADE COUNTY, FLORIDA
 3            CASE NO.:
 4    CEDA HEALTH OF HIALEAH, LLC.,
         a/a/o                    ,
 5
            Plaintiff,
 6
      v.
 7
      STATE FARM MUTUAL AUTOMOBILE
 8    INSURANCE COMPANY,
 9          Defendant.
10    _____/
11
12          VIDEOTAPED DEPOSITION OF MARK CERECEDA
13
14          TAKEN ON BEHALF OF THE DEFENDANT
15
16               FEBRUARY 22, 2017
17               2:18 PM TO 5:10 PM
18
19       PHYSICIANS CENTRALIZED BUSINESS OFFICE
20          815 N.W. 57TH AVENUE, SUITE 405
21              MIAMI, FLORIDA 33126
22
23    REPORTED BY:
24    ASHLEY McCORMICK, COURT REPORTER
25    NOTARY PUBLIC, STATE OF FLORIDA
```

## Page 2

```
                  APPEARANCES OF COUNSEL
 2   ON BEHALF OF THE PLAINTIFF:
 3      CARLOS DEL AMO, ESQUIRE
        CARLOS DEL AMO, P.A.
 4      3211 PONCE DE LEON BOULEVARD, SUITE 200
        CORAL GABLES, FLORIDA 33134
 5      305-443-7006
        CDELAMO@DELAMOLAW.COM
 6
 7   ON BEHALF OF THE DEFENDANT:
 8      ANTHONY G. ATALA, ESQUIRE
        KUBICKI DRAPER
 9      25 WEST FALGER STREET, PENTHOUSE
        MIAMI, FLORIDA 33130
10      305-982-6616
        AGA@KUBICKIDRAPER.COM
11
     ON BEHALF OF MR. CERECEDA:
12
        MARIO DELGADO, ESQUIRE
13      MARIO R. DELGADO, P.A.
        1825 PONCE DE LEON BOULEVARD
14      CORAL GABLES, FLORIDA 33134
        305-428-3090
15      MARIO@MARIODELGADOLAW.COM
16      PETER R. GOLDMAN, ESQUIRE
        BROAD & CASSEL, L.L.P.
17      100 S.E. 3RD AVENUE SUITE 2700
        FORT LAUDERDALE, FLORIDA 33394
18      954-764-7060
        PGOLDMAN@BROADANDCASSEL.COM
19
20
21
22
23
24
25
```

## Page 3

```
 1                INDEX OF EXAMINATION
 2   WITNESS:  Mark Cereceda
                                           PAGE
 3   DIRECT EXAMINATION
         By Anthony G. Atala, Esquire        6
```

## Page 4

```
 1                 INDEX OF EXHIBITS
 2   EXHIBIT        DESCRIPTION             PAGE
 3   Defendant's:
 4    1     Subpoena Duces Tecum              45
 5    2     Return of Service                 49
 6    3     Articles of Amendment             65
 7    4     Deposition Transcript             97
 8    5     National Health Quest Agreement  106
 9    6     Documents from Florida Department of  148
            State Division of Corporations
```

## Page 53

```
 1       MR. DELGADO:  Object to form.
 2    A   It's a billing office.
 3    Q   (By Mr. Atala) Okay.  What is your duties at
 4  Physicians Central Billing Office?
 5    A   I have no duties.
 6    Q   Okay.  You -- but you own it?
 7    A   Correct.
 8    Q   Now, in this case the Plaintiff has indicated
 9  that Franz Schiebel is the corporate representative of
10  Ceda Health of Hialeah.  Does Franz Schiebel work for
11  Ceda Health of Hialeah?
12    A   I'm not sure.
13    Q   Okay.  Do you employ Franz Schiebel?
14       MR. GOLDMAN:  Form.
15       MR. DELGADO:  Object to the form.
16       MR. DEL AMO:  Form.
17    A   He works for one of my companies, but I'm not
18  sure which one.
19    Q   (By Mr. Atala) Okay.  Do you know if he works
20  for Ceda Health of Hialeah?
21    A   I'm not sure.
22    Q   In 2013, were you the owner of Ceda Health of
23  Hialeah?
24    A   Yes.
25    Q   Have your duties changed since 2013 to the
```

## Page 54

```
 1  present with regard to Ceda Health of Hialeah?
 2       MR. DELGADO:  Object to the form.
 3    A   As an owner?
 4    Q   (By Mr. Atala) In whatever your day-to-day
 5  operations are with the clinic.
 6       MR. DEL AMO:  Form.
 7    A   Just the owner.  Just the owner.
 8    Q   (By Mr. Atala) Did the clinic have a clinic
 9  director or office manager?
10    A   Probably and probably not so no clinic
11  director, it's not necessary.
12    Q   Okay.  Do they have a person who manages the
13  individual facilities?
14       MR. DELGADO:  Object to the form.
15    A   I don't know.
16    Q   (By Mr. Atala) Okay.  Is there an office
17  manager for the Ceda Health of Hialeah?
18    A   I'm not sure.  2013?  No idea.
19    Q   Is there present -- is there presently one?
20    A   There might be.
21    Q   Okay.  Can you explain to me the role that
22  Physicians Central Billing Office played in the
23  patient's claim?
24       MR. GOLDMAN:  I think you mean this patient's
25     claim, right?
```

## Page 55

```
 1    Q   (By Mr. Atala) In this patient's claim.
 2    A   I haven't looked at that patient's claim.
 3    Q   Why haven't you looked at it?
 4    A   Because I'm owner --
 5       MR. DELGADO:  Object to form.
 6    A   -- I don't look at claims.
 7    Q   (By Mr. Atala) I'm sorry, I didn't hear the
 8  answer.
 9       THE COURT REPORTER:  I'm the owner, I don't
10     look at claims.
11    Q   (By Mr. Atala) Okay.  Have you ever entered
12  into an agreement with ChiroTouch?
13       MR. DELGADO:  Object to the form.
14       MR. DEL AMO:  Form.
15    A   Have I ever?  No.
16    Q   (By Mr. Atala) Have -- you've never --
17    A   Not that I -- not that I think, no, I don't
18  think so.
19    Q   Have you ever used ChiroTouch software?
20    A   I don't use it and I haven't used it, but it's
21  the system that's being used in the Hialeah Center.
22    Q   Okay.  So, you're aware that the system that
23  is used for medical records and billing is ChiroTouch.
24  Is that -- is that accurate?
25       MR. DELGADO:  Object to the form.
```

## Page 56

```
 1    A   That's software system, um-hum.
 2    Q   (By Mr. Atala) Is that a yes?
 3    A   Yes.
 4    Q   Okay.  Do you recall when ChiroTouch was
 5  implemented at the Hialeah location?
 6    A   I do not.
 7    Q   Do you remember -- do you know who brought
 8  ChiroTouch or who was the person who reached out to
 9  ChiroTouch to bring them into the Hialeah Center?
10    A   I do not.
11    Q   Were you involved at all in selecting
12  ChiroTouch as a software?
13    A   Yes.
14    Q   What was your involvement?
15    A   I heard about it, I'm not sure where and it
16  might have been at a seminar and that was the gist of
17  it.
18    Q   Okay.  Do you remember when that seminar
19  occurred?
20    A   No.
21    Q   Do you remember approximately what year it
22  was?
23    A   Sorry.
24    Q   Do you know how many years you've had
25  ChiroTouch?
```

```
                                                Page 57                                                    Page 59
                        Page 57                                                    Page 59
 1    A    Many.                                                 1    A    No.
 2    Q    More than 10?                                         2    Q    Okay.  Have you been involved in setting the
 3    A    I'm not -- I don't think so.                          3  prices for medical treatment at Ceda Health of Hialeah?
 4    Q    Less than -- more than five?                          4    A    No.
 5    A    Maybe.                                                5    Q    In its entire -- since it's been established
 6    Q    And when you heard about the ChiroTouch               6  as a company, you've never set any of the charges?
 7  software, did you bring it -- did you discuss it with        7    A    That's correct.
 8  anybody at your business?                                    8    Q    Has anybody ever asked you about the charges?
 9    A    It was definitely an improvement to what we           9    A    I don't recall.
10  have, which was just paper.  So, I think anything would    10    Q    Has anybody -- have you ever discussed with
11  have sufficed so we're just happy that it was a new --     11  anybody the charges that are charged for particular
12    Q    Do you know then the model or version of the        12  services to patients?
13  ChiroTouch System?                                         13    A    I don't recall.
14    A    I do not.                                           14    Q    Who --
15    Q    Now, ChiroTouch is the system that was in           15    A    You're asking an ever question which, you
16  place for the medical billing and records for       ?     16  know, forever I just don't recall, I can't recall if I
17    A    Okay.                                               17  have or not.
18    Q    I'm asking.                                         18    Q    Okay.  Do you know how old Ceda Health of
19    A    I don't know.                                       19  Hialeah is how --
20    Q    Okay.  In 2013, was ChiroTouch being used as        20    A    Exactly, no.
21  the software?                                               21    Q    Okay.  Has it been more than five years?
22    A    So, that was three and a half, I think so.          22    A    I'm not sure.  I'm not sure.  I have to look
23    Q    Okay.  Do you have access to the ChiroTouch         23  that up.
24  software for the Hialeah Clinic?                            24    Q    Sir, I just handed to your attorney an
25    A    If I do I don't know what the access is             25  amendment indicating that the company, Florida Wellness

                                                Page 58                                                    Page 60
                        Page 58                                                    Page 60
 1  because I don't access it.                                   1  of Hialeah was changed to Ceda Health of Hialeah, LLC.
 2    Q    Okay.                                                 2    A    Okay.
 3    A    But I'm sure I might have access.                     3    Q    Ceda Health of Hialeah, LLC is the Plaintiff
 4    Q    To your knowledge does the ChiroTouch software       4  in this case.
 5  require a login or a password?                               5    A    Okay.
 6    A    I think so, pretty sure, it's pretty secure.          6    Q    This document is dated September 13th, 2011.
 7    Q    Okay, all right.  So, before a person opens           7    A    Okay.
 8  say a patient's file they have to input their own coding     8    Q    Sir, in the last six -- five years since this
 9  of some sort?                                                 9  -- since this company was in existence, did you ever
10    A    Pretty sure.                                         10  discuss any of the charges that were billed?
11    Q    Okay.  And you have a entry code for the            11         MR. DELGADO:  Object to form.
12  patient?                                                    12    A    I don't recall.
13    A    I don't know.  I might, might not.                   13    Q    (By Mr. Atala) Okay.  Who was Luana Alfonzo --
14    Q    Okay.                                                14  Alonso (phonetic), excuse me?
15    A    You mean in general?                                 15    A    She doesn't work with us any longer.
16    Q    When was the -- when was the last time you          16    Q    Okay.  What was her role?
17  accessed ChiroTouch?                                        17    A    She used to -- she used to manage the billing.
18    A    Well, I don't remember ever accessing it,           18    Q    For Ceda Health of Hialeah?
19  yeah.                                                       19    A    Probably.
20    Q    Okay.  Is there a person that you -- that           20    Q    Okay.  Can you tell me whose signature this is
21  served as a contact for ChiroTouch?                         21  on the bottom of this document?
22    A    I'm sure there is.                                   22    A    It looks like it could be my signature.
23    Q    Do you know who that is?                             23    Q    It looks like it could be your signature?
24    A    No.                                                  24    A    Correct.
25    Q    Were you trained on this ChiroTouch system?         25    Q    Or is that your signature?
```

Page 65

**Page 65**

1  Q  (By Mr. Atala) Did you have anything to do
2  with the amounts --
3  A  With the -- the amounts accepted, I don't
4  understand.
5     MR. DELGADO: Hold on.
6     MR. DELGADO: Let him --
7     THE WITNESS: Sorry, yeah.
8     MR. DELGADO: Let him state his question.
9     THE WITNESS: Yeah, sorry about that.
10 Q  (By Mr. Atala) Did you have anything to do
11 with the amounts that are collected by the facility?
12 A  No.
13    MR. ATALA: Okay. We'll mark that as 3.
14    (Thereupon, Defendant's Exhibit 3 was entered
15    into the record.)
16 Q  (By Mr. Atala) Have you ever set -- have you
17 ever set charges for medical services?
18 A  I don't recall.
19 Q  When you worked at Mark Cereceda, DCPA, who
20 set the charges for that clinic?
21 A  I don't know. I'm not sure.
22 Q  Did you have anything to do with it?
23 A  Twenty something years ago, I doubt it.
24 Q  Okay. So, it was your company and you didn't
25 have anything to do with setting of the charges?

Page 66

**Page 66**

1  A  That's correct.
2  Q  Okay. And with regard to Ceda Health of
3  Hialeah, it's your company you have nothing to do with
4  setting of the charges?
5  A  I believe so.
6  Q  Okay. And you don't enter into any agreements
7  with any third parties on behalf -- on behalf of the
8  clinics?
9  A  I don't enter into agreements on behalf of the
10 clinics.
11 Q  Okay. This deposition was noticed at your
12 place of business, are you -- are you aware of that?
13 A  Okay.
14 Q  Are you aware?
15 A  I'm here.
16 Q  No, my question is, were you aware that it was
17 supposed to be at your place of business?
18 A  I just go wherever my attorney tells me to
19 show up.
20 Q  Okay. Where are we located?
21 A  We are located at Mario Delgado's law office.
22 Q  And is this your place of business?
23 A  Also.
24 Q  Okay. What business --
25 A  PCBO.

Page 67

**Page 67**

1  Q  Okay. PCBO?
2  A  Correct.
3  Q  Is that Physicians Central Billing Office?
4  A  Correct. Business.
5  Q  Business office?
6  A  Um-hum.
7  Q  Yes?
8  A  Yes.
9  Q  Okay. So, this office that we're at is PCBO
10 and Law Office of Mario Delgado. Is that correct?
11 A  We shared space. How we share it I'm not
12 sure.
13    (Thereupon, a short discussion was held off
14    record.)
15    (Deposition resumed.)
16 Q  (By Mr. Atala) So, this office is shared with
17 Mario Delgado and PCBO?
18    MR. DELGADO: Do you want the actual
19 physical --
20    MR. ATALA: No, no, no, I'm just asking
21 because I didn't get -- I didn't know if he
22 answered.
23 A  Well, it's in the same place. How's that?
24 Q  (By Mr. Atala) Same suite, same place, same --
25    MR. DELGADO: Same building.

Page 68

**Page 68**

1  A  Yeah. Same building.
2  Q  (By Mr. Atala) Okay.
3  A  There you go.
4  Q  But it's in the same office --
5  A  I'm not sure how the legal structure is set up
6  or anything like that it's just beyond my pay grade.
7  Q  And what -- what is the address of where your
8  place of business is?
9  A  Here?
10 Q  Yes.
11 A  It's 815 Northwest 57th Avenue, Suite 405.
12 Q  Miami?
13 A  Yeah, sorry, 33126.
14 Q  And well, I don't think we're in 405.
15 A  This is 201.
16 Q  Okay. And is this your -- is this your place
17 of business or is 405 your place of business?
18 A  405 is the place of business, but we do some
19 business here also.
20 Q  Okay. Do you maintain a desk for your work?
21 A  No.
22 Q  Okay. Have you taken any classes or courses
23 or been trained on medical billing?
24    MR. DEL AMO: Form.
25 A  Have I taken any classes? I'm trying to

## Page 69

1  understand, classes.
2      MR. DELGADO: And this is an ever question,
3  right?
4      MR. ATALA: This is background, yeah.
5   A  Well, I've taken CE credits so we have to do
6  that every year.
7   Q  (By Mr. Atala) That's continuing education?
8   A  And I'm sure they've gone over -- they may
9  have gone over some type of billing, but I'm not an
10 expert at it and it's very limited.
11  Q  Okay.
12  A  So, I count on whatever my staff does.
13  Q  And your CE credits, are those for your
14 chiropractic license?
15  A  That is correct.
16  Q  And you said that you count what your staff
17 --
18  A  That's correct.
19  Q  -- tells you?
20  A  Well, not tell me, but we count on what they
21 do.
22  Q  Okay.
23  A  That is correct.
24  Q  And what kind of things is your staff charged
25 to do?

## Page 70

1   A  Charged? To run the business properly.
2   Q  Okay. Do you have -- and you don't have any
3  oversight of the business?
4   A  Oversight in which way?
5   Q  Do you -- what do you oversee with regard to
6  Ceda Health of Hialeah?
7   A  Not much, I have staff for that.
8   Q  Okay.
9   A  Yeah.
10  Q  So, then aside from picking up a check is
11 there anything else that you do?
12     MR. GOLDMAN: Form.
13     MR. DELGADO: Yeah, right. And --
14     MR. DEL AMO: Form too.
15     MR. DELGADO: And I'm going to move for a
16 Protective Order here.
17  Q  (By Mr. Atala) Okay. Well, do you have any
18 responsibilities with the -- for Ceda Health of Hialeah?
19  A  Any?
20  Q  What are your responsibilities?
21  A  Whatever is required by law.
22  Q  What is required by law?
23  A  I count on my attorney to fill me in and
24 actually take care of most of the stuff.
25  Q  So, what do you -- what do you do day-to-day

## Page 71

1  with regard to Ceda Health of Hialeah?
2   A  I own Ceda Health of Hialeah.
3   Q  Okay. And with Physicians Central Billing
4  Office?
5   A  I own Physicians Central Billing Office.
6   Q  And do you have -- do you have any oversight
7  of any of the employees there?
8   A  Oversight in what form, in what way? What do
9  you really mean by oversight?
10  Q  As an owner.
11  A  Oversight like looking to see what they're
12 doing? If I wanted to could I have oversight? Is that
13 what you're asking?
14  Q  No, I'm asking you --
15  A  Do I have -- do I do an oversight on a
16 day-to-day on each of my employees? Is that what you're
17 asking because I'm not sure?
18  Q  I'm asking you what you do and when you're at
19 the facility?
20  A  I just -- I just own the facilities.
21  Q  Okay.
22  A  And I have people that run the facilities for
23 me.
24  Q  Okay. And does anybody report up to you?
25  A  In what manner?

## Page 72

1   Q  For any reason whatsoever with regard to that
2  of Ceda Health of Hialeah or PCBO?
3   A  Well, there's doctors, there's physicians that
4  are in each of the centers and they report to
5  themselves, they are licensed so. Is that what you're
6  asking?
7   Q  Do you maintain any type of professional
8  training for them?
9   A  Maintain, no.
10     MR. DELGADO: Object to the form.
11  Q  (By Mr. Atala) Do you require them -- do you
12 require them to obtain any type of training?
13  A  Require them to keep their licenses active,
14 which does require training.
15  Q  Okay. So, that's the requirement that you
16 give -- that you make them do?
17  A  Well, they can't practice -- it's not what I
18 make them do, it's what the state allows them to do.
19  Q  Well, how do you know whether or not the
20 doctors are licensed?
21  A  Because the staff will check if there are -- I
22 will have the staff and attorneys check to see if they
23 are licensed, to verify.
24  Q  So, who -- so, your attorneys check for you a
25 licensee?

Page 105

```
 1   Q   So, you don't know -- I'm not going to get
 2   there.  So, is Bobby Nunez your nephew?
 3   A   Yes.
 4   Q   Okay.  And you didn't hire him.  He came off
 5   the street to get a job here or at the company that he
 6   was working for?
 7       MR. DEL AMO:  Form.
 8   A   Really?
 9   Q   (By Mr. Atala) You said you didn't hire him?
10   A   I didn't.  I don't do the hiring process.
11   Q   Did you recommend him for --
12   A   Yes, yes.  He is my nephew of course.
13   Q   Okay.  Oh, so, he is your nephew --
14       MR. DEL AMO:  It was asked and answered.
15       MR. ATALA:  Well, I don't know.  I mean he
16   said his sister is --
17   A   Well, you said he was my nephew.
18   Q   (By Mr. Atala) Well, you said he was -- if
19   your sister is your sister.
20   A   That's right.
21   Q   Okay.
22   A   If she is my sister then he is my nephew.
23       MR. GOLDMAN:  In just, it doesn't come out on
24   the record this is all --
25       MR. ATALA:  Yeah.  I got an objection out of
```

Page 106

```
 1   it, come on, come on, how could you tell me in just
 2   and then I got an objection.
 3   Q   (By Mr. Atala) Did Bobby Nunez have the
 4   authority to enter into these contracts on behalf of the
 5   clinics?
 6   A   I don't recall.
 7   Q   Was the intent of entering into this clinic to
 8   obtain a 20% reduction in the bills?
 9       MR. DELGADO:  Object to the form.
10       MR. DEL AMO:  Form.
11       THE COURT REPORTER:  Too many spoke at one
12   time --
13       MR. DEL AMO:  Form.
14       MR. DELGADO:  Object to the form.
15       THE COURT REPORTER:  And could you repeat your
16   response?
17   A   It's what it looks like according to that
18   paper.
19       MR. ATALA:  Okay.  We'll mark that as Defense
20   5, please.
21       (Thereupon, Defendant's Exhibit 5 was entered
22       into the record.)
23   Q   (By Mr. Atala) Does Hialeah have its own
24   profit and loss statement?
25   A   Probably.
```

Page 107

```
 1   Q   Do you review those?
 2   A   No.
 3   Q   Who review those?
 4   A   Accounting firm.
 5   Q   And when -- and Ceda of Hialeah has its own
 6   tax identification number?
 7   A   Yes.
 8   Q   Do you know who applied for that?
 9   A   No.
10   Q   And when the taxes are done for the -- for the
11   clinic who signs off on them?
12   A   I don't know.
13   Q   Do you review any of the tax forms for the
14   clinic?
15   A   No.
16   Q   When was the last time you reviewed a tax
17   document for the clinic?
18   A   I don't know.
19   Q   Do you know if they even file taxes on behalf
20   of the clinic?
21   A   I'm sure.
22   Q   Okay.
23   A   Yes.
24   Q   And where are those records kept?
25   A   Accounting firm.
```

Page 108

```
 1   Q   Does Ceda of Hialeah keep any copies of them?
 2   A   I don't know.
 3   Q   Does -- do the facilities have a medical
 4   director?
 5   A   They don't need one.
 6   Q   Why not?
 7   A   Because it's physician only.
 8   Q   Okay.  Did they ever have a medical director?
 9   A   Maybe an acting medical director.
10   Q   Who was -- did it have one in 2013?
11   A   I don't know.  I'm not sure.
12   Q   Okay.  Was Dr. Roy Canizares involved in
13   this --
14   A   Was he -- are you --
15       MR. DELGADO:  Hold on, object to the form.
16       MR. DEL AMO:  Form.
17       MR. ATALA:  I mean I didn't finish my
18   question.
19       MR. DELGADO:  Okay.  Well then, okay.  So,
20   hold on, let him finish his question. You can't
21   breathe in middle of a question.
22       MR. ATALA:  My goodness, gracious.
23   Q   (By Mr. Atala) Do you -- are you aware whether
24   Dr. Roy Canizares was involved in this -- in this case?
25   A   You mentioned him earlier and that was --
```

Page 117

```
 1    A    Correct.
 2    Q    Okay.  Is there a system in place in which the
 3  clinics review the bills and records for accuracy?
 4    A    I'm pretty sure, yes.
 5    Q    And whose responsibility is that at the Ceda
 6  of Hialeah?
 7    A    I'm not sure specifically who, but it's a
 8  standard thing that my understanding is that it is
 9  performed.
10    Q    Do you know how much is being sought from
11  State Farm in this case?
12    A    No.
13    Q    Do you know who would know?
14    A    I'm sure we can find out, but no, I don't
15  know.
16    Q    Okay.
17         THE WITNESS:  Do you want to tell me?
18         MR. DEL AMO:  I would know.
19         MR. DELGADO:  I was going to say that.
20    Q    (By Mr. Atala) As we sit here you don't know?
21    A    I haven't looked at the file.
22    Q    Okay.  Did you make any attempts to look at
23  the file beforehand?
24    A    Well, this -- I'm not the treating physician
25  so.
```

Page 118

```
 1    Q    Okay.
 2    A    Yeah.
 3    Q    Did you have any say in the filing of the
 4  lawsuit?
 5    A    Say?
 6         MR. DELGADO:  Object to the form.
 7         MR. DEL AMO:  Form.
 8    Q    (By Mr. Atala) Did you have any decision
 9  making when it came to filing this lawsuit?
10    A    The business runs on its own.  I'm just the
11  owner, but it runs on its own.  We have a system set up,
12  people do, you know, it just -- no, I'm not necessarily,
13  I didn't pick -- I didn't pick the curtains either.  You
14  know it's kind of like, well, you know, you have
15  employees that do that.
16    Q    Do you know in what year Ceda Health of
17  Hialeah chose the amounts that were billed in this case?
18    A    No.
19    Q    Do you know whether or not the charges in this
20  case are reasonable?
21    A    It should be.
22    Q    How do you know?
23    A    Because we should have reasonable charges.
24    Q    And how do -- how do you know that the charges
25  here are reasonable versus unreasonable?
```

Page 119

```
 1    A    I would say they should be -- they should be
 2  reasonable and that's something for you guys to
 3  determine in Court.
 4    Q    Okay.  So, it doesn't have anything to do with
 5  determination of the clinic, it has to be done with the
 6  Courts?
 7    A    Well, I don't know.  I mean that's what you
 8  guys are here for, right?  That's one of the things?
 9    Q    No, I wouldn't say that.  What I'm asking you
10  -- my question to you is, how do you know the charges
11  are reasonable?
12    A    I think they're --
13         MR. DELGADO:  Object to the form.
14         MR. GOLDMAN:  Object to form.  This is highly
15  argumentative.
16         THE WITNESS:  Yeah.
17         MR. ATALA:  How the charges are reasonable in
18  this case?
19         MR. GOLDMAN:  Well, you've already laid a
20  predicate that he has -- he has not looked at the
21  charges --
22         MR. ATALA:  Okay.
23         MR. GOLDMAN:  -- and just totally it's
24  speculation upon speculation.
25         MR. ATALA:  All right.  Let's show him the
```

Page 120

```
 1  Explanation of Benefits in this case.
 2         MR. DELGADO:  Okay.
 3         MR. ATALA:  All right.
 4         MR. DEL AMO:  He's already testified that he
 5  doesn't do any of that.
 6         MR. ATALA:  But he's testified --
 7         MR. DEL AMO:  You want to analyze now
 8  documents that he hasn't seen before?
 9         MR. ATALA:  He's testified that the charges
10  here are reasonable, right?
11         MR. GOLDMAN:  He is testifying there --
12         MR. DELGADO:  Yeah, he is testifying as the
13  owner --
14         THE WITNESS:  That they should be.
15         MR. DELGADO:  -- that they should be.
16         MR. DEL AMO:  That they should be reasonable,
17  but he doesn't have any knowledge of whether they
18  are reasonable or not because he doesn't --
19         MR. DELGADO:  Exactly.
20         MR. ATALA:  Okay.  So then -- so, then that's
21  my question he hasn't said that.
22         MR. GOLDMAN:  And he is -- he is --
23         MR. ATALA:  But that exact statement that you
24  just made, Carlos, is my -- is the question.
25         MR. DEL AMO:  If he says he doesn't look at
```