*Exhibit 38*

## Page 1

```
          IN THE COUNTY COURT IN AND FOR
              MIAMI-DADE COUNTY, FLORIDA

              CASE NO.: ▮▮▮▮▮▮

CEDA HEALTH OF HIALEAH, LLC,
  A/A/0 ▮▮▮▮▮▮,

     Plaintiff,


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.
_____/


         VIDEOTAPED DEPOSITION OF MARK CERECEDA

         TAKEN ON BEHALF OF THE DEFENDANT
         THURSDAY, NOVEMBER 16, 2017
         10:22 A.M. TO 12:04 P.M.


              815 N.W. 57TH AVENUE
                 SUITE 201
              MIAMI, FLORIDA 33126


REPORTED BY:
NAILA GONZALEZ, FPR, COURT REPORTER
NOTARY PUBLIC, STATE OF FLORIDA
```

## Page 2

```
              APPEARANCES OF COUNSEL
ON BEHALF OF CEDA HEALTH OF HIALEAH, LLC:
    ANA MARIA PANDO, ESQUIRE
    GUILLERMO J. DE LA PUENTE, ESQUIRE
    ALVAREZ, FELTMAN & DA SILVA, P.L.
    75 VALENCIA AVENUE, 8TH FLOOR
    CORAL GABLES, FLORIDA 33134
    (305) 444-5885
    SERVICE@ACFDLAW.COM
ON BEHALF OF MARK CERECEDA:
    MARIO RENE DELGADO, ESQUIRE
    MARIO R. DELGADO, P.A.
    815 NORTHWEST 57TH AVENUE, SUITE 405
    MIAMI, FLORIDA 33126
    (786) 360-4894
    MARIODELGADOPA@YAHOO.COM

ON BEHALF OF THE DEFENDANT STATE FARM:

    ANTHONY G. ATALA, ESQUIRE
    KUBICKI DRAPER, P.A.
    25 WEST FLAGLER STREET, PENTHOUSE
    MIAMI, FLORIDA 33130
    (305) 982-6629
    JD-KD@KUBICKIDRAPER.COM
ALSO PRESENT:
    ALEXANDRA MAGID
```

## Page 3

```
                INDEX OF EXAMINATION
WITNESS: Mark Cereceda
                                                PAGE
DIRECT EXAMINATION
    By Anthony G. Atala, Esquire                 7
```

## Page 4

```
                 INDEX OF EXHIBITS
DEFENDANT'S
EXHIBIT       DESCRIPTION                       PAGE

  1       SUBPOENA DUCES TECUM                   12

  2       PIP LOG                                63

  3       PRIOR DEPOSITION TRANSCRIPT
          OF MARK CERECEDA                       64

  4       PRIOR DEPOSITION TRANSCRIPT
          IN THE CASE OF ▮▮▮▮▮▮
          ▮▮▮▮▮▮                                 64

  5       NHQ AGREEMENT                          78

  6       CORPORATE RECORDS                      88
```

Page 21

1  A  I don't recall.
2  Q  Has the facility Ceda Health of South Miami
3  changed its name since 2012?
4  A  I don't recall.
5  Q  What's your official title for Ceda Health of
6  South Miami?
7     MR. DELGADO: Object to the form.
8  A  Owner.
9  Q  (By Mr. Atala) Is there any other titles such
10 as president, or director, or chief financial officer,
11 anything like that?
12     MR. DE LA PUENTE: Object to form.
13 A  No.
14 Q  (By Mr. Atala) How about with respect to Ceda
15 of South Miami?
16 A  Owner.
17 Q  Again, same question, is there any -- do you
18 have any titles such as --
19     MR. DELGADO: Object to the form.
20     MR. ATALA: Okay, Counsel --
21     THE COURT REPORTER: Only one person speaking
22 at a time, please.
23     MR. ATALA: And secondly, I'm having to ask
24 him same question as to both companies because we
25 don't want to group them together. So if you don't

Page 22

1  -- I don't understand what the objection to form
2  is. Is it asked and answered? Because it's two
3  different questions and you don't let me finish
4  getting them out.
5     MR. DELGADO: Okay, then get it out then I
6  will tell you what it is.
7     MR. ATALA: All right.
8  Q  (By Mr. Atala) I believe I asked about FIU,
9  Kendall the first one, right?
10    MR. DELGADO: What was the second one?
11    (Thereupon, the recording was played back into
12    the record.)
13 Q  (By Mr. Atala) I'm sorry, sir, since I
14 couldn't get that, do you have any titles other than
15 owner at Ceda Health of FIU or Ceda Health of South
16 Miami?
17    MR. DELGADO: Object to the form.
18 A  Do I have any titles?
19 Q  (By Mr. Atala) Correct.
20 A  Do you need my professional title?
21 Q  Correct.
22 A  DC Doctor of Chiropractic. Because I'm
23 licensed as a Doctor of Chiropractic.
24 Q  Okay, do you have any titles such as president
25 or chief officer or anything like that --

Page 23

1  A  No.
2  Q  -- at either facility?
3  A  No.
4     MR. DELGADO: Object to the form.
5  Q  (By Mr. Atala) Just for the sake of, and I
6  know that -- I know your character, sir, and I know how
7  your attorneys are, I would just request that you let me
8  finish my question because since I'm asking about two
9  different facilities, there are times your attorney may
10 want to make one objection versus another and since I
11 haven't completed my question, the objection may be
12 premature or might be missed altogether if you're
13 already answering. So, I would just simply ask let me
14 just complete my questions for ease of our Court
15 Reporter who is probably having a hard time with all the
16 people in the room, okay?
17 A  Noted.
18 Q  Has your position as owner changed at all at
19 either one of these two facilities since 2012?
20    MR. DELGADO: Object to the form.
21 A  I have been the owner the entire time, sole
22 owner.
23 Q  (By Mr. Atala) Have you held any other titles
24 at the facilities since 2012?
25 A  Never.

Page 24

1  Q  You said that you are a Doctor of
2  Chiropractic, is that correct?
3  A  That's correct.
4  Q  And you have a license in good standing with
5  the Department of Health --
6  A  That's correct.
7  Q  -- in that profession?
8  A  Yes.
9  Q  Let me just finish.
10 A  Thought you finished.
11 Q  Okay. Did you treat this patient?
12 A  I did not.
13 Q  How do you know you didn't treat him?
14 A  Because I haven't treated patients.
15 Q  When was the last time you treated a patient?
16 A  It's been a long time. I don't recall.
17 Q  Was it more than five years ago?
18 A  Yes, it was.
19 Q  Was it more than ten years ago?
20 A  Maybe.
21 Q  Did you -- what were your duties and
22 responsibilities at Ceda of FIU, Kendall in 2012?
23 A  My duties are as an owner.
24 *Q  And what do those duties entail?
25 A  Those are company secrets. So I will not

Page 25

1  divulge them.
2  Q   Okay. We will certify.
3      MR. DELGADO: Please do.
4  Q   (By Mr. Atala) Are you responsible for the
5  licensing of the facility?
6  A   Ultimately.
7  *Q  Are you responsible for the hiring or firing
8  of employees?
9      MR. DELGADO: Object to the form.
10 A   I'm not answering that. It's company secrets.
11 *Q  Okay, we will certify. Are you responsible
12 for setting of the charges?
13     MR. DE LA PUNTE: Object to the form.
14     MR. DELGADO: Same objection.
15 A   Company secrets.
16 *Q  (By Mr. Atala) We will certify. Are you
17 responsible for entering into agreements or contracts
18 with any supplier and vendors?
19     MR. DE LA PUNTE: Object to the form.
20 A   Same answer.
21     MR. DELGADO: Object to the form.
22 Q   (By Mr. Atala) Certify. Does the facility
23 have any medical directors?
24     MR. DELGADO: Object to the form.
25 A   There is none needed. The facility is wholly

Page 26

1  owned by a chiropractic physician.
2  Q   And that is you, that's correct?
3  A   Correct.
4  Q   So you are the, essentially, the exemption to
5  requiring the licensing of --
6  A   Sounds like a technical question.
7      MR. DELGADO: Object to the form.
8      MS. PANDO: Calls for a legal conclusion.
9  Q   (By Mr. Atala) Are you familiar with the
10 requirements of ACA?
11     MR. DE LA PUENTE: Object to the form.
12     MR. DELGADO: Object to the form. What
13     requirements are you talking about?
14 Q   (By Mr. Atala) Are you familiar with the ACA
15 requirements for medical directors of wholly-owned
16 facilities by physicians?
17     MR. DELGADO: Object to the form. Same
18     objection.
19 Q   (By Mr. Atala) You can answer.
20 A   Yes.
21 Q   And is your responsibility for the facilities
22 that those -- that it is in compliance -- are you the
23 person responsible for maintaining compliance with the
24 requirements of either being wholly medically owned or
25 having a medical director?

Page 27

1      MR. DELGADO: Object to the form. Again,
2  you're seeking a legal conclusion from him.
3      MR. ATALA: But he said he knows what the
4  requirements are.
5      MR. DELGADO: There is difference between what
6  he knows and what --
7  A   You didn't ask me that. Okay, I did not say
8  that.
9      MR. DELGADO: Hold on, let me finish. There
10 is a difference between what he knows, what he
11 thinks he knows, and what you're asking him which
12 is you're seeking a legal conclusion from him.
13 A   You said if I was familiar was the question
14 and I just answered yes.
15 Q   (By Mr. Atala) Okay, so what is --
16 A   That's totally different than knowing.
17 *Q  (By Mr. Atala) What is your familiarity,
18 then, with the requirements?
19     MR. DE LA PUENTE: Object to form.
20     MR. DELGADO: Same objection.
21 A   My familiarity has to do with attorney-client
22 privilege, which I'm invoking right now.
23 Q   (By Mr. Atala) Okay, certify.
24     MS. PANDO: Are you starting -- I want to
25 place another objection on the record. When you

Page 28

1  start asking him, and I'm sorry, it has to be
2  speaking, I have no other way to do it, when you
3  start asking him you know, what exactly are you
4  doing to be compliant and who is in charge of
5  hiring and firing employees, first of all, that's
6  irrelevant to the issues at hand in this case. And
7  secondly, you're getting dangerously close to the
8  trade secret of privilege. So, if -- that's why
9  Mario is saying that he is not going to answer.
10     MR. ATALA: So, are you saying it's a trade
11 secret between your client? Because I know that
12 there is kind of a disconnect so I don't know if
13 the trade secrets is on behalf of your client or on
14 behalf of Mr. Cereceda?
15     MS. PANDO: It's on behalf of Mr. Cereceda but
16 it's also, we did a huge memo, it is also the
17 reason why we objected to Mr. Cereceda being here.
18 So, in a way it's an objection that we are putting
19 forth as representatives of a corporate entities
20 and Mr. Delgado is also instructing him not to
21 answer based on this same reason.
22     MR. ATALA: Okay, we will certify.
23     MS. PANDO: Yes, there is a big memo that
24 Judge Diaz has in front of her.
25     MR. ATALA: I think the memo was already ruled

```
                                                          Page 33
                             Page 33
 1    here and every single substance request that you've
 2    asked of him has asked for a legal conclusion from
 3    him. So, I'm going to move for protective order.
 4    And I don't know why that's even relevant to this
 5    case as to who has ownership of these records.
 6         MR. ATALA: Well, because he didn't bring
 7    them. So I want to know if he knows, if he knows.
 8    If he doesn't know, he doesn't know.
 9         MR. DELGADO: Then ask him if he knows, not
10    who has ownership.
11   *Q    (By Mr. Atala) Do you know who owns the
12    records for ▆▆▆▆▆▆▆?
13    A    I think that is a legal conclusion, I'm not
14    sure. I'd have to check with my attorneys.
15    Q    All right, we'll certify that anyway. In this
16    matter, sir, we have a deposition of Franz Schiebel, do
17    you know, who serves as the corporate representative, do
18    you know how Franz Schiebel obtained the medical records
19    for ▆▆▆▆▆▆▆?
20         MR. DELGADO: Objection.
21    Q    (By Mr. Atala) Do you know?
22    A    No.
23    Q    Does Ceda Health of FIU or South Miami have
24    any type of software for medical records keeping?
25         MR. DELGADO: Object to the form.
```

```
                                                          Page 34
                             Page 34
 1    A    Yes.
 2   *Q    (By Mr. Atala) What software is that?
 3    A    Trade secrets.
 4    Q    The software that you guys utilize --
 5    A    That's correct, it's a trade secret.
 6    Q    Okay, we'll certify. Do you still use -- was
 7    the software that is used in 2012 the same software that
 8    is used today?
 9    A    I'm not sure.
10         MR. DELGADO: Object to the form.
11    Q    (By Mr. Atala) Do you know who decided the
12    charges in this case?
13         MR. DE LA PUENTE: Object to form.
14    A    Who decided the charges?
15    Q    (By Mr. Atala) Yes. Who decided what to
16    charge State farm, for the services rendered to ▆▆▆▆
17    ▆▆?
18         MR. DELGADO: Object to the form.
19         MR. DE LA PUENTE: Object to form.
20    A    Who decides the charge?
21    Q    (By Mr. Atala) Yes.
22    A    I'm sure it's somebody in the billing.
23    Q    Where is that billing office?
24    A    I don't know where it was in 2012.
25    Q    Who is the manager of that billing office?
```

```
                                                          Page 35
                             Page 35
 1         MR. DELGADO: Today?
 2    Q    (By Mr. Atala) In 2012.
 3    A    I don't recall.
 4   *Q    Who is it today?
 5    A    No relevance. It's a trade secret. Thanks.
 6    Q    Okay, we'll certify it as nonresponsive. Is
 7    that billing office in any way Physicians Central
 8    Billing Office?
 9         MR. DE LA PUNTE: Object to the form.
10    A    I don't know. In 2012, I'm not sure.
11    Q    (By Mr. Atala) In this case we had a
12    deposition from Franz Schiebel. Are you familiar with
13    Mr. Schiebel?
14    A    Yes.
15    Q    And what was his role?
16         MR. DELGADO: Object to the form.
17    Q    (By Mr. Atala) What do you know about what Mr.
18    Schiebel's job responsibilities were?
19         MR. DELGADO: When?
20    Q    (By Mr. Atala) When he was employed. I don't
21    know what years he was employed.
22         MR. DELGADO: When was is it relevant -- what
23    is it that is relevant to this particular client?
24         MR. ATALA: I'm just asking --
25    Q    (By Mr. Atala) Okay, sir, did Franz Schiebel
```

```
                                                          Page 36
                             Page 36
 1    work for an entity that you owned?
 2    A    Yes.
 3    Q    Which entity was that?
 4    A    I'm not sure.
 5    Q    Okay, and when he testified in this case, do
 6    you know what his responsibilities were?
 7    A    No.
 8         MR. DELGADO: Object to the form.
 9    Q    (By Mr. Atala) Do you know if he is the person
10    who determined any of the charges for the facility?
11         MR. DELGADO: Object to the form.
12    A    I don't think so.
13    Q    (By Mr. Atala) Who is the person that
14    determined what to charge for Ceda of South Miami or
15    Ceda of FIU Kendall in 2012?
16    A    I don't recall.
17         MR. DE LA PUENTE: Object to form.
18         MR. DELGADO: Same objection.
19    Q    (By Mr. Atala) Have the charges changed at all
20    since 2012?
21         MR. DELGADO: Object to the form.
22         MR. DE LA PUENTE: Object to form.
23    A    They probably have.
24   *Q    (By Mr. Atala) Did you have any say in the
25    changing of the prices?
```

Page 77

```
 1    MR. DE LA PUENTE: Object to the form.
 2  A   This thing was in 2007, right?  That I can see
 3  here.  Yes, I have seen this going around before.  And
 4  my recollection of this, it was just never ratified,
 5  nothing ever happened with this.
 6  Q   (By Mr. Atala)  What do you mean it was never
 7  ratified?
 8  A   Yes, like it never occurred.
 9  Q   Meaning what?  I don't understand.  That is
10  agreement wasn't never entered into?
11  A   Yes, it never occurred, it wasn't ratified.
12  When you ratify something, there is some type of
13  exchange that completes the agreement.  I don't think
14  anything ever occurred.
15  Q   Well, it indicates here that it was signed by
16  Bobby Nunez, so --
17  A   Right.
18  Q   -- it was an effective contract?
19      MR. DE LA PUENTE: Object to the form.
20      MS. PANDO: Calls for legal conclusion.
21  A   Was it an effective contract?
22  Q   (By Mr. Atala)  Well, what I'm asking you, was
23  it a contract that was signed on behalf of Ceda
24  according to this?
25  A   Right, so let's see, Ceda -- this was Florida
```

Page 78

```
 1  Wellness & Rehab, right?  Different company.
 2  Q   Is that a different company than the Ceda
 3  clinics?
 4  A   It seems like it.
 5  Q   So, the Florida Wellness Clinics are not the
 6  Ceda clinics?
 7  A   That's correct.
 8  Q   But you're familiar with this agreement?
 9      MR. DELGADO: Every time you guys show it to
10  him.
11  A   That's right.
12  Q   (By Mr. Atala)  Did you ever collect on this
13  agreement?
14      MR. DELGADO: Asked and answered.
15  A   Never ratified.
16      MR. ATALA: We'll mark it as 6.
17      (Thereupon, Defendant's Exhibit 5 was entered
18      into the record.)
19  Q   (By Mr. Atala)  Sir, may I ask you some
20  background information.  I know it's going to be pretty
21  easy.  Sir, what's your educational background starting
22  with any college to your highest degree?  I'm doing this
23  to make it faster but if you want me to ask individually
24  I can.
25  A   No, that's fine.  So I have pre-chiropractic
```

Page 79

```
 1  education.  I'm not sure of the years, I'd have to look
 2  that up.  But I've had some prior testimonies.
 3  Q   From where?
 4  A   Miami-Dade, Kennesaw College, and Brenau
 5  University.
 6  Q   Let me just ask you, can you spell Brenau,
 7  please?
 8  A   B-R-E-N-A-U.
 9  Q   University?
10  A   Mh-hmm.
11      THE COURT REPORTER: Yes?
12  Q   (By Mr. Atala)  Is that a yes?
13  A   Yes, sorry.
14  Q   And you said Kennesaw State?
15  A   Kennesaw State College and Miami-Dade
16  Community College.
17  Q   All right, did you obtain any degrees at
18  Miami-Dade?
19  A   No, I did not.
20  Q   Any degrees at Brenau?
21  A   No, it wasn't required back then.
22  Q   And how about at Kennesaw State?
23  A   Did not.
24  Q   Was it like -- did you obtain a bachelor's
25  degree or was this --
```

Page 80

```
 1  A   I had enough for Bachelors and Biology.
 2  Q   Okay.  And then after -- did it go in that
 3  order, Miami-Dade, Brenau, and then Kennesaw?
 4  A   Kennesaw then Brenau.
 5  Q   Okay, and then you said you obtained your
 6  chiropractic DC?
 7  A   Life, yes.  At Life Chiropractic College in
 8  Maryland, Georgia.
 9  Q   Do you know when you obtained that?
10  A   '93 in December.
11  Q   And when you did become a chiropractor in the
12  State of Florida?
13  A   1994, 1995 around that time.
14  Q   Prior to owning these facilities that you
15  testified, where were you previously employed?
16  A   I did a preceptorship --
17  Q   Pre?  I'm sorry I couldn't --
18  A   I'm sorry, Preceptorship at Dr. Yoham's
19  office, he was my father-in-law.  William Yoham.
20  Q   Can you spell Yoham, please?
21  A   Y-O-H-A-M.
22  Q   Where was that?
23  A   South Miami.
24  Q   Do you know what years?
25  A   '94.
```