**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE FARM
FIRE AND CASUALTY COMPANY,

                                Case No. 19-cv-22487-RS

        Plaintiffs,

    v.

MARK CERECEDA, D.C., *et al.*,

        Defendants.

_____

**<u>JOINT MOTION FOR ADMINISTRATIVE ORDER TEMPORARILY CLOSING CASE</u>**

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "Plaintiffs" or "State Farm Mutual") and Defendants Mark Cereceda, D.C., Maria Cristina Crespo-Smith, M.D., Nestor Javech, M.D., Roberto Moya, M.D., Roy Canizares, D.C., Edgar Facuseh, D.C., Patrick Fenelus, D.C., Thomas Haban, D.C., Karim Habayeb, D.C., John Ross, D.C., Michael Schulman, D.C., Richard Yoham, D.C., Ceda Orthopedic Group, LLC, Ceda Orthopedics & Interventional Medicine of Cutler Bay, LLC, Ceda Orthopedics & Interventional Medicine of Downtown/Little Havana, L.L.C., Ceda Orthopedics & Interventional Medicine of F.I.U/Kendall, L.L.C., Ceda Orthopedics & Interventional Medicine of Hialeah, L.L.C., Ceda Orthopedics & Interventional Medicine of South Miami, L.L.C., Physicians Central Business Office, L.L.C., and Springs Crossing Imaging, L.L.C. (collectively "Defendants," and together with Plaintiffs, the "Parties"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 16 and the Court's inherent power, jointly move the Court for entry of an Administrative Order temporarily closing this action.

As grounds in support thereof, the Parties respectfully state as follows:

1.      On March 19, 2020, in a similar action pending in the Southern District of Florida before Judge Cecilia Altonaga in which Government Employees Insurance Company (Geico) is pursuing similar claims against certain of the Defendants to this action, Judge Altonaga administratively closed the case for reasons similar to those raised in the Parties' joint motion here. *See* Docket No. 93, Administrative Order from Case No. 19-22206-CIV-ALTONAGA/Goodman (the "Geico Action"), a copy of which is attached hereto as Exhibit 1.  Specifically, Judge Altonaga concluded that the uncertainties associated with the pandemic caused an inability to proceed with the orderly progress of the case and, thus, administratively closing the case was appropriate to conserve the Parties' and judicial resources.  *Id*.

2.      The Parties in this case move for the same relief now based upon the reasons detailed below.  Specifically, the deposition discovery required in this case (which will likely exceed 20 fact depositions, in addition to expert depositions) is impractical, if not impossible, to prepare for and conduct, even remotely, for several reasons.  First, it requires document-intensive depositions covering more than 900 patients' medical records that will be extraordinarily difficult to manage remotely.  Second, many of the depositions will be of health care providers and medical experts, who provide services to many high-risk individuals and some of whom are themselves at elevated risk for serious illness.  These providers understandably seek to minimize any additional personal contact necessitated by meeting with counsel or others involved in deposition discovery and preparation.  Indeed, even if the depositions were to occur remotely, they would still require, at a minimum, the presence of attorneys, videographers, and a court reporter, which, again, substantially increases risks for the health care providers and the required attendees and personnel at the deposition.  Third, the travel restrictions, "stay at home" orders, and reduced services make

it extraordinarily difficult to conduct in-person preparation sessions for and attendance at depositions, which is what the facts and issues in this action necessarily require.

3.      Plaintiffs commenced this action with the filing of the original Complaint on June 14, 2019.  *See* Docket No. 1.

4.      Discovery began promptly after the Court entered the Scheduling Order on September 24, 2019.  *See* Docket No. 70.

5.      The Scheduling Order requires that all fact and expert discovery be completed by July 24, 2020.  *See* Docket No. 70.

6.      To date, the Parties have been diligently working towards completing discovery, including issuing and responding to written discovery and producing a significant volume of documents, and were planning to complete all depositions within the next two to three months. Specifically, State Farm Mutual has propounded fifteen sets of requests for production across all Defendants, individual requests to admit to Defendant Mark Cereceda, and fifteen sets of interrogatories across all Defendants.  *See* Declaration of John W. Reale in Support of Joint Motion for Administrative Order Temporarily Closing Case ("Reale Declaration"), a copy of which is attached hereto as Exhibit 2, at ¶ 11.   For their part, Defendants propounded two sets of interrogatories consisting of 44 separate interrogatories and 160 requests for production.  *Id*.  To date, the Parties have collectively produced a significant volume of documents, and are continuing to produce documents on a rolling basis.  *Id*.  The Parties have worked well together to avoid motion practice and preserve the Court's resources.  *Id*.  To that end, the Parties expected to meet all deadlines and complete discovery within the original deadlines.

7.      Due to the uncertainties, health risks, and associated restrictions surrounding the COVID-19 pandemic, however, the Parties are already experiencing and anticipate that there will

continue to be substantial delays in proceeding with and completing discovery as originally expected.

8.      In this regard, on March 11, 2020, the World Health Organization characterized the COVID-19 virus outbreak as a pandemic.  Reale Declaration at ¶ 3.  Shortly thereafter, on March 13, 2020 President Trump declared a national emergency due to the virus.  *Id*.  Significantly, to reduce exposure and slow the spread of the virus, on March 16, 2020 the White House advised the public to avoid gathering in groups of more than 10 people, and to avoid discretionary travel, until there is stability and further clarity regarding the COVID-19 pandemic.  *Id*.

9.      Alongside these declarations, state and local officials throughout the country declared states of emergency and enacted orders cancelling public events and prohibiting social gathering.  These declarations and orders were designed to manage the risk of potential exposure to the virus, reduce the harm from the spread of COVID-19, and ensure the healthcare delivery system was capable of serving those in need.  *Id*. at ¶ 4.

10.     For example, Miami-Dade County and the City of Miami, where Defendants' counsel's office is located, have each issued emergency orders declaring a state of local emergency, closing all "non-essential" businesses, and ordering residents to "shelter" at home.  On March 19, 2020, Miami-Dade County issued an Emergency Order closing "all non-essential retail and commercial establishments."  Although this Emergency Order includes an exception for "legal or accounting services," that exception only applies to those services "when necessary to assist in compliance with legally mandated activities."  *See* Miami-Dade County Emergency Order 07-20.

11.     On March 24, 2020, Miami-Dade County issued an Emergency Order urging individuals to "remain home other than to engage in essential activities."  *See* Miami-Dade County Emergency Order 10-20.  Additionally, on March 24, 2020, the City of Miami issued an

Emergency Order directing all residents to "shelter in place" and further instructed that all "business and establishments not deemed 'essential retail and commercial establishments' as provided in Miami-Dade County Emergency Order 07-20, as amended by Miami-Dade County, are hereby deemed to be non-essential and, therefore, such businesses and establishments within the territorial limits of the City of Miami shall continue to remain CLOSED." *See* City of Miami, Order No. 20-04.  On April 1, 2020, Florida Governor Ron DeSantis announced he would sign an executive order requiring the state's residents to limit their movement outside of their homes for the next 30 days in an effort to stop the spread of the coronavirus.[1]

12.     Similarly, in Illinois, where several of Plaintiffs' attorneys are located, the Governor declared all counties in the state as a disaster area on March 9, 2020, and issued an Executive Order on March 21, 2020, directing that "all individuals currently living within the State of Illinois are ordered to stay at home or at their place of residence," with an exception for certain "Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations." *See* State of Illinois, COVID-19 Executive Order No. 8.  In addition, the Illinois Order prohibits "all travel, including but not limited to, travel by automobile [and] plane," except for "Essential Travel and Essential Activities."  Similarly, the Chief Judge for the Circuit Court of Cook County entered an Order on March 16, 2020, postponing "all civil matters not deemed an emergency by party agreement" to a future date.  *See* Cook County, General Administrative Order: 2020-01.  In addition, Palm Beach County, the location of the office for other counsel of record for Plaintiffs, issued emergency orders that closed all noncritical retail and commercial business locations, and issued a shelter-in-place order effective immediately in response to the coronavirus pandemic.  *See* Palm Beach County, Emergency Order Number 2020-002a.

---

[1] https://www.miamiherald.com/news/coronavirus/article241682646.html

13.     Among these efforts, public and private schools and childcare facilities throughout the country, including in Illinois and Florida, began closing and are likely to remain closed until at least until the end of April, and likely beyond.  *See* Reale Declaration at ¶ 5.  Many businesses also enacted policies aimed at containing the spread of the disease and keeping their employees safe.  On March 17, 2020, Katten Muchin Rosenman LLP ("Katten"), the law firm where several attorneys representing State Farm Mutual in this action work (including John W. Reale, Ross O. Silverman, Eric T. Gortner, John T. Lepore, and Michael J. Powers), announced it would move to a remote work environment in all offices, including Chicago, starting Tuesday, March 17 and for the foreseeable future.  *Id*.  Under its announcement, Katten required all attorneys, paralegals, and related staff, including counsel of record, to work remotely.  *Id*.  On March 18, 2020, Holland & Knight, the law firm where several other attorneys representing State Farm Mutual in this action work (including David I. Spector and Joseph F. Valdivia), closed its West Palm Beach and other offices requiring employees, including counsel of record, to work remotely.  *Id*.  State Farm Mutual, which is headquartered in Bloomington, Illinois, ceased in-office work at all of their facilities across the country, including those offices in Illinois and Florida, and asked their employees to work remotely.  *Id*.

14.     Even with these efforts, the growth rate of COVID-19 infections among Americans has increased exponentially, especially in the Chicago and South Florida areas.  *Id*. at ¶ 8.  On March 27, 2020, the United States Surgeon General stated that Chicago was one of among several large American cities identified as hot spots for COVID-19 infections and cautioned that it will see the number of local coronavirus cases rise.  *Id*.  Dr. Deborah Birx, the White House coordinator for the COVID-19 response, also mentioned Cook County as an area of concern.  *Id*.  Florida is now the fourth most-hit state in the United States, according to data maintained by health officials

and Johns Hopkins University, and it saw a sharp increase in infections over the past weekend.[2]
Moreover, Miami-Dade and Broward counties – the two most populous in the state – have recorded
the highest number of infections.  *Id*.  On March 29, 2020, Dr. Anthony Fauci, Director of the
National Institute of Allergy and Infectious Diseases, told the press that he anticipates the
coronavirus could kill between 100,000 and 200,000 Americans while infecting "millions." *Id*.
President Trump extended the administration's social-distancing guidelines through the end of
April. *Id*.

15.     The practice of law is of course not immune to this public health crisis.  The
restrictions and closings discussed above place significant and material burdens on the individuals
involved with this case, including fact and expert witnesses, attorneys, paralegals, and other staff
members.  While there is much that can be done remotely and will continue to be done over the
coming weeks, the pandemic significantly impairs the ability of the attorneys of record to proceed
with the orderly progress of the case and it will cause substantial delays in proceeding with
discovery as originally expected.  *Id*. at ¶ 9.

16.     Several of the depositions in this matter may necessitate the participation of 10 or
more people, including counsel and representatives for the Parties, the witnesses, court reporters,
and videographers and will require Plaintiffs' counsel to travel from Chicago, Illinois to Miami,
Florida.  *Id*. at ¶ 10.  Moreover, many of these depositions are likely to be document intensive,
requiring the attorneys and witnesses to review many documents and records relating to the health
care services that are the subject of this litigation.  *Id*.  Given the complexity of issues in the case,
which include the treatment services provided to more than 900 patients, both the preparation for
and the taking of fact and expert depositions will involve the review and examination of a

---

[2] https://www.foxnews.com/us/florida-sees-sharp-spike-in-coronavirus-infections-as-fears-grow-it-could-be-another-hotspot

significant volume of records, including patient files that are often hundreds of pages in length per file. *Id.* Thus, the possibility of participating in these depositions by telephone or videoconference is impractical. *Id.*

17.     In addition, several of these depositions are of physicians who have been, and expect to continue to be, interacting with patients, some of whom are elderly or are otherwise at an elevated risk for serious illness from COVID-19. *See* Declaration of Mark A. Cereceda, D.C., in Support of Joint Motion for Administrative Order Temporarily Closing Case ("Cereceda Declaration"), a copy of which is attached hereto as Exhibit 3, at ¶ 6. In addition, some of these physicians themselves are at an elevated risk for serious illness from COVID-19. *Id.* Many of these physicians continue to administer in-office health care services, pain management regimens, and surgeries in connection with the courses of treatment that have been established for their patients. *Id.*

18.     These physicians are taking precautions to limit as many person-to-person interactions as possible during these uncertain times. *Id.* at ¶ 7. Indeed, other than interacting with their patients, these physicians are eliminating most or all in-person interactions, other than with their immediate families or households, and other "Essential Activities," as that term is defined in the various Emergency Orders that have been issued. *Id.*

19.     Notwithstanding these efforts to limit in-person contact, these physicians are under a tremendous amount of mental stress because of the need for them to continue to engage in close, person-to-person interactions with their patients and other office staff with whom they continue to work in administering these health care services. *Id.* at ¶ 8. For example, despite taking all appropriate precautions to protect themselves and others from the spread of COVID-19—including through the use of an increasingly sparse supply of N95 respirators and surgical masks—these

physicians are necessarily coming into contact with other individuals that are outside of their immediate family or household.  *Id*.

20.     As a result, pending additional clarity on the status of the spread of COVID-19 throughout the South Florida community, it is not advisable for these physicians to participate in these depositions.  *Id*. at ¶ 9.

21.     In light of these extraordinary circumstances, the Parties jointly and respectfully submit that it will be extremely difficult—and cause significant and unnecessary health risks to the individuals involved in the litigation, as well as members of their households—to litigate this action properly under the current Scheduling Order.  To that end, the Parties jointly and respectfully request the Court to enter an Administrative Order temporarily closing this matter for statistical purposes only, denying all motions as moot, retaining jurisdiction, with the understanding that the Court will restore this case to the active docket upon further Order of the Court following motion of a party advising they are prepared to proceed.

22.     As described above, the Geico Action is litigating similar claims against certain of the Defendants to this action in the United States District Court for the Southern District of Florida before U.S. District Judge Cecilia Altonaga.  After concluding the uncertainties associated with the pandemic caused an inability to proceed with the orderly progress of the case and to conserve the Parties' and judicial resources, Judge Altonaga issued an Administrative Order Closing Case in the Geico Action on March 19, 2020, Docket No. 93, ordering precisely the same relief the Parties are requesting in this Joint Motion.  *See* Ex. 1.

23.     The Parties have already agreed on the selection of Rodney A. Max as the mediator in this case, and have scheduled that mediation to occur on June 25, 2020, prior to the deadline to complete mediation of August 28, 2020.  *See* Docket No. 70.  Although the Parties hope to be able

to participate in that mediation in person, they are prepared to do so by telephone or video conference if necessary, and—assuming the relief in this Joint Motion is granted—intend to proceed with that mediation regardless of whether this action is still administratively closed at that time. *See* Reale Declaration at ¶ 11.

24.     Additionally, if the relief in this Joint Motion is granted, the Parties will continue to work together in good faith to complete written discovery and the production of documents while the action is administratively closed. *Id*. at ¶ 12. The Parties further agree to explore the possibility of taking certain depositions by telephone or video conference during the time when this action is administratively closed. *Id*.

25.     This request, made jointly by all Parties, is for good cause.

## MEMORANDUM OF LAW

"A district court retains the inherent authority to manage its own docket." *Wilson v. Farley*, 203 Fed. Appx. 239, 250 (11th Cir. 2006). In exercising this authority, a district court may take into consideration the need to "manage its cases efficiently." *Gray v. Target Corp.*, 13-62769-CIV, 2014 WL 12600138, at *1 (S.D. Fla. Jan. 27, 2014). One way in which a district court may exercise this authority is to "issue a stay to control the disposition of its docket to economize the time and effort of both the Court and the litigants." *Patriot Underwriters, Inc. v. Select Peo, Inc.*, 12-CV-61546, 2013 WL 12154551, at *1 (S.D. Fla. June 6, 2013).

For example, district courts have abated claims and administratively closed cases for statistical purposes pending the resolution of an appellate process,[3] the completion of a related investigative proceeding,[4] or the outcome of an arbitration.[5]   Here, the Parties are facing a

---

[3] *Miles v. Lexington Ins. Co.*, 13-21555-CIV, 2013 WL 3991970, at *2 (S.D. Fla. Aug. 2, 2013)
[4] *Prosper v. Martin*, 239 F. Supp. 3d 1347, 1350 (S.D. Fla. 2017)
[5] *Valdez v. Bags, Inc.*, 16-20390-CIV, 2016 WL 10932750, at *1 (S.D. Fla. Aug. 22, 2016)

significant interruption of their ability to complete discovery, the extent and duration of which remain unknown.  Under these circumstances, and giving due consideration to the time, effort, and resources of both the Court and the litigants, the Court has the authority to enter an Administrative Order closing this matter for an indefinite period of time, without prejudice to the rights of the Parties to the litigation, and directing that it will restore the case to active status upon a motion of either of the Parties that they are prepared to proceed.  An Administrative Order closing this matter will also not impact any statute of limitations arguments, which will be determined based on the original filing date once the case is restored to active status.

## CONCLUSION

WHEREFORE, the Parties jointly request the Court to enter an Administrative Order closing this matter for an indefinite period without prejudice to the rights of the Parties to the litigation, and directing that the Court will restore the case to active status upon a motion of either of the Parties that they are prepared to proceed.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), we hereby certify that counsel for the movants have conferred with all Parties or non-parties who may be affected by the relief sought in this motion in a good-faith effort to resolve the issues raised in this motion.  The Parties have agreed to jointly seek the relief sought through this motion.

Dated: April 1, 2020                              Respectfully submitted,

*/s/ David I. Spector*                              */s/ Adam M. Foslid*
DAVID I. SPECTOR, ESQ.                    Adam M. Foslid
Fla. Bar No. 086540                            Florida Bar No. 0682284
david.spector@hklaw.com                   afoslid@sfslaw.com
JOSEPH F. VALDIVIA, ESQ.              Ryan K. Stumphauzer
Fla. Bar No. 0107878                           Florida Bar No. 0012176
joseph.valdivia@hklaw.com                rstumphauzer@sfslaw.com
HOLLAND & KNIGHT LLP                Timothy A. Kolaya

777 South Flagler Drive
Suite 1900 West Tower
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile: (561) 650-8399

– and –

ROSS O. SILVERMAN
ross.silverman@katten.com
(admitted pro hac vice)
ERIC T. GORTNER
eric.gortner@katten.com
(admitted pro hac vice)
JOHN W. REALE
john.reale@katten.com
(admitted pro hac vice)
JOHN T. LEPORE
john.lepore@katten.com
(admitted pro hac vice)
MICHAEL J. POWERS
michael.powers@katten.com
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for Plaintiffs*

Florida Bar No. 056140
tkolaya@sfslaw.com
Stumphauzer Foslid Sloman Ross & Kolaya,
PLLC
Two South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Phone: (305) 614-1400
Facsimile: (305) 617-1425

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2020 the foregoing document will be served on all counsel of record via CM/ECF.

By: <u>*David I. Spector*</u>
DAVID I. SPECTOR
Fla. Bar No. 086540
dav*id*.spector@hklaw.com
HOLLAND & KNIGHT LLP
777 South Flagler Drive
Suite 1900 West Tower
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile:  (561) 650-8399

*Attorneys for Plaintiffs*

#73915794_v1